1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19

| | |
|---|---|
| NATIONAL MORGAN, an individual; MICHAEL BEVAN, an individual; individually, and on behalf of others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>ROHR, INC., a corporation; HAMILTON SUNDSTRANT, d/b/a COLLINS AEROSPACE; UNITED TECHNOLOGIES CORPORATION,<br><br>                              Defendants. | Case No.:  20-cv-574-GPC-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**[ECF No. 56]** |

20
21
22
23
24
25
26
27
28

Before the Court is Plaintiffs' motion for class certification and to appoint class

counsel. ECF No. 56. Defendants filed an opposition, and Plaintiffs filed a reply. ECF

Nos. 67, 76. With the Court's approval, Defendant filed a sur-reply. ECF No. 96.[1] The

_____

[1] After Plaintiffs filed the Reply, Defendants filed a motion to strike the documents filed concurrently with the reply, or in the alternative, moved the Court for permission to file a Sur-Reply. ECF No. 84. The Court granted Defendants' request to file a Sur-Reply. ECF

1

Court held a hearing on this matter on February 4, 2022. ECF No. 104. After careful review of the parties' briefs, the record, the applicable law, and counsel's arguments at the hearing, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for class certification.

### Procedural Background

Plaintiff Nathaniel Morgan brought this purported class action complaint which alleges Defendants engaged in illegal payroll policies, through which they failed to compensate employees for time worked, failed to provide adequate meal and rest breaks, and other violations of California wage and hour laws, as well as unfair business practices in the Solano County Superior Court. ECF No. 1-2., Compl., at 13-27. On May 6, 2019, the action was removed from Solano County Superior Court to the United States District Court for the Eastern District of California, by Defendants Rohr, Inc., Hamilton Sundstrand Corporation d/b/a UTC Aerospace Systems d/b/a Collins Aerospace, and United Technology Corporation ("Defendants") pursuant to the Class Action Fairness Act of 2005 under 28 U.S.C. § 1332(d). ECF No. 33, Second Amended Complaint ("SAC") at 2. The case was then transferred to this Court on March 26, 2020. *Id.* at 3. After the case was removed to federal court, Plaintiffs filed a Second Amended Complaint on June 19, 2020, which is the operative complaint in this action.[2] *Id.* Among other changes, the SAC added a second class representative, Plaintiff Michael Bevan. *Compare* ECF No. 1-2 with SAC at 3. The SAC alleges eight causes of action: (1) Failure

No. 94. Defendants subsequently filed a notice of supplemental authority on December 13, 2021. ECF No. 100.

[2] Plaintiffs moved for leave to file a third amended complaint on August 5, 2021, after Defendants filed their opposition to Plaintiffs' motion for class certification. ECF No. 74. The Court denied Plaintiffs motion for leave to file an amended complaint on December 1, 2021. ECF No. 99.

to Authorize and Permit Required Meal Periods (Cal. Labor Code §§ 226.7, 510, 512, 1194, 1197; IWC Wage Order No. 9-2001, § 11); (2) Failure to Authorize and Permit Required Rest Periods (Cal. Labor Code §§ 226.7, 512; IWC Wage Order No. 9-2001, § 12); (3) Failure to Pay Overtime Wages (Cal. Labor Code §§ 510, 1194, 1198; IWC Wage Order No. 9-2001, § 3; (4) Failure to Pay Minimum Wages (Cal Labor Code §§ 1194, 1197; IWC Wage Order No. 9-2001, § 4); (5) Failure to Pay All Wages Due to Discharged and Quitting Employees (Cal. Labor Code §§ 201, 202, 203); (6) Failure to Furnish Accurate Itemized Wage Statements (Cal. Labor Code § 226; IWC Wage Order No. 9-2001, § 7); (7) Failure to Indemnify Employees for Necessary Expenditures Incurred in Discharge of Duties (Cal. Labor Code § 2802); (8) Unfair and Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 et. seq.).

### Factual Background

Plaintiffs bring this purported class action on behalf of themselves and other similarly-situated persons who worked for Defendants as non-exempt employees in the State of California during the period between 2013 and 2019. ECF No. 33, Second Amended Complaint ("SAC"), at 2-3.

Plaintiffs allege that Rohr, Inc. is an aerospace manufacturing company which is a wholly-owned division of UTC Aerospace Systems. ECF No. 56, Pls.' Motion ("Mot."), at 10.[3] Plaintiffs allege that Defendants are collectively alter egos of one another, joint employers, and/or integrated enterprises of all employees, as demonstrated by Plaintiffs' employment records and paystubs which list both Rohr and UTAS as employers. *Id.* at 10; SAC at 6-7. Plaintiffs bring their claims within the Class Period, from March 27, 2015 to present. Mot. at 8. During the class period, Plaintiffs allege Defendants operated two facilities in California, in Riverside and Chula Vista. *Id.* at 10.

---

[3] The Court refers to page numbers generated by the CM/ECF system.

Plaintiff Nathaniel Morgan worked for Defendants as a non-exempt employee from 2014 to approximately December 2016. *Id.* at 3. He worked at Defendants' Chula Vista facility as an Operations Specialist in the shipping and receiving departments. *Id.* Plaintiff Michael Bevan has worked for Defendants as a non-exempt employee from 2013 to present, in multiple positions such as Assembler, Quality Technician, and Quality Inspector. *Id.* Importantly, proposed class representatives Bevan and Morgan are both union members.

Plaintiffs allege that during the class period both the Riverside and Chula Vista facilities used centralized timekeeping and payroll departments responsible for processing employees' timekeeping and payroll information, and for programming the timekeeping and payroll systems that employees used. *Id.* Many of Plaintiffs' claims for which they seek class certification group together union and non-union employees to support assertions that Defendants' timekeeping policies and practices apply to all non-exempt employees. Specifically, Plaintiffs state that during the Class Period, *all* non-exempt Rohr employees in California, including both unionized and nonunionized employees, used the AutoTime timekeeping system to record their time. *Id*; ECF No. 56-4 (Harris Dep.) at 158-59. From March 27, 2015 to October 13 2019, they used AutoTime 6, and then starting on October 14, 2019 used AutoTime 7. *Id.*

However, while the AutoTime timekeeping system was consistent across the two facilities and was used by all nonexempt employees during the Class Period, the specific practices for timekeeping and payroll varied along two axes depending on: (1) whether the employee is a union member, and (2) which of Defendants' facilities the employee worked in. *See* ECF No. 56-4 (Harris Dep.) at 75.[4] Prior to October 2019, union

---

[4] Q:  . . . And when were nonexempt employees at Rohr required to clock in and out of work?

employees in Riverside recorded their time on the AutoTime 6 timekeeping system. ECF No. 56-6 (Moua Dep.) at 50-51. Beginning in 2019, union members at Riverside have used AutoTime 7, and are paid based on the exact time they punch in and out. *Id.* at 113. In Chula Vista, unionized employees clock in at the beginning of their shifts, and are paid for their shifts. ECF No. 67-2 (Harris Dep.) at 58. If an employee works outside of the shift, employees are required to report this deviation so they can be paid for additional time. *Id.* In Riverside, non-union employees do not record time with punches. ECF No. 67-4 (Moua Dec.) at 111. Instead, they manually enter total time worked each day into the system. *Id.* And in Chula Vista, non-union employees do not clock in or out. ECF No. 67-2 (Harris Dep.) at 58. Instead, their timecards automatically populate eight hours of work for a shift, and they are instructed to adjust their time if they worked more or less than the eight hours, and they are required to sign and verify it daily. *Id.* at 57, 59.

---

A: So are we speaking of union employees?

Q: So if there's a difference, then I guess that the answer could change, depending on whether they're unionized or nonunionized. So if it's helpful, I can break it down . . . when were Rohr's nonexempt unionized employees required to clock in and out?

[ . . . ]

A: It's at the beginning of the shift and at the end of the shift, and that's specific for Chula Vista.

[ . . .]

Q: And then with respect to nonunionized employees who worked at Rohr at Chula Vista, when were they required to clock in and out of work?

A: So they clock—their—their time card auto-posts eight hours of work for them, and then they sign it daily. And they adjust it if they worked less than the eight hours or more than the eight hours.

**Overview of Defendants' Timekeeping Practices**

|  | Union | Non-Union |
|---|---|---|
| **Riverside** | • Beginning in 2019, punch in and out, and paid for exact time of punches | • Manually enter total time worked each day |
| **Chula Vista** | • Punch in and out at the beginning and end of shift | • Do not punch in on time clock<br>• System automatically posts eight hours of work.<br>• Sign time card at end of shift to verify hours worked |

In sum and substance, Plaintiffs allege that Defendants engaged in illegal practices and policies by failing to provide meal and rest breaks, failing to compensate employees for all meal breaks and rest breaks that were not provided, failing to pay minimum and overtime wages, failing to provide accurate itemized statements for pay periods, and failing to properly compensate employees for necessary expenditures, in violation of the California Labor Code and the applicable IWC Wage Order, and the Business and Professions Code which prohibits unfair business practices. SAC at 8-9. Plaintiffs allege "[t]hese illegal practices and policies were applied to all non-exempt employees in violation of the Labor Code, the applicable wage order, and the Business and Professions Code which prohibits unfair business practices arising from such violations." *Id.* at 9.

