UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL MORGAN, an individual; MICHAEL BEVAN, an individual; individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>ROHR, INC., a corporation; HAMILTON SUNDSTRAND, d/b/a COLLINS AEROSPACE; UNITED TECHNOLOGIES CORPORATION,<br><br>　　　　　　　　　　　　　Defendants. | Case No.: 20-cv-574-GPC-AHG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STRIKE EXPERT REPORTS PREPARED BY TERESA FULIMENI AND PRECLUDE TESTIMONY**<br><br>[ECF No. 161] |

Pending before the Court is Defendants Rohr, Inc.; Hamilton Sundstrand Corporation; and United Technologies Corporation's (collectively "Defendants") Motion to Strike Expert Reports prepared by Teresa Fulimeni and Preclude Testimony. ECF No. 161. Plaintiffs filed an Opposition, (ECF No. 161), and Defendants filed a Reply, (ECF No. 180). For the reasons below, the Court **DENIES** Defendants' Motion.

# BACKGROUND

Plaintiffs brought this class action to recover unpaid compensation resulting from Defendants' allegedly improper payroll practices and policies. On April 12, 2022, Magistrate Judge Allison H. Goddard issued a scheduling order, which provided a November 28, 2022 deadline for initial expert disclosures and a December 19, 2022 deadline for rebuttal/supplemental expert disclosures. ECF No. 115 at 3.[1]

On November 28, 2022, Plaintiffs served Fulimeni's initial report. ECF No. 161-2, Exh. 1 (initial report). Defendants state this report "contained **zero** analysis" and simply discussed "***plans*** to conduct an analysis at a later time." ECF No. 161-1 at 9 (emphasis in original). On November 29, 2022, Magistrate Judge Goddard *sua sponte* continued the initial expert report deadline to December 16, 2022 and the rebuttal/supplemental expert report deadline to January 13, 2022. *See* ECF No. 130 at 5-6. Judge Goddard further continued the rebuttal/supplemental expert deadline to January 27, 2023. ECF No. 136 at 3.

Prior to service of the initial report, the Parties agreed that Defendants would produce time and pay records for all class members, minus those who opted out, within two weeks of the conclusion of class notice. ECF No. 161-1 at 9; ECF No. 161-2 at 2 (Rusche Decl.). On October 28, 2022, the claims administrator mailed the notice to class members. *Id.* On December 28, 2022, the administrator provided Plaintiffs with the names and contact information of class members who did not opt out. ECF No. 161-1 at 10. Fourteen days later, on January 11, 2023, Defendants produced the relevant time and pay records. *Id.* On January 17, 2023, Plaintiffs informed Defendants that Fulimeni needed additional time to analyze the data produced. *Id.*; *see also* Rusche Decl. ¶ 12; ECF No. 161-2 at 352. Judge Goddard subsequently extended the rebuttal/supplementary

---

[1] Page citations refer to CM/ECF pagination.

deadline to February 21, 2023. ECF No. 139. Fulimeni filed her second report on February 21, 2023 (the "Second Report"). ECF No. 161-2, Exh. 2.

On March 6, 2023, Fulimeni produced documents in response to a subpoena. ECF No. 161-1 at 10. Included in this was an undisclosed report dated February 24, 2023. *Id.* at 10-11. Defendants allege this report "was intended to revise and replace [Fulimeni's] Second Report," but "was never disclosed to Defendants, except through subpoena." *Id.* Plaintiffs state this draft is irrelevant and that Fulimeni prepared the report to prepare for her deposition. ECF No. 171 at 19.

On March 13, 2023, Plaintiffs produced Fulimeni's third report (the "Third Report"). ECF No. 161-2, Exh. 3. Defendants argue that the Third Report "contained new opinions and analysis as well as a new damages calculation, none of which was included in the Initial Report or even the Second Report." ECF No. 161-1 at 11. Plaintiffs respond that the Third Report contained new analysis that was previously excluded as the result of "error." *Id.*

Following the production of her Third Report, Fulimeni was deposed by Defendants on April 25, 2023. ECF No. 161-1 at 12. Because the court reporter arrived late, Defendants state the deposition was not complete. *Id.* Defendants were not able to secure a date to complete the deposition until after May 1, 2023, which they state was too late to incorporate any of Fulimeni's testimony into their pre-trial briefs. *Id.*

Defendants now move to strike Fulimeni's Second Report, Third Report, and Fulimeni's opinions and testimony. *See* ECF No. 161-1 at 7. Defendants argue that (1) Fulimeni's Second Report was produced after the November 28, 2022 expert disclosure deadline and was mislabeled as a "supplemental" report, or, in the alternative, that Fulimeni's Third Report replaced the Second Report; (2) Fulimeni's Third Report was produced three weeks after the supplemental/rebuttal report deadline and improperly provided new opinions; (3) Fulimeni's reports do not offer expert opinion because they

only involve basic arithmetic; and (4) many of Fulimeni's calculations are based on "dubious assumptions" and "cherry-picked data." ECF No. 161-1 at 7-8.

## LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 26(a)(2)(D) states that a party must disclose expert testimony "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Failure to comply with a court deadline may lead to sanctions pursuant to Rule 37(b). *See Tamburri v. SunTrust Mortg., Inc.*, 2013 WL 3152921, at *1 (N.D. Cal. June 9, 2013). Further, Rule 26(e) states that a party who has disclosed expert testimony "must supplement or correct" the disclosure in a "timely manner if the party learns that in some material respect the disclosure or response in incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to disclose expert testimony as required, "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## DISCUSSION

### I. The Second Report

Defendants argue the Second Report should be excluded for two reasons: (1) it was produced after the November 28, 2022 expert disclosure deadline and is not accurately classified as a supplemental report; and (2) regardless of whether the former is true, Fulimeni's Third Report replaced the Second Report. ECF No. 161-1 at 7. Plaintiffs respond that the Second Report *is* a proper supplemental report because Defendants did not produce the full class data until January 11, 2023, and therefore, it would have been futile for Plaintiffs to produce a report with Fulimeni's analysis prior to this date. ECF No. 171 at 14.

Prior to class certification, Defendants produced "a random 15% sampling of time and pay data for the entire putative class for purposes of pre-certification discovery, with the remaining class member data to be produced if and when the class was certified." ECF No. 171 at 8 (citing to Wells Decl. ¶ 5). The pre-certification records, among other deficiencies, did not indicate whether employees were union or non-union (non-union employees are not included in the classes that were ultimately certified). *Id.* Upon class certification, the Parties filed a Joint Proposed Notice Plan, which was approved on October 18, 2022. *See* ECF No. 120, 125. The Parties agreed that Defendants would produce time and pay records for all remaining class members within two weeks of the conclusion of the notice process. ECF No. 161-1 at 9. This did not occur until January 11, 2023. *See* ECF No. 136.

On January 27, 2023, Magistrate Judge Goddard granted a Joint Motion to continue the supplemental disclosure deadline to February 21, 2023. ECF No. 139 at 2. This extension was, in part, because "Fulimeni need[ed] additional time to review Defendants' most recent production of class data to incorporate the data into a report." *Id.* On February 21, 2023, Plaintiffs timely produced the Second Report.

The issue Defendants raise now is whether the Second Report is accurately classified as a "supplemental" report. The Court finds that it is. "Supplementation" under Rule 26(e) "'means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Luke v. Family Care and Urgent Med. Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009) (quoting *Keener v. United States*, 181 F.R.D. 639, 650 (D. Mont. 1998)). A report or declaration that, for example, asserts a new legal theory or presents new opinions is not supplemental. *See id.* However, it is important for a court to determine whether the relevant information was available at the time of the initial disclosure deadline. *See e.g.*,

*O'Connor v. Boeing North Am., Inc.*, 2005 WL 6035243, at *7 (C.D. Cal. Sept. 12, 2005).

      Here, it is not disputed that Defendants did not produce the complete class data until January 11, 2023. Thus, the data relied upon in the Second Report was not available at the time of the initial disclosure deadline. However, Defendants argue that the Plaintiffs should have either (1) analyzed the 15% sample of class data that had been provided pre-certification; or (2) asked for an extension on the initial disclosure deadline. ECF No. 180 at 7-8.

      The Court finds that Plaintiffs were not required to analyze the random 15% data sampling. Prior to class certification and the conclusion of the opt-out period, the data was irrelevant at best and potentially misleading at worst. Rather than analyze the sampling, Plaintiffs' initial report provided a "general description of the approach [Fulimeni] intend[ed] to take to provide a statistically valid estimate of class member behavior with respect to meal periods, rest periods, wage statements, time worked, and other issues relevant to plaintiffs' claims." ECF No. 161-2 at 7. For example, the initial report states that "[o]nce we receive the time and payroll data, we can evaluate the length and timing of meal periods, to determine meal periods that are short, late, or missing." ECF No. 161-2 at 9.

      The Second Report, produced after Fulimeni had the opportunity to review class data, applies the methodology discussed in the initial report and drew conclusions based on this data. Although Plaintiffs' Second Report includes "new opinions," the Court finds that Plaintiffs could not reasonably have produced a relevant expert opinion prior to Defendants' disclosure of the full set of class data. Thus, the Court should not penalize Plaintiffs for any lack of analysis in the initial report.

