1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11 | NATHANIEL MORGAN, an individual;
MICHAEL BEVAN, an individual;
12 | individually and on behalf of all others
similarly situated,
13

14

Plaintiffs,

15 | v.

16 | ROHR, INC., a corporation; HAMILTON
SUNDSTRAND, d/b/a COLLINS
17 | AEROSPACE; UNITED
TECHNOLOGIES CORPORATION,
18

19

Defendants.

Case No.: 20-cv-574-GPC-AHG

**ORDER:**

**1) GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT; and**

**2) GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

**[ECF Nos. 163, 164]**

20

21

22      Pending before the Court is Defendants Rohr, Inc.; Hamilton Sundstrand

23 | Corporation; and United Technologies Corporation's (collectively "Defendants") Motion

24 | for Partial Summary Judgment. ECF No. 163. Plaintiffs filed an Opposition, (ECF No.

25 | 173), and Defendants filed a Reply, (ECF No. 178). Also pending before the Court is

26 | Plaintiffs' Motion for Partial Summary Judgment. ECF No. 164. Defendants filed an

27

28

1

Opposition, (ECF No. 169), and Plaintiffs filed a Reply, (ECF No. 181). A hearing was held on September 15, 2023. ECF No. 199. For the reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** both motions.

## PROCEDURAL BACKGROUND

On March 27, 2019, Plaintiff Nathaniel Morgan filed this action in Solano County Superior Court. ECF No. 1 at 6.[1] On May 6, 2019, Defendants removed the case to the Eastern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d) ("CAFA"). *See id*. On March 26, 2020, the action was transferred to the Southern District of California. ECF No. 23.

On June 19, 2020, a Second Amended Complaint was filed. ECF No. 33, Second Amended Complaint ("SAC"). It remains the operative complaint. Plaintiffs Nathaniel Morgan and Michael Bevan[2] brought this class action on behalf of themselves and other individuals employed by Defendants as non-exempt employees in the State of California from March 27, 2015, to March 31, 2022, to seek recovery of unpaid compensation. SAC at 2–3, 8. The Second Amended Complaint alleges eight causes of action: (1) failure to authorize and permit required meal periods (Cal. Labor Code §§ 226.7, 510, 512, 1194, 1197; IWC Wage Order No. 9-2001, § 11[3]); (2) failure to authorize and permit required

---

[1] Page citations refer to CM/ECF pagination.

[2] Plaintiff Michael Bevan was added as a second class representative in the Second Amended Complaint. *See* SAC.

[3] Plaintiffs move for judicial notice of (1) California Industrial Welfare Commission ("IWC") Wage Order No. 1-2001, (2) IWC Wage Order No. 1-52, (3) Statement as to the Basis, IWC Wage Order 4-76, and (4) California Division of Labor Standards Enforcement ("DLSE") Opinion Letter, dated August 13, 2003. *See* ECF No. 163-4 at 2; Fed. R. Evid. 201. The motion is unopposed. *See generally* ECF No. 169. The motion for judicial notice is **GRANTED**. *See, e.g.*, *Schroeder v. Envoy Air, Inc.*, 2016 WL 11520388, at *3 (C.D. Cal. Sept. 27, 2016) (taking judicial notice of wage orders);

rest periods (Cal. Labor Code §§ 226.7, 512; IWC Wage Order No. 9-2001, § 12); (3) failure to pay overtime wages (Cal. Labor Code §§ 510, 1194, 1198; IWC Wage Order No. 9-2001, § 3); (4) failure to pay minimum wages (Cal. Labor Code §§ 1194, 1197; IWC Wage Order No. 9-2001, § 4); (5) failure to pay all wages due to discharged and quitting employees (Cal. Labor Code §§ 201, 202, 203); (6) failure to furnish accurate itemized wage statements (Cal. Labor Code § 226; IWC Wage Order No. 9-2001, § 7); (7) failure to indemnify employees for necessary expenditures incurred in discharge of duties (Cal. Labor Code § 2802); and (8) unfair and unlawful business practices (Cal. Bus. & Prof. Code §§ 17200 et. seq.). SAC at 9–24.

On March 31, 2022, the Court granted in part Plaintiffs' Motion for Class Certification. ECF No. 105. The Court granted class certification only for union employees and only for the following classes and subclasses: **First and Second Meal Period Claims**, based on (a) auto-deduction/recording of meal periods; (b) rounded meal periods; and (c) a failure to pay meal period premiums; **Minimum and Overtime Wages Claim**, based on (a) auto-deduction of meal periods; (b) rounded meal periods; and (c) regular rate violations; **Wage Statement Claim** based on earning statements muddled by "inscrutable payroll codes"; and a derivative **Unfair Competition Claim**. ECF No. 105.

On July 7, 2023, the Court granted Defendants' Motion for Judgment on the Pleadings and dismissed Plaintiffs' eighth cause of action for unfair and unlawful business practices, (ECF No. 183), later remanding it to state court, (ECF No. 217). Accordingly, the class period was reduced to March 27, 2016, to March 31, 2022. ECF

---

*Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 459 (S.D. Cal. 2012) (noticing DLSE letter).

No. 183 at 10. Defendants and Plaintiffs now seek partial summary judgment on several of Plaintiffs' claims.

## FACTUAL BACKGROUND

During the relevant time period, Defendants had two facilities in California, one in Riverside and the other in Chula Vista, and "provide[d] a broad range of high-technology products and services to the global aerospace and building systems industries." SAC at 5. Both named Plaintiffs were union employees. Plaintiff Morgan worked for Defendants from December 2014 to December 2016 as an Operations Specialist in multiple departments, including "the shipping and receiving and fan cowl departments." SAC at 3. Plaintiff Bevan was employed by Defendants from 2013 to approximately October 2019, and then again from December 2019 to present. *Id.* He has held multiple job titles, including Assembler and Quality Tech. *Id.*

During the class period, union employees and Defendants entered into a series of Collective Bargaining Agreements ("CBAs") that provided union employees with, among other things, a thirty-minute meal break period.[4] *See generally* ECF Nos. 164-16–21. Defendants posted the relevant Wage Order that guarantees the right to a meal period, Wage Order 1-2001, § 11(A), "at all relevant times inside the Riverside and Chula Vista facilities." ECF No. 163-1 at 11–12 (citing ECF No. 163-2 at 2). Defendants also had a written policy allowing for timely thirty-minute meal breaks as well as a form for employees to report meal period violations, and they provided training on the meal period provisions. ECF No. 164-14 (Meal Period and Rest Break Policy); ECF No.163-3 at 220 (Moua Dep.); ECF No. 163-3 at 45–46 (Harris Dep.); ECF No. 163-5 at 53 ¶ 4 (Garcia Dec.); ECF No. 163-5 at 60 ¶ 8 (Joya Dec.).