In the instant motion, Plaintiffs seeks to certify a Class consisting of:

All current and former non-exempt employees of Defendants Rohr, Inc., Hamilton Sun[d]strand d/b/a UTC Aerospace Systems d/b/a Collins Aerospace, and United Technologies Corporation (Defendants") at Defendants' facilities in Riverside and Chula Vista, California at any time during the period from March 27, 2015 through the date of class certification ("Class Period").

20-cv-574-GPC-AHG

Pls.' Mot. at 8. Alternatively, Plaintiffs seek to certify the following Classes and/or subclasses:

1. <u>Minimum Wage Class</u>: all persons employed by Defendants as non-exempt employees at Defendants' facilities during the Class Period.
   a. <u>Shaved Time Subclass</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from March 27, 2015 through October 13, 2019 who were not paid by Defendants for all time recorded as worked on at least one shift.
   b. <u>Automatic Deduction Subclass</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from March 27, 2015 through October 13, 2019 who worked at least one shift over five hours long in which there was no recorded meal break of at least 30 minutes.
   c. <u>Rounded Meal Break Subclass</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from October 13, 2019 through the date of class certification who worked at least one shift over five hours in which the employee's rounded meal time was greater than the employee's recorded meal break time.
   d. <u>Off-the-clock Subclass</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period.
2. <u>Overtime Class</u>: all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over eight hours long.
   a. <u>Shaved Time Subclass</u>: all persons employed by Defendants as non- exempt, unionized employees at Defendants' facilities in Riverside and Chula Vista from March 27, 2015 through October 13, 2019 who were not paid by Defendants for all time recorded as worked on at least one shift which was over eight hours long.
   b. <u>Automatic Deduction Subclass</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from March 27, 2015 through October 13, 2019 who worked at least one shift over eight hours long in which there was no recorded meal break of at least 30 minutes.
   c. <u>Rounded Meal Break Subclass (AutoTime 7)</u>: all persons employed as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from October 14, 2019 through the date of class certification

who worked at least one shift over eight hours long in which the employee's rounded meal time was greater than the employee's recorded meal break time.

d. <u>Regular Rate Subclass</u>: all persons employed by Defendants as non-exempt employees at Defendants' Riverside and Chula Vista facilities during the Class Period who worked at least one shift over eight hours long and also earned at least one other form of non-discretionary remuneration (such as shift differentials, shift premiums, special awards, and other bonuses) during the same pay period.

e. <u>Off-the-clock Subclass</u>: all persons employed by Defendants as non-exempt employees at Defendants' Riverside and Chula Vista facilities during the Class Period who worked at least one shift over eight hours long.

3. <u>Rest Break Class</u>: all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over five hours long.

4. <u>Meal Period Class</u>: all persons employed by Defendants as non-exempt employees at their facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over five hours long.

a. <u>First Meal Break Subclass (Union Employees)</u>: all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over five hours long.

b. <u>First Meal Break Subclass (Non-Union Employees)</u>: all persons employed by Defendants as non-unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over five hours long.

c. <u>Second Meal Period Subclass</u>: all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over ten hours long.

5. <u>Wage Statement Class</u>: all persons employed by Defendants at Defendants' facilities in Riverside and Chula Vista as non-exempt employees during the Class Period, who received at least one wage statement from Defendants.

Mot. at 8-10. Plaintiffs further offer separate subclasses on behalf of union and non-union employees. *Id*. Plaintiffs also seek certification of derivative claims: (1) failure to pay all wages due to discharged and quitting employees; (2) failure to furnish accurate itemized wage statements; and (3) unfair business practices. *Id.* at 10.

8

**DISCUSSION**

A.   <u>**Legal Standard**</u>

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of individual named parties only. In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) (internal quotation marks omitted).

A plaintiff seeking class certification must affirmatively show that the class meets the requirements of Rule 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citing *Dukes*, 564 U.S. at 350). Federal Rule of Civil Procedure 23 establishes a two-step procedure for analyzing class certification. First, a plaintiff bears the burden of proving that class certification is appropriate because it meets all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality and adequacy. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011). If these four requirements are satisfied, plaintiffs must show that the lawsuit qualifies for class certification under the relevant provision of Rule 23(b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

While the motion for class certification comes at an early stage of litigation, the Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Dukes*, 564 U.S. at 350. This inquiry "will frequently entail some overlap with the merits of plaintiff's underlying claim." *In re AutoZone Inc., Wage & Hour Litig.*, 289 F.R.D. 526, 530 (N.D. Cal. 2012). Because "the merits of the class members' substantive claims are often highly relevant when determining whether to certify a class . . . it is not correct to say that a district court *may* consider the merits to the extent that they overlap with class certification issues;

rather, a district court *must* consider the merits if they overlap with Rule 23(a) requirements." *Ellis*, 657 F.3d at 981. The district court does not, however, conduct a "mini-trial" to determine whether the class could actually prevail on the merits of their claims beyond the issues presented by class certification requirements. *Id.* at 893 n.8. Rule 23 "grants no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen, Inc. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.**   **Rule 23(a): Numerosity, Typicality, and Adequacy**

This Order first addresses the numerosity, typicality and adequacy requirements under Rule 23(a).

**1.**   **Rule 23(a)(1): Numerosity**

First, "numerosity" requires that the class be "so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Impracticability need not mean impossibility, only "difficulty or inconvenience in joining all members of the class." *Makaeff v. Trump Univ.*, No. 3:10-CV-0940-WVG, 2014 WL 688164, at *7 (S.D. Cal. Feb. 21, 2014) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). The requirement is not tied to a fixed numerical threshold, but courts have routinely found the numerosity requirement satisfied when the class comprises forty or more members. *See, e.g.*, *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17-CV-2355-GPC-MDD, 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)); see generally, *1 Newberg on*

*Class Actions* § 3:12 (5th ed. 2021) ("As a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

As described above, Plaintiffs seek to certify claims for all non-exempt union and non-union employees who were employed by Defendants during the Class Period, or they seek to certify five classes (with numerous subclasses) in the alternative. Pls.' Mot. at 8-10. Plaintiffs indicate "Rohr employed approximately 2,046 non-exempt employees in California during the Class Period." *Id.* at 13. Of these employees, at least 1,038 employees were union workers at the Riverside facility and 560 employees were union workers at the Chula Vista facility.[5] ECF No. 67, Defs.' Opp. ("Opp.") at 11. Defendants do not challenge Plaintiffs' contention that "the proposed class (or classes) are sufficiently numerous." Pls.' Mot. at 13; *see* Opp. at 9 (noting that Plaintiffs' motion seeks to certify claims for more than 2,000 employees).

The Court therefore finds that each of Plaintiffs' proposed classes, which would consist of more than 1,500 union employees satisfy the numerosity requirement.

## 2. Rule 23(a)(3): Typicality

Second, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality prerequisite ensures that interests of the named representative align with the

---

[5] Plaintiffs do not provide in the SAC or the Motion the number of putative class members in each category of employees: Chula Vista union and non-union, and Riverside union and non-union. However, in their Opposition, Defendants provide figures for each employee grouping. *See* Opp. at 10-11. According to Defendants, in the Riverside facility there are 1,038 union employees and 126 non-union employees. *Id.* In Chula Vista, there are 560 union employees, and 322 non-union employees. *Id.* at 11.

interests of the class. *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992). Typicality tests "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. A court should consider the nature of the claim or defense of the class representative, rather than the specific facts from which it arose or for which relief is sought. *Id*.

Defendants argue Plaintiffs' claims are not typical because "Plaintiffs, who are both union members, may not represent nonunion employees, as different practices apply, including the timing of meal breaks (5 hours v. 6 hours); whether employees are subject to a mandatory break schedule or instead have discretion; whether time is recorded by time punches, and auto-population, or manual entry." Opp. at 34.

A close examination of the claims made by union employees shows that they rely on proofs that do not apply to non-union employees. On Reply, Plaintiffs do not directly respond to the Defendants assertions that the claims of union and non-union employees involve different practices and conduct.  Rather, Plaintiffs assert in a general and conclusory fashion that their claims are "based on common practices applicable to all similarly situated employees and are supported by classwide evidence that [Defendants have] failed to rebut." ECF No. 76, Pls.' Reply ("Reply"), at 21. Finally, in tacit recognition of the absence of typicality based upon the different practices that apply to union and non-union employees, Plaintiffs add a footnote in their Reply requesting leave to add a non-union employee and class representative to the case.

In view of the above, the Court concludes that Plaintiffs have failed to demonstrate that the claims of union and non-union employees are similar or typical of the non-union employees. Further, the Court will not interpret a request to add class representatives contained in a footnote to a reply to the opposition as a properly presented motion to amend pleadings and will deny the request to add non-union employees at this time.