      Defendants also argue that Plaintiffs should have requested an extension of the deadline for initial expert disclosures. However, as discussed above, the Court sees

1  Fulimen's Second Report as a proper supplemental report, and therefore it was not
2  necessary for the Plaintiffs to extend the initial disclosure deadline. The initial report
3  provided enough notice of the analysis Fulimeni would perform once she was in
4  possession of the full class data.
5     However, Fulimeni's Third Report states that it replaced her Second Report. *See*
6  ECF No. 161-2 at 61 ("This report replaces my previous report dated February 21,
7  2023."). Thus, the Court excludes Fulimeni's Second Report on the grounds that the
8  Third Report supersedes it.[2]

## II.    The Third Report

Plaintiffs' counsel states that after producing the Second Report, they discovered the Second Report "was incomplete and that a further supplemental report would be required." ECF No. 171 at 11. Plaintiffs state they notified Defense counsel on March 6, 2023 that they would provide an updated report. *See* ECF No. 171 at 11; Exh. H. As a result, Fulimeni's March 7, 2023 deposition was cancelled. *Id.* On March 10, 2023, the Court granted a Joint Motion allowing Fulimeni to be deposed after the discovery cutoff. ECF No. 152. Fulimeni was eventually deposed on April 25, 2023; however, because the court reporter did not arrive at the noticed start time, Fulimeni's deposition lasted just 5.5 hours. ECF No. 161-2 at 4-5 (Rusche Decl.). The Parties attempted to secure another date to complete Fulimeni's deposition, but a date before May 1, 2023 was not available, and Defendants say this was "far too late to incorporate the testimony into Defendants' pre-trial briefs before the May 4 filing deadline." ECF No. 161-2 at 5. Plaintiffs state Defense counsel did not propose alternative times or "attempt to confer with Plaintiffs' counsel

---

[2] The February 24, 2023 draft report Fulimeni produced in response to a subpoena is excluded for the same reason.

about any pre-trial deadlines or any purported prejudice that they believed Defendants would suffer due to the inability to resume Fulimeni's deposition." ECF No. 171 at 12.

An untimely supplemental report is not necessarily inadmissible. Rule 37(c)(1) states that an untimely expert report may be admitted if "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). To determine harmlessness, a court can consider: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851 (7th Cir. 2003)). Because there is a preference for deciding cases on the merits, "a party receiving a late or incomplete designation should not receive the ultimate sanction of dismissal, or a sanction tantamount to such, unless the receiving party is substantially prejudiced . . . ."[3] *Johnson v. Sacramento Cnty.*, 2007 WL 127799, at *1 (E.D. Cal. Jan. 12, 2007).

The Court finds that Plaintiffs' untimely disclosure of Fulimeni's Third Report is substantially justified and harmless. Under Rule 26(e), a party must "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A). Here, the redline version of Fulimeni's Third Report makes clear that Fulimeni's Third Report was intended, in part, to correct inaccuracies in the Second Report. *See e.g.*, ECF No. 161-2 at 143-160. Further, Fulimeni's Third Report includes

---

[3] Plaintiffs' Opposition incorrectly attributes this quote *Shore v. Brown*, 2009 WL 3273263 (E.D. Cal. Oct. 9, 2009). This quotation actually is from *Johnson v. Sacramento Cnty.*, 2007 WL 127799, at *1 (E.D. Cal. Jan. 12, 2007). Defendants' Reply notes this discrepancy. *See* ECF No. 180 at 12 ("[Plaintiffs] invent a quote that does not actually appear in *Shore*.").

analysis related to meal period damages and wage statement penalties. *See id.* at 152-154, 158-159. This information was omitted from the Second Report, and thus is intended to correct the previously incomplete expert report.

In addition, the Court finds Plaintiffs' delay is harmless and agrees with Plaintiffs that any prejudice to the Defendants was minimal, or at the very least could have been mitigated with additional diligence on behalf of Defendants. No trial date has been set, and, once aware of the need to correct the Second Report, Plaintiffs promptly contacted Defendants. ECF No. 171 at 21-22. Further, Plaintiffs' counsel stipulated to allow Fulimeni to be deposed after the expert discovery deadline, and the Third Report was disclosed on March 13, 2023, which was nearly two months prior to the pre-trial motion filing deadline. *Id.* at 22. Defendants had sufficient time to request an extension to file a rebuttal report and/or extend the pre-trial filing deadline, yet they did not do so. Defendants cannot now claim substantial prejudice. Accordingly, the Court **DENIES** Defendants' request to strike Fulimeni's Third Report.[4]

### III. Whether the Reports are Properly the Subject of Expert Testimony

The Court finds Defendants' argument that Fulimeni's reports are not the proper subject of expert testimony without merit. The Court does not agree that Fulimeni's reports "consists of little more than basic math." ECF No. 161-1 at 24. Plaintiffs state that Fulimeni's Third Report "analyze[d] time punch data consisting of 1,398,606 recorded shifts for more than 1,600 employees." ECF No. 171 at 24. To accurately and efficiently analyze such quantity of data, Fulimeni was required to write and employ "computer code using a statistical computing software called 'R.'" *Id.*

---

[4] Defendants have not filed a motion requesting the opportunity to file a rebuttal report to Fulimeni's Third Report. The Court would be inclined to grant such a request, should it be made.