---

[4] Employees that worked shifts lasting longer than ten hours were entitled to a second meal period. ECF No. 163-1 at 8.

Defendants, however, failed through much of the class period to provide employees with a timekeeping system to record their meal periods. Prior to October 13, 2019, employees at both of Defendants' facilities used "AutoTime 6" — a timekeeping system pre-programmed to automatically record a thirty-minute meal period for each employee. ECF No. 164-1 at 7. Employees did not clock in or out for their meal periods, and a thirty-minute meal period was recorded irrespective of an employee's actual break time. *See id.* After October 13, 2019, employees at the Riverside facility began using "AutoTime 7," which required employees to record the start and end times for their meal periods. *Id.* Under both timekeeping systems, employees working shifts longer than ten hours were required to manually input the start and end times for their second meal period. *See* ECF No. 163-1 at 9.

Plaintiffs' expert, Teresa Fulimeni, reviewed time punch data associated with 1,398,606 shifts spanning from March 27, 2015, to March 31, 2022. ECF No. 164-9 at 5. From the start of the Class Period until October 13, 2019, she identified 1,040,699 shifts where a meal period was either short, late, missing, or automatically deducted. *Id.* at 7. From October 13, 2019, to the end of the Class Period, she identified 179,440 noncompliant meal periods, *id.*, including 148,237 meal periods that were rounded in such a way as to conceal shortened shifts, *id.* at 9. Finally, she identified that in 226,733 shifts lasting between ten and twelve hours and 35,734 shifts lasting more than twelve hours, no second meal period was recorded. ECF No. 163-3 at 1042.

## LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the initial burden

20-cv-574-GPC-AHG

to identify the portions of the record that demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When the movant bears the burden of proof at trial, the movant must show that no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the non-moving party bears the burden of proof, the movant need only demonstrate that there is an absence of evidence to support the claims of the non-moving party. *Celotex*, 477 U.S. at 322. If the moving party meets this initial burden, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A court may only consider admissible evidence in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e). All inferences regarding credibility must be drawn in the light most favorable to the non-moving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). Still, "conclusory, speculative testimony in declarations or other materials is insufficient to raise genuine issues of fact and defeat summary judgment." *Perez v. Performance Food Grp., Inc.*, 2017 WL 6940526, at *6 (C.D. Cal. Dec. 15, 2017) (citing *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979)).

## DISCUSSION

Plaintiffs move for summary judgment on the meal period claims asserting that (1) Defendants had an obligation to record meal periods and were prohibited from rounding recorded meal periods, (2) Plaintiffs are entitled to a presumption of liability under California law due to Defendants' rounding of meal periods and failure to record meal periods, and (3) Defendants have failed to rebut the presumption.

Defendants seek summary adjudication of (1) the meal period claims, arguing that Plaintiffs are not entitled to any presumption of liability on the meal period claim and,

6

otherwise, have failed to offer proof that class members were denied an opportunity to take thirty-minute meal periods; (2) the meal period claim premised on Rohr's rounding policy, arguing that the employees have not shown how the policy denied employees a full thirty-minute meal period; (3) the overtime cause of action based on the claim that Defendants did not pay wages for work performed during the rounded breaks; (4) the overtime claim that is premised on the alleged miscalculation of six types of compensation for the regular rate; and (5) a wage statement claim that is purportedly barred by the statute of limitations.

## I.     Meal Period Claims

California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ." Cal. Lab. Code § 512(a). A second meal period is required for shifts lasting longer than ten hours. *Id.* If an employer fails to provide a meal break as required by law, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). But "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay . . . ." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012). Employers are not required to "police meal breaks" and ensure no work is performed. *Id.* However, "an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.* An employer cannot simply provide an "illusory meal period." *Perez v. Performance Food Grp., Inc.*, 2017 WL 6940526, at *6 (C.D. Cal. Dec. 15, 2017). In sum, "[a]n employer's duty with respect to meal breaks . . . is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits

them a reasonable opportunity to take an uninterrupted [thirty]-minute break, and does not impede or discourage them from doing so." *Brinker*, 53 Cal. 4th at 1040.

If an employer's time records are incomplete or inaccurate, "a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 74 (2021). There is a duty to record meal periods unless "operations cease" during the meal period. Cal. Code Regs. Tit. 8, § 11090 (2023). On a plaintiff's motion for summary judgment, after the presumption is invoked, Defendants carry the burden "to show that a triable issue of one or more material facts exists as to the cause of action or a defense. But Plaintiffs bear the ultimate burden of persuasion to show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law." *Donohue*, 11 Cal. 5th at 79 (cleaned up).

**A. Cessation of Operations**

As a threshold matter, Defendants assert that the *Donohue* presumption does not apply given that they were not required to record meal periods because all operations ceased during meal periods. ECF No. 169 at 8. Plaintiffs move for summary judgment as to this defense, arguing that Defendants "are not excused from the meal period recordkeeping requirements of the applicable Wage Order because all operations did not cease during meal periods throughout [Defendants'] plants." ECF No. 164 at 2. While both sides offer their interpretation of "operations cease," neither side provides any caselaw support. Plaintiffs argue that the "operations cease" exception requires the entire plant to cease operations at the same time. ECF No. 164-1 at 14. Defendants contends that this is an absurd interpretation that would render the exception a nullity and that, under a common-sense definition, cessation should be analyzed by work area. ECF No. 169 at 9. Under Defendants' interpretation, the trier of fact simply needs to consider testimony that all work area employees took their breaks together.

1    The Court agrees with Defendants that the "operations cease" provision does not

2    require a state-wide or plant-wide shutdown to qualify for the exception. Cal. Code Regs.

3    tit. 8, § 11090 does not establish that operations must cease across an entire floor,

4    department, plant or business. Operations need only cease in a definable work area.

5    Moving on to what "operations cease" means, in *Prachasaisoradej v. Ralphs*

6    *Grocery Co., Inc*., the court observed that "[b]ecause the laws authorizing the regulation

7    of wages, hours, and working conditions are remedial in nature, courts construe these

8    provisions liberally, with an eye to promoting the worker protections they were intended

9    to provide." 42 Cal. 4th 217, 227 (2007). The "operations cease" exception permits an

10   employer to avoid reporting requirements that protect employees' rights to a full meal

11   break. In *Brinker*, the court recognized that the burden to show compliant meal periods

12   rests with the employer because "[t]o place the burden elsewhere would offer an

13   employer an incentive to avoid its recording duty and a potential windfall from the failure

14   to record meal periods." 53 Cal. 4th at 1053 n.1 (Werdegar, J., concurring). The

15   recording exception can only be reconciled with the purpose of the Labor Code and wage

16   orders if it provides safeguards that equal those created by a reporting mechanism. For

17   that to happen, the cessation of operations must be sufficiently definite and provable in

18   every work area to ensure that employees are not denied the means of proving an

19   employer's denial of full meal breaks.