### 3.     Rule 23(a)(4): Adequacy

Rule 23 also requires that the class representative(s) "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts evaluate (1) whether the named plaintiff(s) and counsel have conflicts of interest with the rest of the class, and (2) whether the named plaintiff and counsel will prosecute the action vigorously for the class. *In re Autozone*, 289 F.R.D. at 530 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

Plaintiffs' counsel attests named Plaintiffs Morgan and Bevan have "represented their co-workers with a focus and zeal true to the fiduciary obligation they have undertaken, including by preparing and sitting for their deposition[s], responding to written discovery, attending an Early Neutral Evaluation conference, and working closely with their attorneys throughout the litigation," and that "there is no conflict of interest between Plaintiffs and the class members." Pls.' Mot. at 32. While the class representatives have taken steps to represent their co-workers, the Court concludes that Morgan and Bevan are unable to "fairly and adequately" protect the interests of non-union employees because their claims are not supported by similar classwide proof and therefore are not typical to those of non-union employees.  However, the Court does find that Plaintiffs Nathaniel Morgan and Michael Bevan are adequate class representatives for subclasses that are presented on behalf of union employees.

Next, there is no suggestion from Defendants that Plaintiffs' counsel is inadequate. Counsel's declaration details Matern Law Group's extensive experience litigating California Labor Code violations for individuals, and through class actions. ECF No. 56-1, Matern Decl. ¶¶ 29-30. Counsel attests he is not aware of any conflict between Plaintiffs and the interests of other members of the proposed classes that would impair Plaintiffs' ability to serve as class representatives. *Id.* ¶¶ 38-39. The Court finds that

Plaintiffs' counsel at Matern Law Group are adequate counsel for class representatives and the proposed classes.

**C.    Rule 23(a)(2) Commonality and Rule 23(b)(3) Predominance**

The Court next addresses the final Rule 23(a) factor, commonality, as well as the predominance and superiority requirements for certification of a class action under Rule 23(b)(3). Consistent with the Court's conclusion that proposed class representatives Morgan and Bevan are not suitable representatives for non-union nonexempt employees working in either of Defendants' facilities, the Court's decision to certify any of Plaintiffs' proposed subclasses applies only to union employees.

**1.    Commonality and Predominance**

The final requirement under Rule 23(a) is that "there are questions of law and fact common to the class." Fed. R. Civ. P. 23(a)(2). In *Duke*s, the Supreme Court held that "what matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted) (emphasis in original).

To certify a class under Rule 23(b)(3), Plaintiffs must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), Plaintiffs must demonstrate that the questions of law or fact common to class members predominate over any questions affecting individual members. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021). Therefore, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap.

### a. Minimum Wage and Overtime Claims

Under the Labor Code, employers must (1) compensate employees at least the minimum wage for "all hours worked" which includes assigned job duties, time "during which an employee is subject to the control of an employer"; and (2) compensate employees for all overtime, which is calculated at one and one-half times the regular rate of pay for all hours worked in excess of eight hours and/or forty hours per week, and for the first eight hours on the seventh consecutive workday, or with double time for all hours worked in excess of twelve hours in any workday. Cal. Lab. Code §§ 510, 1194.

For the over-arching Minimum Wage Class, Plaintiffs propose a class of "all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period." Pls.' Mot. at 8. The Overtime Class is made up of "all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift which was over eight hours long." *Id.* at 9. The subclasses Plaintiffs seek to certify under the Minimum Wage Class and Overtime Class rely on overlapping theories of liability.

Plaintiffs bring their wage and overtime claims under four identical theories of liability: (1) time shaving; (2) automatic deduction of meal periods; (3) rounded meal periods; and (4) off-the clock. Pls.' Mot. at 8-9. The Overtime Class also relies on the additional theory of denial of regular rate compensation. *Id.* In addition, Plaintiffs present an additional and separate meal period class and subclasses in their motion which is addressed *infra* at 34.

### i. Shaved Time Subclass

Under the Minimum Wage and Overtime Class umbrellas, Plaintiffs propose a "shaved time subclass" which they define as "all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista

from March 27, 2015 through October 13, 2019 who were not paid by Defendants for all time recorded as worked on at least one shift. Pls.' Mot. at 8.

In California, "wage and hour claims are today governed by complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Donohue v. AMN Servs.*, 11 Cal. 5th 58, 66 (2021) (quoting *Brinker Restaurant Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1026 (2012)). California Labor law requires employers to pay employees at least minimum wage for all hours worked, which includes time employees spend performing their assigned job duties and time "during which an employee is subject to the control of an employer." Wage Order 1-2001 § 2(H); *Frlekin v. Apple*, 5 Cal. 5th 1038, 1042 (2020); *Morillion*, 22 Cal. 4th at 582. Under the employer-control doctrine, the California Supreme Court has held that "[t]he level of the employer's control over its employees rather than the mere fact that the employer requires the employees' activity, is determinative" of whether compensation is required. *Morillion*, 22 Cal. 4th at 587.  Employees must be compensated for all time "during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000) (finding that travel time in mandatory company-provided buses was compensable as "hours worked" due to employer control over employees).

Plaintiffs present the question of whether Defendants paid union employees "based on their scheduled shift start and end times" rather than all time actually worked, resulting in underpayment. Pls.' Mot. at 8. The time-shaving theory of liability argues that "Defendants had a common practice of paying unionized non-exempt employees based on their scheduled shift start and end times, while shaving all time that was recorded as worked outside of the employees' scheduled shift." Pls.' Mot. at 15. Plaintiffs

argue class treatment is appropriate for the time shaving theory because they can prove liability with respect to the class members. Pls.' Mot. at 15.

To support their theory, Plaintiffs rely on three categories of evidence: Defendants' timekeeping policy, Plaintiffs' expert's analysis of payroll data, and deposition testimony from Defendants' employees.

Plaintiffs place great weight on Defendants' timekeeping policy as detailed in the "UTS Aerospace Timekeeping Requirements" document. ECF No. 56-20, Ex. S. The Timekeeping Requirements document states:

> Accurately recording time worked is the responsibility of every non-exempt employee. Time worked is all the time actually spent on the job performing assigned duties. Each non-exempt employee is required to record accurately the time they began and end their workday, as well as the beginning and ending time of each meal period.

*Id.* Relying on this policy, Plaintiffs argue that Defendant cannot deny that employees were not working when they were clocked in before or after their shift because such position would be inconsistent with Rohr's policies. *See* Pls.' Mot. at 16. Under Plaintiffs' theory, to the extent that Rohr employees are trained on and instructed to comply with the timekeeping policy, the negative inference suggests that employees only clocked in and recorded their time when they were actually working. Thus, any practice of "shaving" an employee's time down to only the hours in the scheduled shift would mean "Defendants had a common practice which resulted in systematic underpayment of wages to unionized class members." Pls.' Mot. at 15. The Court finds the policy may establish expectations and requirements regarding accurate timekeeping but offers little in the way of support as to whether the policy was followed.

Plaintiffs also presented deposition testimony from Rene Trujillo. *See* ECF No. 56-7 (Trujillo Dep.) at 107:17-108:4. Plaintiffs asked, "would the system round their start time to the start time of their shift regardless of how early they clocked in?" *Id.* 107:19-

21. In response, Trujillo stated: "if the employee—if a nonexempt, union employee clocked in 20 minutes prior to the start of their shift, it would round to their start of their shift." *Id.* 108:1-4. And the same rounding happened at the end of an employee's shift. *See id.* 112:7-25, 113:1-23.

Defendants contest all of Plaintiffs' purported common proof. In response to Plaintiffs' reliance on the Timekeeping Requirements, Defendants reject the inference that the moment an employee clocked in was the moment they began working. Defendants point to the Collective Bargaining Agreement that governed payroll policies for all unionized employees during the relevant period. In the Collective Bargaining Agreement, Section 9.05 states: "The Company shall not be liable for time spent in the plant outside of an employee's shift unless such time is specifically authorized by the Company." ECF No. 67-2, Collective Bargaining Agreement ("CBA"), at 339. Indeed, the start, rest break, meal break and end time schedules for each shift period are also laid out in the CBA in Section 9.07. *Id.* At bottom, Defendants' main contention is that if all employees were aware that they were only being paid for their scheduled shifts, the time they spent on Rohr premises in between the clock-in time and the beginning of a shift was not time worked that was shaved (with the effect of underpaying employees) but rather more of a "grace period." Employees were instructed to inform their supervisors if they needed their time adjusted, and many routinely did. For example, defense counsel asked Mr. Eryke Ramirez: "So if there was a discrepancy between the time you worked and when you clocked out, would that discrepancy be fixed by the supervisors?" He responded "[y]es. Or if you forgot to clock out or didn't—or the system crashed, they would—the supervisors would adjust as needed." ECF No. 67-3 (Ramirez Dep.) at 86. Similarly, an employee whose department assigned work for the day during a kickoff team meeting confirmed the grace period arrangement. When asked "[y]ou never performed any work before the team meeting, correct?" he responded "Correct" and said

that he would not have known what work to perform prior to the meeting. ECF No. 67-3 (Curl Dep.) at 50.