The Court agrees that it is unreasonable to expect a lay person to analyze this substantial amount of data, regardless of whether Fulimeni's report states that she "was asked to *count* the number of pay periods from 3/27/2018 to 3/27/2022 where hours were listed in the pay data using earnings codes other than the codes corresponding to regular, overtime and double time." ECF No. 161-2 at 69 (emphasis added). Defendants rely heavily on the word "count," however, this ignores the reality that Fulimeni did not simply sift through the nearly 1.4 million shifts logged by Defendants' employees. Fulimeni's analysis was not a "[s]traightforward application of grade-school arithmetic to uncomplicated numbers" and "well within the ken of the average juror." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 5148390, at *5 (N.D. Cal. Nov. 6, 2017). Accordingly, the Court finds Fulimeni's report is the proper subject of expert testimony.

### IV. Whether Fulimeni Relied on "Dubious Assumptions"

Defendants next argue that Fulimeni's report is grounded in "baseless assumptions." ECF No. 161-1 at 26. Specifically, Defendants discuss six assumptions they believe unfairly form the bases of her analysis. *See* ECF No. 161-1 at 26-27. The Court finds most of these without merit; however, Defendants argue that Fulimeni's analysis assumes that every auto-deducted meal period, or 1,026,222 meal periods, never happened and instead the employees worked the 30 million minutes covering those meal periods. ECF No. 161-1 at 26. Plaintiffs respond that in her testimony, Fulimeni stated that her analysis simply identified how many auto-deducted meal periods occurred and does not purport to make findings on whether those meal periods were actually taken as required by law. *See* ECF No. 171 at 26-27.

However, Fulimeni's Third Report explicitly states that Fulimeni was asked to consider the auto-deducted meal periods as time worked. *See* ECF No. 161-2 at 64. An expert's opinion must be based on sufficiently reliable facts and data. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856-57 (9th Cir. 2019). "A party's own speculation is

insufficient to create a genuine issue of material fact . . . ." *Id.* at 856. Plaintiffs have not shown that the assumption that every auto-deducted meal period did not occur is based in "sufficiently reliable facts and data." Accordingly, the Court **STRIKES** the portions of Fulimeni's Third Report that purports to make findings relying on the assumption that every auto-deducted meal period was actually time worked by the employees. Plaintiffs shall file a new version of Fulimeni's Third Report with these portions omitted on or before **July 31, 2023**.

However, the Court finds Defendants' other objections without merit. Defendants argue that Fulimeni assumes that all employees that cut their meal breaks short or took their meal breaks late, or not at all, did so at Defendants' direction rather than their own choice. ECF No. 161-1 at 26-27. Fulimeni's deposition clearly shows that her findings did not intend to make a showing about employee choice; she simply analyzed the data. *See* ECF No. 171 at 27 (citing ECF No. 161-2 at 266 (Fulimeni Dep.)).

### V. Whether Fulimeni "Cherry-Picked" Data

Last, Defendants argue that Fulimeni "impermissibly cherry pick[ed] data." ECF No. 161-1 at 27. They provide three examples: (1) she counted any break where an employee punched in and out for just a minute or two as an unlawful meal break rather than a data error or something innocuous; (2) she determined that shifts greater than 20 hours should not be included in her analysis; and (3) she decided to count as two shifts any time records showing a four hour gap between out and in punches. ECF No. 161-1 at 28.

The Court finds that Defendants' objections "go to the weight of the testimony and its credibility, not its admissibility." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 970 (9th Cir. 2013). A district court's job is not to determine whether "the expert is right or wrong," but rather to determine if the testimony would be useful to a jury. *Id.* at 969. Here, Fulimeni's testimony would be useful to a jury and should not be

excluded on the grounds that Fulimeni "cherry-picked" data. If the case were to proceed to trial, Defense counsel would likely be permitted to call Fulimeni's testimony into question based on the arguments put forth in the instant motion. A judge is merely "'a gatekeeper, not a fact finder,'" and a future jury is free to reject any portion of Fulimeni's testimony they find not credible. *Id.* at 970 (quoting *Primiano v. Cook*, 598 F.3d 558, 568 (9th Cir. 2010)).

## CONCLUSION

For the reasons above, Defendants' Motion is **DENIED**. The Court strikes Fulimeni's Second Report, because it is superseded by the Third Report. Plaintiffs are ordered to file a new version of Fulimeni's Third Report without the impermissible assumption regarding auto-deducted meal periods on or before **July 31, 2023**.

**IT IS SO ORDERED.**

Dated: July 24, 2023

*[signature]*
Hon. Gonzalo P. Curiel
United States District Judge