20   In light of the purpose of recording meal periods, common sense leads to the

21   inescapable conclusion that the "operations cease" exception requires more than a

22   showing that workers took breaks that they were entitled to and, as a result, stopped

23   working. Such an approach would render the recordkeeping requirement a nullity. This

24   tail-wagging-the-dog scenario would effectively deny workers the means to determine (1)

25   whether they have been provided compliant meal periods and (2) the extent of their

26   damages.

27

28

9

1    To determine safeguards existed equal those created by a reporting mechanism, the

2    Court approaches cessation through a totality of the circumstances analysis. Here,

3    Defendants offer statements demonstrating that a number of workers took their meal

4    breaks and ceased working. ECF No. 169 at 12–17. Defendants rely on deposition

5    testimony by employees who testify with varying degrees of personal knowledge that

6    they and fellow employees took their meal break at the same time. *See, e.g.*, ECF No.

7    163-3 at 408–10 (Curl Dep.); ECF No. 163-6 at 11 (Walker Dec.); ECF No. 163-6 at 19

8    (White Dec.). Many employees qualified their testimony by stating that "I can't really say

9    for the entire department." *See, e.g.*, ECF No. 163-3 at 511. None of the employees

10   testified that work ceased in a given work area because of a Collective Bargaining

11   Agreement provision, company policy, posted orders that required departments to cease

12   operations at particular times, an automated shut down of assembly lines or equipment,

13   training which instructed workers to cease operations in an entire work area, or

14   representative testimony that it was understood by all of the employees in a work area

15   that all work had to cease for a full thirty-minute period. Indeed, several employees,

16   including supervisor Dan Jackson, testified that employees had the option to take their

17   lunches early if they began working before their regularly scheduled shift. ECF No. 163-

18   6 at 43–44. This flexibility tends to undermine Defendants' cessation argument, because

19   if operations truly ceased during meal periods, then an employee would not be able to

20   work while others in the department were taking lunch, or take lunch while others were

21   working. Instead, this flexibility demonstrates that operations only "ceased" because

22   employees generally took their breaks at the same time. This is not the cessation

23   contemplated by the wage order.

24   To the extent that certain employees agreed with leading questions that the "entire

25   department shut down during meal breaks," *see, e.g.*, (ECF No. 163-3 at 409–10 (Curl

26   Dep.)), Plaintiffs correctly object that these observations are conclusory, (ECF No. 181 at

27

28

12); *see also* Fed. R. Civ. P. 56(c)(2). These witnesses provided nothing more than the observation that "everybody in the department took meal period at the same time," *see, e.g.*, (ECF No. 163-3 at 409–10), and did not establish that everyone took a meal period because operations ceased. As described above, these facts do not demonstrate that operations ceased within the meaning of the wage order.

A defense expert, Elizabeth Arnold, evaluated operations in Chula Vista in 2022 and observed that operations ceased during meal breaks. ECF No. 163-3 at 772. However, the observations were not made during the class period, were not intended to be representative, and provide minimal support for the position that operations ceased throughout the two Rohr facilities. *Id.*; ECF No. 164-26 at 8–13.

Defendants have failed to produce any evidence of actual cessation outside of employees taking their meal breaks at the same time, and the evidence they have presented, as to employees taking meal periods earlier or later, belies the notion that operations ceased. Defendants' motion for partial summary judgment based upon the "operations cease" exception is **DENIED** and Plaintiffs' motion for partial summary judgment as to the cessation defense is **GRANTED**. As such, Defendants are foreclosed from pursuing the cessation defense any further, and the Court will continue with its *Donohue* analysis.

**B. Whether Employees Had the Opportunity to Take All Meal Breaks**

In *Donohue*, the California Supreme Court held that if an employer's time records are incomplete, inaccurate, or show noncompliant meal periods, "a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." 11 Cal. 5th at 74. This presumption "derives from an employer's duty to maintain accurate records of meal periods" and prevents an employer from otherwise "avoid[ing] its recording duty" and receiving "a potential windfall from the failure to record meal periods." *Id.* (citing *Brinker*, 53 Cal. 4th at 1053 (Werdegar, J., concurring)).

"[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee." *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 727 (1988).

Here, it is undisputed that Defendants did not record first meal periods prior to October 13, 2019. While the rebuttable presumption does not require employers to police meal periods, it does require employers to give employees a mechanism for recording their meal periods and to ensure that employees use the mechanism properly. *Donohue*, 11 Cal. 5th at 77. In this case, there was no mechanism for recording first meal periods at the Riverside facility before 2019 and at the Chula Vista facility through the entire class period. Defendants' failure to introduce a proper timekeeping mechanism resulted in the creation of an inaccurate and incomplete time record. Plaintiffs' expert reports that Defendants failed to accurately record 1,040,699 meal periods. ECF No. 164-9 at 7. This is sufficient to trigger the rebuttable presumption.

Plaintiffs have presented evidence that starting October 14, 2019, employees at Defendants' Riverside facility would have their meal periods improperly rounded. ECF No. 105 at 22. For example, an employee at the Riverside facility, who clocked out for a meal break at 11:01 a.m. and clocked back in at 11:28 a.m., would have their meal break automatically rounded to a full thirty minutes, resulting in three minutes of uncompensated time. *Id.* Plaintiffs' expert reports that during this time period Defendants improperly rounded 148,237 meal periods. ECF No. 164-9 at 7–8.

Defendants argue that *Donohue* only prohibits rounding to the extent that it masks a noncompliant meal break — namely, where an employer, through their work demands and expectations, requires employees to take a shorter meal break but nevertheless rounds the time entry to appear compliant. ECF No. 163-1 at 14. But this qualification is not found in *Donohue*. The *Donohue* court observed that employers may use a timekeeping system which tracks meal period violations as long as the system does not round time

punches. 11 Cal. 5th at 78. Defendants' practice of rounding would trigger the presumption of liability without regard to whether the rounding was employed to mask noncompliant meal periods.

However, the *Donohue* presumption does not create automatic liability for employers. Rather, employers have the ability at the summary judgment stage to present evidence "that employees were compensated for noncompliant meal periods or that they had in fact been provided compliant meal periods during which they chose to work." *Id.* at 674. "'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.'" *Id.* at 674–75 (quoting *Brinker*, 53 Cal. 4th at 1054 (Werdegar, J., concurring)).

In order to rebut the *Donohue* presumption, Defendants must prove that they (1) provided a reasonable opportunity to take uninterrupted thirty-minute meal breaks on time; (2) did not impede class members from taking thirty-minute breaks; (3) did not discourage class members from taking thirty-minute meal breaks; (4) relieved class members of all duties during the thirty-minute meal breaks; and (5) relinquished control over class member activities during the thirty-minute breaks. Judicial Council of California Civil Jury Instruction 2766B.