At the very least, Defendants argue that individual questions predominate over the common ones, and the common proof Plaintiffs offer is deeply flawed. First, Plaintiffs' expert did not determine whether any employees were actually underpaid as a result of the practice under which employees were paid for their scheduled shifts. Opp. at 1.[6] Because determining whether employees were underpaid would require discussion with each person to determine "which employees were 'actually working' after they clocked in but before their shift started" and therefore lost compensable time. Opp. at 17-18. As such, individual questions predominate over the common ones. Since commonality requires "significant proof" of a general policy that harmed the proposed class members, Plaintiffs' evidence does not satisfy the evidentiary burden as required by *Dukes*.

Accordingly, the Court DENIES Plaintiffs' motion to certify the Time Shaving Subclass.

### ii.   Automatic Deduction of Meal Period Subclass

The second wage and overtime subclass Plaintiffs seek to certify is the automatic deduction of meal period subclass, which Plaintiffs define as "all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside

---

[6] In the deposition of Plaintiffs' expert Mr. Gorlick, Defendants probed this issue:

> Q: Do you know any way to determine whether an employee was actually working between the time indicated on their CLOCK.IN.ACT versus the time START.ROUNDED.LOCAL?

> A: Determining what employees were doing and sort of defining what work is goes beyond my expertise. So I don't—I don't know how that would be done.

ECF No. 67-2 (Gorlick Dep.) at 452.

and Chula Vista from March 27, 2015 through October 13, 2019 who were not paid by Defendants for all time recorded as worked on at least one shift." Pls.' Mot. at 8.

Under the California law, employers are required to accurately record when each employee begins and ends each work period, as well as meal periods. Wage Order 1-2001, § 7(A)(3). Plaintiffs allege Defendants "had a practice of not recording the times that the unionized employees actually started and ended meal times," and instead "automatically deducted a 30-minute break from employees' time entries each day." *Id.* (citing ECF No. 56-21, Gorlick Decl., at 9).

Plaintiffs seek to certify the subclass based on a common question of whether Defendants' failure to track meal breaks for unionized employees, and instead automatically deducting 30-minute meal periods from time records resulted in employees being underpaid. Pls.' Mot. at 18. Ultimately, Plaintiffs' theory of liability is based upon Defendants' lack of record-keeping. To support this theory, Plaintiffs rely on a recent California Supreme Court decision, *Donohue v. AMN Servs.*, 11 Cal. 5th 58 (2021), in which the Court held, "[i]f an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal was provided, *id.* at 74. The court observed that the rebuttable presumption derives from an employer's duty to maintain accurate records of meal periods. *Id.* at 76; *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring); Wage Order No. 4, § 7(A)(3) ("Every employer shall keep accurate information with respect to each employee including . . . time records showing when the employee begins and ends each work period . . . . Meal periods . . . shall also be recorded.").

Plaintiff relies on this rebuttable presumption to support their claim that they are entitled to recover missed meal breaks. Plaintiffs also present statistical analysis by their expert. *See* Pls.' Mot. at 18. The analysis showed that within the sample, there were no recorded meal breaks in 99.5% of shifts that longer than five hours, but employees' time

records showed automatically deducted 30-minute meal breaks from employees' time entries. ECF No. 56-21, Gorlick Decl., at 9.

Defendants' primary defense is that the automatic deduction of lunch breaks does not violate the Wage Order because they are excused from maintaining a record of meal breaks under Wage Order 1-2001, § 7(A)(3) which provides in part: "Meal periods during which operations cease and authorized rest periods need not be recorded." To support this exception, Defendants point to declarations by "[o]ver a dozen employees [who] stated they do not work during meal breaks," and who "assert no work can be performed because their departments shut down." Opp. at 19. Thus, Defendants argue that their meal break deduction policy was lawful because department operations ceased, and individualized issues predominate because it is not clear how to determine which employees actually worked during the meal period that was deducted from their time records without discussing the matter with each employee. *See id.*

Ultimately, Plaintiffs and Defendants disagree on whether operations in Defendants' facilities ceased and therefore whether the exception applies. The Court finds that Plaintiffs have offered a theory of liability that relies on common evidence to create a rebuttable presumption that Defendants denied employees their meal breaks. Further, upon an examination of the effect that the offered defense will have on the common question Plaintiffs raise, the Court finds that such a defense will not create issues specific to each potential class member such that individualized issues raised by the defense will predominate over common issues.

Here, the defense that Defendants were excused from recording record of meal breaks under Wage Order 1-2001, § 7(A)(3) is capable of being addressed with common evidence as to the operations of the Rohr facilities. If such a practice existed, one would expect documents which spell out how the practice was maintained and followed

throughout Rohr's plants.  In the event that Defendants prevail on this issue during pretrial proceedings or at trial, the subclass will be subject to being decertified.[7]

Accordingly, the Court GRANTS class certification as to the automatic-deduction subclass.

### iii.   Rounded Meal Break Subclass

Closely related to the automatic deduction subclass is Plaintiffs' proffered "rounded meal break subclass." Plaintiffs define the subclass as: "all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista from October 13, 2019 through the date of class certification who worked at least one shift over five hours in which the employee's rounded meal time was greater than the employee's recorded meal break time.

For this subclass, Plaintiffs present the common question whether Defendants' practice of rounding meal break times to 30 minutes, instead of using meal break times recorded by employees undercompensated employees. Pls.' Mot. at 19. Critical to ascertaining the distinction between Plaintiffs' automatic deduction and rounded meal break subclasses is Defendants' transition from AutoTime 6 and AutoTime 7. From March 27, 2015 to October 13 2019, Defendants used AutoTime 6 to record, track and manage payroll records for employees. ECF No. 56-4, Harris Decl., at 158-59. On October 14, 2019, Defendants began using AutoTime 7. *Id.* As discussed in the previous section, under AutoTime 6, 30-minute meal breaks were automatically deducted from employees' time records. Starting with AutoTime 7, employees began to record the start

---

[7] The Court observes that without the rebuttable presumption, Plaintiffs have not offered an alternative theory that relies on common evidence to establish that they were denied meal periods.  In the absence of the rebuttable presumption, the Plaintiffs have not offered a theory that relies on common evidence to establish liability.

and end of their meal periods. *Id.* Plaintiffs allege that "[e]ven after October 13, 2019, when employees began clocking in and out for meal periods, Rohr refused to compensate employees based on recorded meal break times," and instead, "compensated employees based on rounded meal break times as opposed to employees' actual recorded time entries." Pls.' Mot. at 19. To support their theory of liability, Plaintiffs point to their expert's analysis of the timekeeping records for the putative class. *Id.* Mr. Gorlick "analyzed the difference between the reported rounded hours and the actual hours, which are the elapsed hours between actual time punches in and out," and estimated that the system recorded an average of 6.1 fewer minute of time worked than actual time recorded from employees' time punches. ECF No. 56-21, Gorlick Decl., at 11. Overall, the analysis found that 99.1% of the employees in the sample had at least one shift with fewer rounded hours than actual hours recorded. *Id.*

In *Donohue*, the California Supreme Court found that "[t]he practice of rounding time punches for meal periods is inconsistent with the purpose of the Labor Code and the IWC wage order," 11 Cal. 5th at 68. Further, "[t]he precision of the time requirements set out in Labor Code section 512 and Wage Order No.4—"not less than 30 minutes' and 'five hours per day' or 'ten hours per day'— is at odds with the imprecise calculations that rounding involves." *Id.* When an employee's meal break is shorter than the thirty minutes required by law, an employer is required to pay a meal period premium as compensation. Under Defendants' policy, a meal break recorded from 10:59 a.m. to 11:31 a.m. is treated the same as a meal break recorded from 11:02 a.m. to 11:28 a.m. As the California Supreme Court noted, this sort of rounding which treats a compliant (indeed, two minutes "too long") meal break the same as a noncompliant 26-minute meal break contravenes the structure and purpose of the governing law. *See id.* at 69. ("The premium pay structure under Labor Code section 226.7 and Wage Order No. 4 confirms that rounding is inappropriate in the meal period context.")

Defendants argue the rounded meal break subclass is not susceptible to classwide treatment because it suffers from the same deficiencies as the automatic-deduction theory of liability. Opp. at 20. Specifically, the theory "assumes employees performed some work during part of their meal breaks and is not certifiable for the same reasons." *Id.* The Court disagrees with this interpretation. Under the applicable law, the rounded meal break theory does not require Plaintiffs to demonstrate that employees were working during the rounded meal period. From the unequivocal language in *Donohue*, it appears that Plaintiffs need only demonstrate that Defendants had a practice of rounding employees' meal periods to thirty minutes, despite what the actual length of the meal period punched by employees truly was. *See Donohue*, 11 Cal. 5th at 69 (finding that rounding of meal breaks does not comply with the Wage Order).