To rebut the presumption, Defendants rely on (1) the Collective Bargaining Agreements that provided all union members with a thirty-minute meal break; (2) the relevant Wage Order that was posted inside the Riverside and Chula Vista facilities; (3) the written policy allowing for timely thirty-minute meal breaks as well as a form for employees to report meal period violations; and (4) the provided training on the meal period provisions. In addition, Defendants cite depositions and declarations from twenty-three employees and nine supervisors declaring that Rohr provided all employees in the designated departments with compliant meal periods. *See* ECF No. 169 at 12–17; 163-2

at 3–4; *e.g.*, ECF No. 163-3 at 508 (Meza Dep.); ECF No. 163-3 at 480–81 (Winkler Dep.).

While "employers do not escape liability simply by having a formal policy of providing meal and rest breaks," *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014), the Court finds that the class-wide evidence relating to the CBAs, meal period policies, training, and absence of any union grievances complaining about noncompliant meal breaks, though not dispositive of the issue, provides a measure of proof in support of rebutting the presumption. The remaining question is whether this class-wide proof coupled with declarations and deposition testimony from employees and supervisors overcomes the presumption.

In *Donohue*, the court reversed a summary judgement for the employer who relied on a policy and training which emphasized that the meal period was an "uninterrupted 30 minute" break, during which employees were "relieved of all job duties," were "free to leave the office site," and "control[led] the time." 11 Cal. 5th at 62. The policy further specified that supervisors should not "*impede* or *discourage* team members from taking their break." *Id.* In addition, the employer submitted declarations from thirty class members who stated that they "always" or "usually" took lunches that were at least thirty minutes long. *Id.* at 64. No declarant stated that a supervisor had tried to discourage him or her from taking a full or timely meal period and the class representative had certified that he had not been denied meal breaks. *Id.* These facts closely match those offered by Defendants. The reversal in *Donohue* would certainly preclude granting summary judgment in favor of Defendants. But a question remains whether this evidence creates a genuine issue of fact that the presumption of liability has been rebutted such that Defendants survive Plaintiffs' motion for summary adjudication of these issues.

Three district courts have addressed the rebuttable presumption in the context of class certification. In *Garcia v. Cent. Coast Restaurants, Inc.*, defendants argued that the

14

*Donohue* presumption had been rebutted through "five declarations from current employees who" stated that missed meal periods were either voluntarily taken or properly compensated. No. 18-CV-02370-RS, 2022 WL 657972, at *6 (N.D. Cal. Mar. 4, 2022). *Garcia* addressed whether the evidence presented — five declarations — would defeat the *Donohue* presumption, preventing plaintiff from relying on the presumption as a class-wide theory of liability to support commonality. No. 18-CV-02370-RS, 2022 WL 657972, at *6. The court rejected the argument, finding that five declarations could "hardly be considered representative" given the thousands of potential class members and were "insufficient to rebut the *Donohue* presumption at" the class certification stage. *Id.* The court reasoned further that because the declarations came from current employees, the declarations could be subject to "bias and coercion." *Id.* at *6 n.4.[5] *Garcia* did not directly address the issue presented here, that is, whether five declarations coupled with other evidence could create at least a genuine issue of material fact as to rebuttal of the presumption. *See id.*

In *Santillan v. Verizon Connect, Inc.*, the rebuttable presumption factored into the court's discussion of predominance. No. 3:21-CV-1257-H-KSC, 2022 WL 4596574, at *12 (S.D. Cal. June 13, 2022). There, defendants presented evidence that their training program and procedures informed employees of their right to a thirty-minute meal period. *Id.* at *13. Defendants also presented evidence consisting of five declarations from putative class members, that "indicated that they take their full meal periods. *Id.* The court found that the rebuttable evidence could be considered on a class-wide basis and

---

[5] Although the Court credits that declarations from current Rohr employees could be influenced by bias and coercion, the employee declarants averred and acknowledged that they stood to benefit from Plaintiffs' class action and provided testimony that "could be against [their] monetary interest as a potential member of the class or representative lawsuits." *See, e.g.*, ECF No. 163-6 at 14 (Walker Dec.).

did not defeat predominance. *Id.* The court concluded that *Donohue* created common "questions with regard to Verizon's liability" and certified the meal period class, inherently holding that, at the class certification stage, defendant's evidence was insufficient to overcome the *Donohue* presumption. *See id.* Again, the issue in *Santillan* was not whether this evidence created a genuine issue of fact on the application of the presumption of liability.

Defendants, here, direct the Court to *Vega v. Delaware N. Companies, Inc.*, where the court held that thirty-six declarations in conjunction with the posting of the wage order and inconsistencies in the plaintiff's declarations were sufficient to rebut the presumption at the class certification stage. No. 1-19CV00484-ADA-SAB, 2023 WL 6940198, at *20 (E.D. Cal. Oct. 20, 2023). The court distinguished *Garcia*, noting that defendants had presented more than the five declarations presented in *Garcia*. *Id.*

While the Court does not find that Defendants' proof has rebutted the *Donohue* presumption, it does find that there is a genuine issue of fact as to whether the presumption has been rebutted. Here, Defendants have presented over thirty witnesses that testify that they always received their first meal breaks, that their meal breaks were often longer than thirty minutes, and that their meal breaks were not cut short by their supervisors. When analyzed alongside Defendants' CBAs, training, and posted policies, the Court concludes that the Defendants have created at least a genuine issue of fact as to whether the presumption has been rebutted. As a result, the Court **DENIES** the Plaintiffs' Motion for Partial Summary Judgment and **DENIES** the Defendants' Motion for Partial Summary Judgment as they relate to Defendants' liability to the First Meal Period Class.

### C. Second Meal Period

Under both AutoTime systems, employees were required to record their second meal period. On multiple occasions, they failed to do so. But that does not absolve Defendants. Although "[t]he rebuttable presumption does not require employers to police

meal periods," an employer must do more than provide "employees a mechanism for recording their meal periods." *Donohue*, 11 Cal. 5th at 77. They must "ensure that employees use the [timekeeping] mechanism properly." *Id.* It follows, then, that an employee's failure to use timekeeping mechanisms properly does not thwart an employee's attempts to trigger the rebuttable presumption. For *Donohue* places the consequences of that "failure . . . on the employer, not the employee." *Id.* at 75 (quoting *Brinker*, 53 Cal. 4th at 1053 n.1 (Werdegar, J., concurring)).