The Court finds Plaintiffs have presented common evidence in the form of timekeeping records, that is susceptible to a classwide inquiry into whether Defendants' practice of rounding meal breaks under AutoTime 7 was unlawful, and whether Defendants are liable to compensate putative class members for the presumed meal break violations. The Court hereby GRANTS class certification as to the Minimum Wage – Rounded Meal Break Subclass and the Overtime – Rounded Meal Break Subclass.

iv.   Off-the-Clock Subclass

Plaintiffs' final proposed wage and overtime subclass consists of "all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period." Pls.' Mot. at 8.

Plaintiffs present the question of "[w]hether Defendants failed to compensate employees for all hours worked as a result of their policies which required employees to be subject to Defendant[s'] control while off-the-clock." Pls.' Mot. at 21. To support the off-the-clock theory of liability, Plaintiffs state "substantial evidence demonstrates that putative class members were not compensated for time spent before their shifts during

which they were required to perform work-related tasks, including, e.g., scanning in at the security gate, donning their uniforms/protective gear, and walking to the time clock located closes to their work area before they could clock in for work" along with claiming that "Defendants' practices of requiring employees to leave and return to their work area within the 30-minute break period" and donning and doffing protective gear within 30 minutes. Pls.' Mot. at 20-21. As a result, employees were undercompensated for their time spent working outside of scheduled shift hours.

Under California law, "a plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 548 (E.D. Cal. 2010)). Defendants contend that all of Plaintiffs' sub-theories fail.

### 1. *Scanning and Walking*

To support the scanning and walking off-the-clock theory, Plaintiffs rely mostly on Deposition testimony. For example, Plaintiffs point to testimony from an employee that it was the policy to clock in at the time clock closes to one's work area, and that it took this employee nine minutes to walk from his car to the time clock where he was permitted to swipe in. ECF No. 77 at 20.[8] Plaintiffs also point to testimony from one of Defendants'

---

[8] Q: Once you walked through the turnstile, you walked to your workstation; is that correct?

A: Walked to my work area to clock in, yes.

[…]

Q: How long did it take to walk from your car to the first time clock for which you could swipe in?

A: Approximately, nine minutes.

PMK, who stated "the guidance that we give to employees is to try to clock in at the terminal that's closest to their work area." Pls.' Mot. at 20.

Defendants, on the other hand, argue that this theory of liability fails because Defendants were not required to compensate employees for the time spent scanning in at the gate to Defendants' facilities or the time spend walking to employee time clocks or workstations. Opp. at 20. "California law is clear that travel time is compensable only if the employer 'require[s] employees to take certain transportation to a work site.'" Opp. at 21 (citing *Morillion*, 22 Cal. 4th at 588 (2000); *see also Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 271 (2006) (finding employees' time spent commuting to work in employer-provided bus was not compensable because the provided bus was optional). Thus, Defendants had no obligation to compensate employees for their time scanning in and out at the gate, or walking to their workstations, so there was no harm to putative class members. Even if the time was compensable, Defendants argue that individualized issues predominate. Opp. at 21. For some employees the time it takes to walk from the facility entrance to a workstation "varies on any given day based on a multitude of factors, such as where the employee parks, where they work at the facility, an employee's pace of walk, and even whether the employee speaks to coworkers." *Id.* Here, individualized inquiries predominate, and the Plaintiffs have not demonstrated there is classwide evidence available to allow the trier of fact to determine the amount of time employees spent scanning in, walking to the nearest time clock, and reporting to their workstations. Further, and more fundamentally, Plaintiffs failed to demonstrate that there was, as a legal matter, any violation for which Defendants can be held liable. Therefore,

---

Q: Why couldn't you swipe in to that first time clock?

A: We were – It was [the] policy that you clock in to your – into a time clock in your own work area.

the Court finds that class certification is not proper for off-the-clock time under the scanning and walking theory of liability.

### 2.     *Donning and Doffing*

Similarly, Plaintiffs argued that Plaintiffs were undercompensated because they were required to don and doff protective gear, and that Defendants did not pay class members for this time spent pre-shift. Pls.' Mot. at 20. On Reply, Plaintiffs point to testimony from Defendants' PMK, who affirmed that "unionized employees . . . are required . . . to be clocked in and dressed and ready to begin working by the start time of their shift." ECF No. 77 at 21 (citing ECF No. 56-4 (Harris Dep.) at 97). Plaintiffs cite to deposition testimony to assert that Defendants "do[] not dispute that it required all union employees to don protective gear . . . and prohibited all of them from bringing food to the work area." Reply at 16. Generally, Defendants argue that there is no common practice with common proof, and that there is no such policy requiring donning and doffing while employees are off the clock, and "[m]any employees testified that they never donned and doffed off the clock" and individualized issues would predominate over common questions. Opp. at 23 & n.35.

### 3.     *Travel to and from workstation during breaks*

Finally, Plaintiffs present the question of whether Defendants had a policy and practice of requiring employees to leave and return to their workstations within the designated break time. Pls.' Mot. at 20-21. Plaintiffs argue this policy represents a "failure to relinquish control over employees" during their breaks. *Id.* at 20.

As discussed above, Plaintiffs cite to deposition testimony to assert that Defendants "do[] not dispute that . . . [they] prohibited all of them from bringing food to the work area." Reply at 16. However, as Defendants note, the testimony excerpts on the pages to which Plaintiffs point do not support this assertion at all. "At most though, only one piece of that evidence arguably relates to a purported prohibition of food at the work

area. The rest of the evidence provides that employees left workstations to eat, but were not necessarily required or bound by a policy to do so." Sur-Reply at 16. Thus, Defendants argue Plaintiffs failed to establish Defendants had any policy or practice of requiring employees to leave their workstations during meal breaks. Opp. at 22. From the Court's own review of the deposition testimony to which Plaintiffs point, there seems to be no evidence whatsoever that such a policy existed, or Plaintiffs have failed to direct the Court's attention to such evidence. The Court finds that certification of Plaintiffs' off-the-clock theory of liability is not proper as to the travel to and from workstation theory.

Plaintiffs have failed to demonstrate that there are common policies or practices as to the scanning and walking, donning and doffing, or travel to-and-from workstations theories, such that class certification for the off-the-clock theory of liability would be appropriate. The Court DENIES class certification as to the off-the-clock subclass.

v.  <u>Regular Rate Subclass</u>

With respect to their Overtime Class, Plaintiffs seek to certify a "regular rate subclass" to include "all persons employed by Defendants as non-exempt employees at Defendants' Riverside and Chula Vista facilities during the Class Period who worked at least one shift over eight hours long and also earned at least one form of non-discretionary renumeration (such as shift differentials, shift premiums, special awards, and other bonuses) during the same pay period." Pls.' Mot. at 9.

Under California law, each employee must be paid overtime wages at a rate of "no less than one and one half times the regular rate of pay" for that individual employee. Lab. Code § 510(a); 8 Cal. Code Reg. § 11100, subd. 3(A)(1). The "regular rate" of pay is also important in the meal and rest period context. If an employee misses a meal or rest break, the premium paid to the employee must also be paid at the employee's regular rate. Lab. Code § 226.7(c); 8 Cal. Code Reg. § 11100, subd. 11(B), 12(B). When calculating the "regular rate" for overtime pay and the meal or rest break premiums,

employers must include in the calculation not only the employee's "base" rate of pay, but also any additional non-discretionary forms of renumeration. *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858 (2021). Many different forms of renumeration must be included in the calculation of the employee's regular rate of pay, including hourly earnings, salary, piecework earnings, commissions, non-discretionary bonuses, and the value of meals and lodging. DLSE Manual § 49.1.1. At bottom, the regular rate is an average of the employee's total earnings from a pay period—that is "his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs." 29 C.F.R § 778.115; DLSE Manual § 49.2.5; *Huntington Memorial Hosp. v. Sup. Ct.*, 131 Cal.App.4th 893, 902-03 (2005) (finding California Labor Code follows federal standard for determining an employee's regular rate of pay); *Magadia v. Wal-Mart Assoc., Inc.*, 384 F.Supp.3d 1058, 1077-78 (N.D. Cal. 2019) (finding "regular rate of compensation . . . means the employee's base rate of compensation plus 'other forms of qualifying compensation . . . .'"); *Ibarra v. Wells Fargo Bank, N.A.*, 2018 WL 2146380, at *3 (C.D. Cal. 2018).