Defendants' failure, to ensure that employees properly recorded their second meal periods, triggers the rebuttable presumption. Fulimeni concluded that in 226,733 shifts lasting between ten and twelve hours and 35,734 shifts lasting more than twelve hours, no second meal period was recorded. ECF No. 163-3 at 1042. Though Defendants tasked union employees with manually recording their second meal period, Defendants retained the burden to ensure proper timekeeping. *Donohue* does not contain an exception whereby Defendants may shift that burden. *See* 11 Cal. 5th at 81 (citing Wage Order No. 4, §7(A)(3)) ("It is the employer's duty to maintain accurate time records; the law does not expect or require employees to keep their own time records to uncover potential meal period violations."). As such, even if employees failed to record time as instructed, the consequences of that failure rest with Defendants, and Fulimeni's findings as to missed second meal periods are sufficient to trigger the rebuttable presumption.

Testimony from employees, that they received compensation for missed second meal periods or voluntarily waived them, does not prevent triggering of the presumption. That is because such information must be "reflected in the employer's time records." *Donohue*, 11 Cal. 5th at 78. "If time records show missed . . . meal periods with no indication of proper compensation, then a rebuttable presumption arises." *Id.* For the purposes of determining whether the presumption is triggered, the Court is restricted to the four corners of Defendants' time records. As Defendants elicited during Fulimeni's

20-cv-574-GPC-AHG

deposition, Defendants' timekeeping records do not reflect the reason behind a missed meal period. ECF No. 163-3 at 651. Defendants concede that there is no common evidence of waiver and that class members would need to be individually examined. ECF No. 162-1 at 28. Thus, because such evidence is not reflected in the time records, the presumption is triggered as to the second meal period claim.

Of course, testimony and evidence extrinsic to Defendants' timekeeping records may be relevant to rebutting the presumption. *Donohue*, 11 Cal. 5th at 77. Defendants argue that Plaintiffs' second meal period class fails because Defendants have demonstrated that employees regularly waived their second meal period. Defendants' meal period policy states that employees who "work more than [ten] hours in a day, but not more than [twelve] hours" may "waive [their] second meal period." ECF No. 163-3 at 196–97. The policy does not discuss waiver for shifts lasting longer than twelve hours. *See id.* At least some employees, who worked between ten- and twelve-hour shifts, routinely waived their second meal period so that they "could go home earlier." *See, e.g.*, ECF No. 163-3 at 492 (Winkler Dep.). And it appears that the general waiver practice was to "just [not] take" the second meal period, *see* (ECF No. 163-3 at 572 (Hernandez Dep.)), and to tell a supervisor orally or in writing, *see, e.g.*, (ECF No. 163-3 at 492 (Winkler Dep.), 560 (Meza Dep.)); (ECF No. 163-5 at 10 (Alvarez Dec.), 27 (Burke Dec.), 34 (Cano Dec.)). Defendants' Human Resources Department explains that if employees did not "manually enter the second meal break," they would "receive pay for the time spent on the second meal break," *see* (ECF No. 163-4 at 10 (Harris Dec.)); (ECF No. 163-4 at 12–13 (Moua Dec.)). Defendants' written meal policy, employee declarations, and human resources practices, suggest that there was a company-wide practice of waiving second meal periods, either by informing a supervisor orally or in writing, or by simply not inputting any information in the timekeeping system. The Court **DENIES** both parties' motions as they pertain to the 226,733 noncompliant shifts taken

by employees working between ten and twelve hours long, concluding that the evidence is sufficient to raise a genuine issue of material fact as to whether there existed a practice of regularly waiving second meal periods. *See Donohue*, 11 Cal. 5th at 74.

But the same cannot be said for the 35,734 noncompliant shifts taken by employees working more than twelve hours. Defendants did not have a policy of waiver for shifts lasting longer than twelve hours, and the employee declarations they rely upon in the context of the second meal period class, *see* (ECF No. 169-2 at 4), primarily discuss waiver of shifts lasting between ten and twelve hours, *see, e.g.*, (ECF No. 163-3 at 539); (ECF No. 163-5 at 10 (Alvarez Dec.), 27 (Burke Dec.), 34 (Cano Dec.), 38 (Cervantes Dec.)). Moreover, Defendants raised their waiver affirmative defense only as to "shifts of more than [ten] but less than [twelve] hours." ECF No. 35 at 10. The Court finds that Defendants have failed to rebut the *Donohue* presumption as it relates to shifts lasting longer than twelve hours, and **GRANTS** Plaintiffs' Motion for Partial Summary Judgment as it relates to missing meal periods for shifts lasting longer than twelve hours.

## II.    Unpaid and Overtime Wage Class: the "Rounding" Theory

In its order dated March 31, 2022, the Court granted class certification for the rounded meal period subclass within the overarching Minimum Wage and Overtime Class. *See* ECF No. 105 at 15, 22–24. Plaintiffs' theory of liability is that Defendants' practice of rounding meal period times to the compliant thirty-minute window, regardless of the time employees clocked in and out for a meal period, caused Defendants to undercompensate employees for time worked. *Id.* at 22. The Court granted certification of the rounded meal period subclass after finding employees could have been systematically uncompensated. *Id.* at 24. Defendants argue they are entitled to summary judgment on this claim because *Donohue* does not create a presumption of time worked, and Plaintiffs have not provided evidence of employee work or that the employees were under employer control during the rounded time. ECF No. 163-1 at 18.

The Court agrees that the "distinction between meal period violations and time worked is important because each creates different liability." ECF No. 163-1 at 19. A meal period violation gives rise to a claim for a meal period premium pursuant to California Labor Code § 226.7, and an unpaid wage claim gives rise to a claim for payment of wages for time worked. *See Kaanaana v. Barrett Bus. Servs., Inc.*, 29 Cal. App. 5th 778, 798 (2018). The Court also agrees that *Donohue* did not presume that an employee worked during a shortened or missed meal period and should be compensated as such. *See* ECF No. 163-1 at 19. Instead, to receive compensation for alleged unpaid wages under Plaintiffs' rounded meal period theory, Plaintiffs must demonstrate that, at a minimum, employees were under Rohr's control during an auto-recorded and rounded meal period. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 584 (2000) ("Under California law it is only necessary that the worker be subject to the 'control of the employer' in order to be entitled to compensation."); *see also Kaanaana*, 29 Cal. App. 5th at 808 ("Where there is no control, no compensation for 'hours worked' is due.").

Here, it is not disputed that at the Riverside facility on October 14, 2019, Defendants began a policy of rounding meal periods. *See* ECF No. 163-3 at 684–85 (Fulimeni Dep.). As a result, there are thousands of rounded meal periods longer than the *actual* clock-in and clock-out times of employees. To find Defendants liable for unpaid compensation stemming from the rounded meal periods, Plaintiffs must be able to demonstrate that employees were under Rohr's control and/or performed work during an auto-recorded or rounded meal period. Defendants argue Plaintiffs have no evidence to prove this. ECF No. 163-1 at 19.