Plaintiffs present the common question of whether Defendants failed to properly calculate the regular rate of pay for employees for the purposes of overtime. *See* Pls.' Mot. at 22. Plaintiffs have argued that "Defendant has a uniform practice of failing to pay overtime at the regular rate of pay" because Rohr failed to include non-discretionary renumeration in the regular rate of pay for overtime purposes. *Id*. To support their theory of liability, Plaintiffs rely upon their expert's analysis of employee payroll records which "reflect various forms of [non-discretionary] renumeration, such as shift premiums, merit awards, special award, and gift cards." *Id.*

In his analysis, Plaintiffs' expert found that Defendants' "payroll data included earnings codes that I understand Plaintiffs allege to be additional renumeration that

should be factored into the regular rate of pay for overtime purposes." ECF No. 56-21 (Gorlick Decl. at 15). The payroll codes that are potentially relevant to this question included "SHIFT PREM," "MERIT LUMP," "AWARD," "SPECIAL AWARD," "GIFR CARD," and "CTRCT SGN BON." *Id.* Mr. Gorlick found that 233 of 299 employees analyzed in the sample "had at least one pay period with overtime **and** one of the above forms of additional renumeration." *Id.* (emphasis added).

Defendants argue that Mr. Gorlick's analysis of the sample does not draw any legal conclusion about whether or not each form of additional renumeration should have been factored into overtime. Opp. at 24. In other words, the finding that 233 of 299 employees received some form of additional renumeration does not determine whether, for each employee, that renumeration was discretionary or non-discretionary, and needed to be included in the regular rate calculation. *Id.* As such, individualized inquiries will be required to determine (1) whether the remuneration is non-discretionary; (2) whether each employee earned that remuneration; (3) whether the employee received overtime pay during that period; and (4) whether the remuneration was factored into the overtime pay. Opp. at 24.

The parties offer differing interpretations of how district courts have addressed the regular rate theory of liability. *See* Reply at 16. Plaintiffs maintain that their regular rate theory is suitable for classwide treatment for two reasons that belie Defendants arguments. First, Plaintiffs have identified the forms of renumeration that Defendants failed to include in employees' regular rate of pay. *Cf. Bebber v. Dignity Health*, 2021 WL 1187268 (E.D. Cal. Mar. 30, 2021) (finding no commonality where plaintiffs did not identify the types of renumeration that the defendant failed to include in the regular rate of pay). Here, Plaintiffs have identified the forms of renumeration they believe are at issue for all employees in the proposed regular rate class. Second, contrary to Defendants' arguments, Plaintiffs contend the identified forms of renumerations applied

broadly to proposed class members. *Cf. Culley v. Lincare Inc.*, F. Supp. 3d 1184 at 1188-89 (2017) (on summary judgment, decertifying regular rate class because plaintiffs failed to sufficiently illustrate that defendant's bonus plan was non-discretionary, and it would not otherwise be covered by FLSA). Unlike in *Culley*, here, Plaintiffs have asserted that various identified renumerations applied to all employees in the proposed class and "agreed they were compensation for work performed" and applied to all members of the proposed regular rate subclass. Reply at 16.

Ultimately, the Court finds that the regular rate subclass is suitable for certification and GRANTS certification of this subclass. Plaintiffs' common question on the regular rate theory can be answered with common proof based on Defendants' timekeeping records and employees' wage statements which will demonstrate whether employees' received non-discretionary renumeration for hours worked that was not included in the regular rate of pay for the purposes of overtime and meal compensation.

### b.    Meal Period Claims Class

Plaintiffs seek to certify a Meal Break Class consisting of "all persons employed by Defendants as non-exempt employees at their facilities in Riverside and Chula Vista during the Class period who worked at least one shift over five hours long." Pls.' Mot. at 9. The proposed Meal Period Class is divided into three subclasses: (1) first meal break subclass for union employees, (2) first meal break subclass for non-union employees, and (3) second meal period subclass for all employees. *Id.* at 9-10.

#### i.    First Meal Break Subclass

Plaintiffs define the First Meal Break Subclass for union employees as "all persons employed by Defendants as unionized, non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over five hours long." *Id.* at 9.

As to the first meal break subclasses, Plaintiffs renew their allegations that underly the automatic-deduction and rounded meal break theories, discussed above. The new common question they present is "whether Rohr had a common practice of not paying employees meal and rest break premiums when compliant meal and/or rest breaks were not provided." Pls.' Mot. at 23.

Under California law, "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). Plaintiffs allege Defendants did not pay required statutory break premiums. Pls.' Mot. at 28.

To support their theory of liability, Plaintiffs rely on Defendants' sample timekeeping records, and Mr. Gorlick's analysis of those records, to assert that "100% of employees had at least one recorded meal break violation." *Id.* (citing ECF No. 56-21, Gorlick Decl., at 15). Specifically, Plaintiffs point to three sorts of violations: (1) meal breaks that began after more than five hours of work; (2) shifts where there was no recorded meal break; and (3) meal breaks that were shorter than 30 minutes in length. ECF No. 56-21, Gorlick Decl., at 12. Based on Plaintiffs' expert analysis, 66.4% of work shifts which lasted longer than 5 hours (the time at which employers are required to provide a meal break), had at least one late, missed, or shortened meal break. *Id.*

Defendants contend that Plaintiffs have failed to establish that Defendants had a common practice of forcing employees to take meal or rest breaks short or late or to miss them altogether. Opp. at 23 (citing *Coleman v. Jenny Craig, Inc.*, 649 F. App'x 387, 388 (9th Cir. 2016)). Further, Defendants argue that they *did* pay meal break premiums. Opp.

at 32 (citing ECF No. 56-6, Moua Dep., at 155).[9] And finally, they argue Plaintiffs misapply *Safeway, Inc. v. Superior Ct.*, 238 Cal. App. 4th 1138 (2015). In *Safeway*, the court found that class certification was appropriate "when an employer directs or improperly pressures employees to miss, shorten, or delay meal breaks in the absence of a suitable waiver or agreement, employees accrue premium wages that the employer is obliged to pay, without any demand or action by the employee," 238 Cal. App. 4th at 1156.

Defendants argue that that *Safeway* does not support the conclusion that a failure to pay premiums, alone, supports certification and that courts have "denied certifying claims based on the failure to pay premiums where, like here, the plaintiffs seek actual accrued premiums, understanding that individual assessment of how many breaks were missed would be required." Opp. at 32 (citing *Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048, at *9 (N.D. Cal. 2017)).

------------------------------

[9] Q: Are you familiar with the term 'meal break penalty'?

[. . .]

A: Yes, I am.

Q: What's your understanding of that terminology?

A: So employees are supposed to receive an uninterrupted – like if they work a specific amount of time—meal break. If they're interrupted, if they don't get it, if it doesn't fall within that period or whatever, then we have to pay a—or if they don't take that full time, we have a pay a meal premium, a penalty.

Q: And do you have an understanding of what that premium or penalty is?

[. . .]

A: One hour of regular pay.

Q: Okay. And are you aware of employees received meal premiums or penalties?

A: Yes.

As discussed in the Rounded Meal Break Subclass section, *supra* at 15, the law governing meal breaks is clear, and the failure to pay premiums when those regulations are not followed, contravenes the purpose of the statutory scheme. With a full dataset of payroll data and timekeeping records, meal break premiums owed to putative class members for missed and shortened meal breaks can be assessed on a classwide basis, and will not necessarily require individual inquiry into the circumstances surrounding each and every employee's work shifts and meal break periods. Therefore, the Court hereby GRANTS class certification as to the Break Premium Theory of the First Meal Break Subclass (along with the Rounded Meal Break and Automatic Deduction Subclass theories).

### iii.   Second Meal Period Subclass

Plaintiffs' Second Meal Period Subclass is defined as "all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over ten hours long." Pls.' Mot., at 10.

Plaintiffs allege that Defendants "had a common practice of failing to provide employees with a second 30-minute meal period during shifts over ten hours long." *Id.* at 25. To support this theory of liability, Plaintiffs again rely on the rebuttable presumption created by Defendants' failure to record meal breaks.[10] *Id.*

---

[10] In their papers supporting the second meal subclass, Plaintiffs offer an alternative theory in support of their claim, they assert that they were denied a 30-minute meal period because their meal break was shortened by the time required to walk to and from their workstation. This theory is premised on the idea that employees walking to and from lunch are under control of their employer. Plaintiffs do not offer any caselaw in support of this novel proposition and the Court rejects it.

With respect to the second meal period class, Defendants do not rely on the cessation of operations exception to the recording of meal breaks under Wage Order 1-2001, § 7(A)(3). Instead, Defendants contend that Plaintiffs have ignored the lawful written policy, under which "Rohr policy provides a second meal break by the end of the tenth hour of work and a third rest break to employees who work more than 10 hours a shift." Opp. at 27. "This facially lawful policy precludes commonality." *Id.* (citing *Perez v. Leprino Foods Co.*, 2021 WL 53068, at *8 (E.D. Cal. Jan. 6, 2021). Here, Plaintiffs instead argue that while the meal break policy is lawful on its face, the common practice violated the policy.

For the reasons discussed above, the Court GRANTS Plaintiffs' motion to certify the Meal Period Class as to the Second Meal Period Subclass based on the Break Premium, Rounded Meal Break Subclass and Automatic Deduction theories of liability.