The Court finds that Plaintiffs have provided some evidence that tends to prove class members performed some work or were under the control of Rohr during an auto-recorded or rounded meal period. Specifically, the Court notes the deposition of Rasheedah Wills. *See* ECF No. 174-3 at 468. Ms. Wills provided testimony that her

department did not completely shut down during the lunch hour. *Id.* at 568. She also testified that managers and supervisors made clear to her and other employees that their "lunch is [thirty] minutes so they expected [them] to be gone for [thirty] minutes and not back in [thirty-two] minutes, not [thirty-three] minutes, and not [thirty-one] minutes. The expectation [was] that [they're] back in there on time." *Id.* at 571. The combination of the fact that the department did not shut down and this overt pressure from supervisors not to return even a minute late to work creates a likelihood that employees were under the control of Rohr once they clocked back in after a lunch break, regardless of whether the full thirty minutes had lapsed. In addition, Donald Hall provided testimony tending to show that he was aware of a number of employees who did not take lunch breaks at all, or full thirty-minute lunch breaks, because "they were asked to [stay through lunch] for production reasons, to help catch up or get something done." ECF No. 174-4 at 893. Thus, the Court finds that there still exists a genuine issue of material fact as to whether class members were under Defendants' control during auto-recorded and rounded meals. Accordingly, the Court **DENIES** summary judgment for Defendants on this claim.[6]

### III.    Overtime Class: Regular Rate Theory

The Court previously certified Plaintiffs' overtime class on the theory that Defendants allegedly incorrectly calculated employees' overtime rate by excluding six pay codes from the regular rate calculation. ECF No. 105 at 31. California law states that employees must be paid overtimes wages at a rate of "no less than one and one half times

---

[6] Defendants also argue that they must be granted summary judgment because any rounding that occurred benefited employees by overcompensating them. *See* ECF No. 163-1 at 21. The Court agrees with Plaintiffs that Defendants' expert, Daniel Kuang, did not perform analysis on rounding in the meal period context. *See* ECF No. 173 at 17. Mr. Kuang analyzed pre- and post-shift rounding, which is materially different from rounding in the meal period context. As such, Defendants have failed to produce evidence warranting summary judgment on these grounds.

20-cv-574-GPC-AHG

the regular rate of pay" for that individual employee. Cal. Lab. Code § 510(a); 8 Cal. Code Reg. § 11199, subd. 3(A)(1). To calculate the "regular rate" for overtime pay, employers must include not only the base rate of pay, but also additional non-discretionary forms of renumeration for that pay period. *Ferra v. Loews Hollywood Hotel, LLC*, 11. Cal. 5th 858, 868 (2021). "Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any nonhourly compensation the employee has earned." *Id.* (quoting *Alvarado v. Dart Container Corp. of Cal.*, 4 Cal. 5th 542, 561 (2018). Essentially, the regular rate is an employee's total earnings, except statutory exclusions, for the work week divided by the total number of hours worked at all jobs. 29 C.F.R. § 778.115; *Huntington Memorial Hosp. v. Sup. Ct.*, 131 Cal. App. 4th 893, 903 (2005) (finding California Labor Code follows federal standard in determining regular rate of pay). The Court granted certification of this subclass, finding that the payroll codes relevant to this question included "SHIFT PREM," "MERIT LUMP," "AWARD," "SPECIAL AWARD," "GIFT CARD," and "CTCT SGNBON." ECF No. 105 at 30.

### A. Whether California Labor Code § 514 Preempts the Regular Rate Theory for Certain Employees

Defendants first argue that California Labor Code § 514 preempts the regular rate theory for certain bargaining unit members. ECF No. 163-1 at 22. California Labor Code § 514 states:

> Sections 510 and 511 [overtime provisions] do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Sections 510 and 511 govern overtime, and courts have found that "the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1153–54 (9th Cir. 2019). Defendants state that it is undisputed that the CBAs for certain employees and certain years provide for "(1) the wages, hours of work, and working conditions of employees (SUF No. 58); (2) premium wage rates for all overtime hours (SUF No. 59); and (3) a regular hourly rate of pay of not less than 30 percent more than the state minimum wage, (SUF No. 60)." ECF No. 163-1 at 22. Plaintiffs respond that § 514 preemption could only at most apply to individual damages of certain class members who were subject to some of Defendants' CBAs. ECF No. 173 at 19. Plaintiffs also argue that Defendants have not shown that the CBAs satisfy the § 514 preemption requirements, namely: (1) a valid CBA; (2) that provides for the wages, hours of work, and working conditions; and (3) provides premium wage rates for overtime hours and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. *Id.* at 20 (citing *Martinez v. Omni Hotels Management Corp.*, 514 F. Supp. 3d 1227, 1237 (S.D. Cal. 2021). Plaintiffs assert that Defendants have not presented "any admissible evidence of what Class Members, if any, were bound by the particular CBAs" or any evidence of signed CBAs, the number of employees covered by the CBA, or when the class members were subject to the CBAs. *Id.*

The Court finds that Defendants have met their burden to establish § 514 preemption for the following groups of employees:

1. The members of the International Association of Machinists bargaining units at Chula Vista and Riverside for the year 2015. *See* ECF No. 163-3 at 244 (Moua Dep., Exh. E, Riverside CBA); ECF No. 163-3 at 69 (Harris Dep., Exh. 6, Chula Vista CBA).

2.  The members of the International Union of Operating Engineers at Chula Vista from the years 2015–2022. *See* ECF No. 163-4 at 23, 57 (Harris Dec., Exh. A, Chula Vista 2015 CBA); ECF No. 163-4 at 369, 398 (Harris Dec., Exh. E, Chula Vista 2020 CBA).

3.  The members of the International Association of Machinists (Non-Destructive Technician) at Riverside from the years 2016–2022. *See* ECF No. 163-4 at 87, 109 (Harris Dec., Exh. B, 2016 Riverside CBA); ECF No. 163-4 at 423, 443 (Harris Dec., Exh. F, 2021 Riverside CBA). Although, the minimum wage for the years 2021 and 2022 was not above 30% of the state minimum wage, that wage was for non-destructive technician trainees. *See* ECF No. 163-1 at 23 (129.29% and 123.67%, respectively); ECF No. 163-4 at 443. It is undisputed that Defendants employed no non-destructive technician trainees in the years 2021 and 2022. *See* ECF No. 163-4 at 19 (Harris Dec.); ECF No. 163-2 at 12, SUF No. 64; ECF No. 173-1 at 22. However, Defendants have not directed the Court to the CBA for the Chula Vista location for these same years. Thus, the Court **DENIES** summary judgment as to the Chula Vista employees.