### c.      Rest Break Claims Class

In their motion, Plaintiffs define the Rest Break Class as "all persons employed by Defendants as non-exempt employees at Defendants' facilities in Riverside and Chula Vista during the Class Period who worked at least one shift over 3.5 hours long." Pls.' Mot. at 9.

The common question presented by Plaintiffs is whether Defendants failed to relinquish control over employees due to their practice of prohibiting employees from leaving the premises for rest breaks. *Id.* at 23. To support their theory of liability, Plaintiffs rely primarily on instructions distributed to managers at the Riverside facility in the form of a "Talking Point" memorandum as evidence that Defendants required employees to stay on premises during their rest breaks. ECF No. 56-12, Ex. K ("Talking Point"). The Talking Point states: "Hourly and non-exempt employees may not leave the facility during the 10 minute break; this is defined as outside of the turnstiles. The half

hour lunch break is unpaid and employees may leave the facility during this time only." *Id.* at 3.

Plaintiffs argue that "substantial testimony from Plaintiffs and other class members confirms the instruction to management that non-exempt employees were not permitted to leave the premises for their 10-minute rest breaks." Pls.' Mot. at 24. Here, Plaintiffs have pointed to a specific policy that applied to employees. But Plaintiffs fail to acknowledge key facts that ultimately defeat certification of these claims. First, Defendants' written rest break policy for union employees was governed by the Collective Bargaining Agreement effective during the Class Period. *See* ECF No. 67-2 ("CBA") at 333. Section 25.01 of the CBA reads "There will be two ten (10) minute rest periods for the first and second shifts . . . one (1) before and one (1) after the regular lunch period, at such times as are designated by the Company. Those employees who work two (2) more hours of overtime either before or after their assigned shift will be granted a ten (10) minute rest period at a time designated by the Company." *Id.* Further, the Company's rest break policy stated: "Employees are authorized and permitted to take one 10-minute paid rest break for every four hours worked or major portion thereof." ECF No. 67-2 at 418. This policy was distributed to each employee at the start of their employment, and posted in employees' break rooms. ECF No. 67-4 (Fonseca Decl.) at 48.

Further, Plaintiffs conveniently omit the fact that the Talking Point was distributed only to supervisors at the Riverside facility, not those at Chula Vista. ECF No. 67-4 at 111 (Moua Decl.). Second, the Talking Points distributed on July 25, 2018, *see* ECF No. 56-12 ("Talking Point") and retracted only sixty-one days later on September 24, 2018, *see* ECF No. 67-2 at 411 ("Talking Point and Related Correspondence") ("Employees may utilize the 10 minutes to include exiting the turnstiles"). *See also* ECF No. 67-2 (Moua Dep.) at 238-41; ECF No. 67-4 (Moua Decl.) at 111. It was only distributed to

supervisors, not employees. ECF No. 67-4 (Moua Decl.) at 111. And while they point to "substantial testimony" by employees as evidence that employees were not permitted to leave during rest breaks or were not aware they were affirmatively permitted to do so,[11] on the whole they do *not* support the contention that employees were told about the policy and required to comply with the policy.[12]

Defendants also counter with evidence suggesting that employees did leave the premises on their rest breaks. ECF No. 67-4 (Moser Decl.) at 73 ("I spent my rest breaks by exiting the turnstile to our facility and smoking a cigarette in a dirt patch near a traffic intersection. I was never told not to do this and I never go in trouble for doing so"); ECF No. 67-4 (Walker Decl.) at 89 "I do not do any work during my rest breaks and am free to do whatever I want. As a result, I have spent nearly every rest break by leaving the premises to smoke on the sidewalk on Arlington Avenue in Riverside. I know it is within my right under company policy to go offside during my rest breaks. No one has told me otherwise, and I have not been punished or coached for doing so").

_____

[11] *See, e.g.*, ECF No. 67-3 (Kline Dep.) at 36-37 (Q: "So you never took rest breaks off company premises, right?" A: "Correct." Q: But you were allowed to leave on your rest breaks, right? A: "I'm not sure." Q: "But no supervisor told you can't leave for your rest breaks?" A: "No." Q: "And you never heard of anyone being disciplined for leaving the premises during a rest break, right?" A: "No." Q: "You never heard of someone else being told not to leave for a rest break, right?" A: No.")

[12] *See, e.g.* ECF No. 67-3 (McDaniel Dep.) at 16-18 (Q: "Now, what would you do on your rest breaks?" A: "Handle personal stuff" Q: "Were you allowed to leave the premises." A: "Yes." Q: "Did you ever leave the premises during your rest breaks?" A: "No." Q: "Did anyone ever tell you that you were unable to leave the premises during your rest breaks?" A: "No." Q: "Do you know if other employees left the premises on their rest break?" A: "I don't know." Q: "Were your rest breaks ever interrupted with work matters?" A: "No." Q: "Did anyone ever ask you to work through your rest breaks?" A: "I don't recall."

20-cv-574-GPC-AHG

Because the alleged policy to not permit employees to leave for rest breaks lasted for only 61 days, and only applied to the Riverside facility, class certification would only be possible as to the Riverside employees for that limited period of time. But certification even as applied to that limited set of employees during the applicable period in 2018 is not even proper because individualized issues predominate over common questions. There is an open question as to whether the rest break policy as dictated by the Talking Point was ever even enforced—and how many employees were required to stay on premises during the Policy's lifetime. Plaintiffs presented evidence that employees were restricted from leaving the premises;[13] Defendants presented evidence that employees were not restricted from leaving the premises. Plaintiffs have not established that the common question predominates over even the severely narrowed employees that would make up the Riverside class during the 61 days. Accordingly, certification as to the rest break claim is denied.

### d.   Wage Statement Claim Class

Plaintiffs seek to certify a Wage Statement Class, which they define as "all persons employed by Defendants at Defendants' facilities in Riverside and Chula Vista as non-exempt employees during the Class Period, who received at least one wage statement from Defendants." Pls.' Mot. at 10.

California Labor Code 226(a) requires that employers "furnish to his or her employee . . . an accurate itemized statement in writing showing," among other information, the employee's "gross wages earned," "total hours worked by the employee," "net wages earned," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). If an employer fails to satisfy the requirements of

---

[13] Pls.' Mot. at 24 n.11

226(a), she would be entitled to actual damages or statutory penalties under Section 226(e).[14] To demonstrate an injury, an employee must show that the employer

_____

[14] (e) (1) An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

(2) (A) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

(B) An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide accurate and complete information as required by any one or more of items (1) to (9), inclusive, of subdivision (a) and the employee cannot promptly and easily determine from the wage statement alone one or more of the following:

(i) The amount of the gross wages or net wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a).

(ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period. Nothing in this subdivision alters the ability of the employer to aggregate deductions consistent with the requirements of item (4) of subdivision (a).

(iii) The name and address of the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer during the pay period.

(iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number.

(C) For purposes of this paragraph, "promptly and easily determine" means a reasonable person would be able to readily ascertain the information without reference to other documents or information.

1    "knowing[ly] and intentional[ly] failed to provide accurate and complete information as

2    required by one or more of the Section 226(a) requirements, Cal Lab. Code § 226(e)( and

3    if the employee cannot "promptly and easily"  determine from the wage statement the

4    information to which they are entitled. Cal. Lab. Code § 226(e)(3).

5          Plaintiffs allege that Defendants had a policy and practice of providing wage

6    statements to employees that failed to satisfy California Labor Code requirements. Pls.'

7    Mot. at 20. Specifically, Plaintiffs allege that Defendants "had a central department that

8    processed payroll for all class members, whose wage statements were in substantially

9    [the] same format," and that the wage statements created for employees were deficient in

10   the following ways: First, they "fail[ed] to show the total hours worked during each pay

11   period"; second, statements "did not include a separate line for the total hours worked

12   during the pay period,"; and third, "when employees received any other forms of

13   renumeration in the same pay period that were not hours worked, employees could not

14   simply add together the categories of 'Hours' listed on the wage statements to determine

15   the total hours worked." Pls.' Mot. at 29. Further, "the wage statements contain numerous

16   confusing pay codes" that "[e]ven Rohr's 30(b)(6) witness was unable to explain what

17   many of the different pay codes in the employees' wage statements referred to." *Id.* at 30

18   (citing ECF No. 56-7, Trujillo Dep., at 103-105).[15] Finally, "Defendants' wage statements

19

20          (3) For purposes of this subdivision, a "knowing and intentional failure" does not
21       include an isolated and unintentional payroll error due to a clerical or inadvertent
22       mistake. In reviewing for compliance with this section, the factfinder may consider
         as a relevant factor whether the employer, prior to an alleged violation, has adopted
23       and is in compliance with a set of policies, procedures, and practices that fully
24       comply with this section.