These were the years that the respective CBAs evidenced that the lowest applicable hourly wage was more than 130% of the state minimum wage. Thus, Defendants have provided evidence of CBAs that are valid, provided for wages, hours of work, and working conditions of the employees; and provided a regular rate of hourly pay that is at least 1.3 times California minimum wage. As such, the Court finds that Defendants have met their burden to establish § 514 preemption. Plaintiffs present no case law supporting the argument that Defendants must include evidence of the signed CBAs as well as each employees' individual name. The Court disagrees that Defendants must present the number of employees covered by each CBA or the actual signed CBAs. Accordingly, the

Court **GRANTS** Defendants summary judgment as to this claim and the above-referenced employees.

### B. Whether Defendants Properly Calculated the Regular Rate

Defendants next argue that they are entitled to summary judgment on the regular rate claim because they correctly calculated the regular rate with regard to five of the pay codes: "SHFT PREM," "AWARD," "GIFT CARD," CTRT SGN BON," and "SPECIAL AWARD." The Court discusses each.

### 1. "AWARD," "GIFT CARD," AND "SPECIAL AWARD"

Defendants argue these codes did not need to be included in the regular rate base pay because they were discretionary bonuses. ECF No. 163-1 at 27-28. According to the California Department of Industrial Relations Guidelines, discretionary bonuses need not be included in calculating an employee's regular rate of pay. *See Cal. Dep't of Indus. Relations*, Overtime.[7] A bonus is discretionary "if both the fact that the bonuses are to be paid and the amounts are determined at the sole discretion of the employer at or near the end of the periods to which the bonuses correspond and they are not paid pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 C.F.R. § 778.211(b). Plaintiffs do not dispute that these bonuses were discretionary. ECF No. 173 at 23–24.

"AWARD" was a pay code used in connection with the "UTC Level Awards Program," a discretionary bonus program. *See* ECF No. 163-2 at 14 (SUF Nos. 75-77). "GIFT CARD" was a pay code "used to issue discretionary bonuses under Rohr's Star Awards Program." ECF No. 163-1 at 27; *see also* ECF No. 163-2 at 15 (SUF Nos. 78–

---

[7] Available at
https://www.dir.ca.gov/dlse/faq_overtime.htm#:~:text=To%20properly%20compute%20overtime%20on,the%20flat%20sum%20bonus%20earnings.

80). Last, "SPECIAL AWARD" was a pay code used in 2016 for a discretionary bonus Rohr paid employees from a discretionary pool of funds. ECF No. 163-1 at 29; ECF No. 163-2 at 16 (SUF Nos. 84–87). Plaintiffs do not dispute that these payments came from discretionary funds and that there was no contract, agreement, or promise to pay employees under this pay code. ECF No. 173-1 at 27. Plaintiffs also do not dispute that it "was a discretionary bonus Rohr elected to pay without advance criteria or pursuant to any commitment." *Id.*

All three of these codes were paid "at the sole discretion of the employer." 29 C.F.R. § 778.211(b). These bonuses were not paid pursuant to any "prior contract, agreement, or promise" that would lead the employees to regularly expect the payments. *Id.* Thus, the Court finds that these three codes were properly excluded from the calculation of the regular rate and **GRANTS** Defendant summary judgment as to these codes.

### 2.  "SHFT PREM"

Defendants argue that Rohr included the "SHFT PREM" pay in the regular rate calculation. ECF No. 163-1 at 26. Defendants cite to Plaintiffs' expert Teresa Fulimeni's deposition in which she "concedes that Rohr included shift premiums in its regular rate calculation." *Id.* (citing ECF No. 163-3 at 686 (Fulimeni Dep.)). Defendants also state that Plaintiff Bevan's wage statements show that for the pay period of January 6, 2020, to January 19, 2020, shift premiums were calculated in his regular rate of pay. *Id.* at 26–27. Plaintiffs respond that Bevan's wage statement is not enough to establish that Defendants properly included "SHIFT PREM" in regular rate calculations. ECF NO. 173 at 23.

In her deposition, Fulimeni was asked if she found "any pay periods in [her] pay analysis that showed that . . . shift premiums weren't included in the regular rate." ECF No. 163-3 at 686. Fulimeni responded, "I mean I am not sure how many I looked at, but they appear to be included in these examples, yes." *Id.* Although it is clear that Fulimeni

did not examine every single wage statement over the Class Period, Plaintiffs have provided no evidence of a wage statement in which the "SHIFT PREM" pay code was not calculated into the regular rate. Plaintiffs dispute the fact that "Plaintiffs' expert Fulimeni concedes that Rohr included shift premiums in its regular rate calculation" with argument that it is "[v]ague as to time" and "overbroad." *See* ECF No. 173-1 at 24. Yet, Plaintiffs do not direct the Court to *any* evidence showing even a single wage statement that did not include "SHIFT PREM" in the calculation of the regular rate. Thus, the Court **GRANTS** Defendants summary judgment as to this pay code.

### 3. "CTRCT SGN BON"

Defendants argue "CTRCT SGN BON" is properly excluded from the regular rate calculation under 29 U.S.C. § 207(e)(2) because it is a payment not made as compensation for hours of employment. It is an undisputed fact that this pay code was for a signing bonus paid to all union employees upon ratification of the CBA. ECF No. 163-2 at 15. Defendants argue that federal guidelines state that signing bonuses are excludable from regular rate calculation when they are "given to employees with or without clawback provisions . . . as other payments that are not compensation for hours of employment, or otherwise tied to quality or quantity of work performed." ECF No. 163-1 at 28. "However, sign-on bonuses paid pursuant to a CBA, ordinance, or policy *with* a clawback provision may not be excluded . . . and must be included in the regular rate." *Id.* (emphasis added) (quoting U.S. Dept. of Labor, Fact Sheet #56C at 2[8]). Defendants argue the "CTRCT SGN BON" is properly excluded because the CBA does not contain a

---

[8] Available at https://www.fortworthapa.org/wp-content/uploads/2020/01/FS56c-Bonuses.pdf#:~:text=Fact%20Sheet%20%2356C%3A%20Bonuses%20under%20the%20Fair%20Labor,of%20pay%20under%20the%20FLSA%20for%20non-exempt%20employees.

clawback provision and the payment was not made for compensation of hours worked or otherwise tied to the quality or quantity of work performed. ECF No. 163-1 at 28–29.