25   [15] In their Reply, Plaintiffs direct the Court to portions of their "Reply Compendium of
     Evidence" (ECF No. 77) for testimony that purportedly supports Plaintiffs' contention
26   that employees "did not review their wage statements, did not understand them, or lacked
27   knowledge as to the applicable legal standards." Reply at 20. However, the portions of

28

systematically failed to include correct information about the hours worked at each applicable rate of pay, including the applicable shift premium." Pls.' Mot. at 30.

To support their wage statement theory, Plaintiffs point to Defendants' common payroll practices, and provide examples of the earning statements received by proposed class representatives Nathaniel Morgan (ECF No. 56-10) and Michael Bevan (ECF No. 56-11). For example, Plaintiffs illustrate that Morgan's earnings statement includes numerous pay code lines some of which are not for hours worked, including "Bereavement" and "Grievance" and omits any lines indicating the total hours worked at each rate of pay. *See* ECF No. 56-10 at 2; Mot. at 29-30; Reply at 20-21. Plaintiff Bevan's earnings statement includes a "confusing" pay code which reads "Ot3Rdshf@2X," and does not state anywhere the total number of hours worked. ECF No. 56-11 at 2; Reply at 21.

Defendants counter that "the wage statements list all hours worked" and "[t]here is no requirement to list the sum of all hours; they are sufficient if they list hours by type (i.e., regular and overtime) and employees can do simple match to calculate total hours." Opp. at 33. Defendants rely on *Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136 (2010) to say that statements which list hours worked are sufficient, ECF No. 67 at 33. However, Plaintiffs rightly distinguish that case. Reply at 20. In *Morgan*, the court limited its analysis to the "precise issue . . . whether a wage statement complies with section 226 where it separately lists the total number of regular hours and the total number of overtime hours worked by the employee, but does not include an additional line with the sum of those two figures," 186 Cal. App. 4th at 1144. Here, Plaintiffs have shown that Defendants' earnings statements include multiple lines of pay codes such that

the "RC" to which Plaintiffs direct the Court do not include any such testimony related to wage statements or the topics Plaintiffs claim should be elucidated therein.

an employee may not necessarily be able to easily discern their total number of hours worked in any given pay period. Defendants also argue that *McKenzie v. Fed. Exp. Corp.*, 765 F. Supp. 2d 1222 (C.D. Cal. 2011) is not inapposite because, "[u]nlike here, the employer there provided 'idiosyncratic' wage statements that listed the same overtime hours twice, resulting in incorrect hours." Opp. at 33. And Defendants are right that "Plaintiffs offer absolutely no evidence that wage statements did not include the hours worked at each applicable rate of pay." *Id.* But, Plaintiffs claims do not rely on that contention at all—instead, they have argued that the earnings statements violate Section 226(a) because they failed to allow employees to "promptly and easily determine" the hours worked at each applicable rate of pay without confusion from inscrutable payroll codes as is required by the Labor Code. As Plaintiffs have stated, "whether the wage statements were improper involves a classwide question subject to common proof." Reply at 21. The Court agrees, and GRANTS class certification as to Plaintiffs' Wage Statement Class.

### e.   Derivative Claims

Plaintiffs also seek to certify three Derivative Claims based on their Sixth, Seventh and Eighth Causes of Action alleged in the Second Amended Complaint. Pls.' Mot. at 30; SAC at 21-24. The three derivative claims allege Defendants failed to pay putative class members final wages, failed to furnish accurate itemized wage statements, and that Defendants engaged unfair business practices. Pls.' Mot. at 30. To support certification of these claims, Plaintiffs state that they are derivative of the other claims they seek to certify. Pls.' Mot. at 30 (citing *Westfall v. Ball Metal Beverage Container Corp.*, No. 216CV0263KJMGGH, 2019 WL 202677, *1 (E.D. Cal. Jan. 15, 2019)).

As to Plaintiffs' derivative claim based on the Sixth Cause of Action alleging that "Defendants routinely failed to provide Plaintiffs and Class members with timely, accurate and itemized wage statements," SAC at 21, this claim is substantially similar to

the Wage Statement Claim Plaintiffs seek to certify for the Wage Statement Class. The Court finds that the derivative claim alleging Defendants failed to furnish accurate itemized wage statements is suitable for class certification and GRANTS Plaintiffs' motion to certify the class as to this claim.

As to Plaintiffs' claim alleging Defendants failed to pay putative class members final wages, Plaintiffs allege that "DEFENDANTS knowingly and willfully failed to indemnify PLAINTIFFS and CLASS MEMBERS for all business expenses and/or losses incurred in direct consequence of the discharge of their duties while working under the direction of DEFENDANTS, including but not limited to, expenses associated with the purchase and maintenance of uniforms, work shoes/boots/insoles, cell phone usage, laundering of uniforms, and other employment-related expenses, in violation of California Labor Code § 2802." SAC at 22. Plaintiffs have not addressed what common evidence they intend to use to establish Defendants' liability for the statutory penalties they seek to claim under California Labor Code § 2802(c). *See* Pls.' Mot. at 30-31, merely that it is derivative of Plaintiffs' other claims. It is plausible that the common evidence is similar to that which Plaintiffs would use to demonstrate liability under the Wage Statement Class and the derivative wage statement claim. However, Plaintiffs have not demonstrated why this particular derivative claim about final wages and expenses is suitable for class certification. The Court DENIES Plaintiffs' motion to certify the derivative claim related to final pay and expenses because Plaintiffs have failed to carry their burden.

As to the final derivative claim, based on Plaintiffs' Eighth Cause of Action alleging Defendants are liable for violations of California Unfair and Unlawful Business Practices (SAC at 23), the Court finds that this derivative claim is suitable for class certification, but only as it relates to the subclasses and underlying claims that this Court has granted class certification in the preceding sections of this Order.

### 2. Superiority

If a court finds that the proposed class or subclass satisfies the commonality and predominance requirements of Rule 23(b)(3), the court must also determine whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed R. Civ. P. 23(b)(3). To determine whether a class action is superior to alternative methods of adjudicating a case, a court considers: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already brought by or against proposed class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class. Fed. R. Civ. P. 23(b)(3)(A)-(D). Consistent with the aim of the Federal Rules of Civil Procedure to promote judicial economy, a class action is the superior method for resolution "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Cartier-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Wage and hour disputes are frequently litigated as class actions. *See Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1538 (2008).

Plaintiffs maintain that a class action is a superior method of adjudicating putative class members' claims against Defendants. Pls.' Mot. at 32-33. They argue a class action is superior because "class treatment is clearly superior to hundreds of individual actions" prosecuted by each individual employee, there is no other pending litigation asserting the same claims as Plaintiffs, "this particular forum is desirable because the class members worked in California and California substantive state law will govern the outcome of this case," and because the class action will be manageable. *Id.*

Defendants' primary objection is that a class action will not be manageable because Plaintiffs' proposed two-phase trial plan is "fatally flawed." Opp. at 34. Defendants argue that, absent a manageable trial plan, Plaintiffs have not satisfied their

burden on this prong of the 23(b)(3) analysis. Defendants cite *Duran v. U.S. Nat'l Bank Ass'n*, 59 Cal. 4th 1, 31 (2014), for the proposition that trial courts must assess whether there is a viable trial plan at the class certification stage. However, Plaintiffs contend this interpretation goes too far and that "*Duran* does not require a formal trial plan at certification, particularly where, as here [P]laintiffs' moving papers describe the evidence and methodology they will use to establish liability at trial and discovery has been limited to certification rather than merits issues." Reply at 21. The Court agrees with Plaintiffs. At least on the claims that the Court found suitable for class certification, as described above, Plaintiffs have described the evidence and analysis they intend to use to demonstrate Defendants' liability for the claims alleged, primarily Defendants' timekeeping records for putative class members over the Class Period. Through discovery, further data will be produced and available for Plaintiffs for them to provide common proof as to the common questions they have presented.

Considering the superiority prong's four factors, the Court finds that a class action is the superior method for resolving the claims Plaintiffs allege against Defendants.

## CONCLUSION

Accordingly, the Court HEREBY ORDERS that Plaintiffs' Motion for Class Certification is GRANTED IN PART and DENIED IN PART, as follows:

Consistent with the Court's findings in the Discussion section of this Order, the Court CERTIFIES under Rule 23(b)(3) the following classes and subclasses for union employees during the Class Period: Plaintiffs' Meal Period Class, Overtime Class, and Minimum Wage Class, and the related subclasses under the automatic deduction of meal break, rounded meal break, first meal break and second meal break, and wage statement claims. The Court also CERTIFIES for union employees during the Class Period Plaintiffs' derivative claims relating to Defendants' failure to provide accurate and

itemized wage statements, and unfair and unlawful business practices under California law.

The Court DENIES Plaintiffs' motion as to all other Classes and subclasses, without prejudice, because Plaintiffs failed to satisfy their burden under Rule 23.

**IT IS SO ORDERED.**

Dated:  March 31, 2022

Hon. Gonzalo P. Curiel
United States District Judge

20-cv-574-GPC-AHG