Plaintiffs respond that the Fact Sheet cited by Defendants is applicable to "sign-on bonuses" only, and sign-on bonuses are distinct from the signing bonuses at issue here. ECF No. 173 at 24. They argue that "sign-on bonuses" are made to new employees as an incentive to start employment. *Id.* (citing *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 950 (N.D. Cal. 2015)). By contrast, the signing bonus here was a bonus paid to all employees covered by the applicable CBA at the time of ratification. *Id.* Plaintiffs argue Defendants have cited no controlling authority that states that the contract signing bonus in this case should be excluded from the regular rate of pay calculation. *Id.*

The Court finds that the signing bonus in this case is properly excluded from the regular rate calculation under 29 U.S.C. § 207(e)(1). Specifically, the signing bonus was a reward to mark the ratification of the CBA. ECF No. 163-2 at 15 (SUF No. 81). As such, the Court views this as a gift made on a "special occasion[], as a reward for service, the amount[] of which [was] not measured by or dependent on hours worked, production, or efficiency." 29 U.S.C. § 207(e)(1). Thus, the Court **GRANTS** Defendants' summary judgment as to the "CTRCT SGN BON" pay code.

## C. Whether the LMRA Preempts the Regular Rate Theory Based on the "MERIT LUMP" Payments

Last, Defendants argue the Labor Management Relations Act ("LMRA") § 310 preempts any state law claim that is for a violation of the CBA. ECF No. 163-1 at 24. Defendants argue that Plaintiffs' claim based on the pay code "MERIT LUMP" is really a claim for a violation of the CBA and thus is preempted by the LMRA. *Id.* at 24-25. Plaintiffs respond that preemption does not apply because the state law claim can be resolved without interpreting the CBA. ECF No. 173 at 22.

1    "Section 301(a) provides federal jurisdiction over '[s]uits for violation of contracts

2    between an employer and a labor organization.'" *Young v. Anthony's Fish Grottos, Inc.*,

3    830 F.2d 993, 997 (9th Cir. 1987) (quoting 29 U.S.C. § 185(a)). "The preemptive force of

4    section 301 is so powerful as to displace entirely any state claim based on a collective

5    bargaining agreement, and any state claim whose outcome depends on analysis of the

6    terms of the agreement." *Id.* Section 301 "does not preempt a claim alleging state law

7    substantive rights that apply without regard to a CBA and can be resolved without

8    interpreting a CBA." *Gregory v. SCIE, LLC*, 317 F.3d 1050, 1052 (9th Cir. 2003). Courts

9    in the Ninth Circuit apply a two-step test to determine section 301 preemption: (1)

10   whether the right at issue exists solely as a result of the CBA; and (2) if the right exists

11   independently of a CBA, whether the right is "substantially dependent on analysis of a

12   collective-bargaining agreement." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059

13   (9th Cir. 2007) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

14   The "MERIT LUMP" pay code was used to reference "the annual 2.5% base rate

15   increase to employees in non-destructive testing inspector or trainee positions whose base

16   rate exceeded the maximum base rate for the position." ECF No. 163-1 at 25 (citing ECF

17   No. 163-2 at 13 (SUF No. 67)). Defendants argue the "MERIT LUMP" pay code passes

18   the two-step test articulated above for Section 301 preemption because the right at issue

19   exists solely as a result of the CBA, and thus is preempted, (ECF No. 178 at 11), and

20   Plaintiffs' claim depends on an analysis of the collective bargaining agreement. ECF No.

21   163-1 at 25.

22   As to step one of the *Burnside* test, the Court finds Defendants' argument

23   misplaced. Although the "MERIT LUMP" pay code itself solely exists because of the

24   CBA, the right to proper overtime compensation and the correct regular rate calculation

25   exists independently of the CBA and is a matter of state law. *See e.g.*, *Burnside*, 491 F.3d

26   at 1060–1061 (finding that the right to be compensated for employer-mandated travel

27

28

29

1    exists as a matter of state law). Thus, "on this initial basis . . . the employees' claims are
2    not preempted." *Id.* at 1061.

3          In step two of the *Burnside* test, the Court must assess if the right is "substantially
4    dependent on analysis of a collective-bargaining agreement." *Id.* at 1059. To determine
5    this, the Court should "decide whether the claim can be resolved by 'look[ing] to' versus
6    interpreting the CBA." *Id.* at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 125
7    (1994)). If the Court can simply "look to" the CBA without interpreting the terms of the
8    CBA, the claim is not preempted. *Id.* The "'simple need to refer to bargained-for wage
9    rates' is not enough to warrant preemption." *Id.* (quoting *Livadas*, 512 U.S. at 125).

10         Here, Plaintiffs' claim requires determining whether the "MERIT LUMP"
11   compensation should have been included in the determination of the regular rate. As
12   discussed above, this requires determining whether the pay code was tied to hours
13   worked or whether it was a discretionary gift payment made to employees. The answer to
14   this question would require the Court to do more than merely "look to" the CBA. The
15   Court must instead interpret the terms of the CBA to determine the purpose of the pay
16   and whether it is fairly included in the regular rate calculation. *See also Firestone v.*
17   *Southern Cal. Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000) (stating it could not be
18   determined whether plaintiffs were receiving a "premium wage rate" for overtime under
19   the CBA without interpreting the terms of the agreement). Accordingly, the Court
20   **GRANTS** summary judgment in favor of the Defendants and finds that the state law
21   claim is preempted because the resolution of how the "MERIT LUMP" pay code should
22   be considered requires interpretation of the CBA.

23   **IV.   Wage Statement Claim: Statute of Limitations**

24         Defendants next argue they are entitled to summary judgment on Plaintiffs' wage
25   statement claim because it is time barred by the one-year statute of limitations. ECF No.
26   163-1 at 29. Defendants argue that Plaintiff Bevan did not receive any wage statements

with three specific "confusing pay codes" within the year prior to the filing of the lawsuit. *Id.* at 29–30. Plaintiffs respond that the three pay codes discussed in Defendants' Motion and in the Court's Class Certification Order are not an exhaustive list, and that confusing pay codes have been used since initiation of this lawsuit. ECF No. 173 at 25.

The Court agrees with Plaintiffs. In its Class Certification Order, the court did not intend to include an exhaustive list of the "confusing" pay codes. The Court simply certified a class based on Defendants' alleged failure to provide earnings statements that allowed employees to "promptly and easily determine" the hours worked and the applicable pay code, as is required by the Labor Code. ECF No. 105 at 42. Defendants only reference three specific pay codes—"OT3Rdshf@1.5"; "Reg 3rd Shift", and "Ot3Rdshf@2x"—however, the Court did not purport to certify the class based only on these three pay codes. They were simply examples of Defendants' payroll practice. Accordingly, the Court **DENIES** Defendants' summary judgment on the wage statement claim.[9]

### CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment. The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:  December 20, 2023

Hon. Gonzalo P. Curiel
United States District Judge

---

[9] Because the Court denies summary judgment on the wage statement claim, the Court also **DENIES** summary judgment on the derivative wage statement violations because the underlying claim remains. *See* ECF No. 163-1 at 30.