1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

NATHANIEL MORGAN, an individual;
MICHAEL BEVAN, an individual; and
ANTONEE HARRIS; individually, and on
behalf of others similarly situated,

Plaintiffs,

vs.

ROHR, INC., a corporation; HAMILTON
SUNDSTRAND, d/b/a UTC AEROSPACE
SYSTEMS d/b/a COLLINS AEROSPACE;
UNITED TECHNOLOGIES
CORPORATION;

Defendants.

Case No. 3:20-CV-00574-GPC-AHG

CLASS ACTION

**ORDER:**

**(1) PROVISIONALLY APPROVING
CERTIFICATION OF THE
PROPOSED SETTLEMENT CLASS;**

**(2) APPOINTING CLASS COUNSEL;**

**(3) CONDITIONALLY APPROVING
THE PROPOSED NOTICE FORM;**

**(4) GRANTING PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

**(5) APPROVING APPOINTMENT
OF SETTLEMENT
ADMINISTRATOR**

**(6) SETTING A DATE FOR A FINAL
APPROVAL HEARING**

**[ECF No. 331]**

i

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 331 ("Motion for Preliminary Approval" or "Mot."). The Motion is unopposed.  *See id*. On April 25, 2025, the Court held a hearing on this matter. ECF No. 337. For the reasons set forth below, the Court provisionally approves certification of the proposed Settlement Class for the limited purposes of settlement; conditionally approves the proposed Notice; approves the appointment of the Settlement Administrator; sets a date for the final approval hearing; and **GRANTS** preliminary approval of Parties' settlement of this class, collective, and representative action ("Settlement" or "Stipulation").

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Rohr is an aerospace manufacturing company that operated facilities in Chula Vista and Riverside, California during the time period from March 27, 2015 to August 31, 2024 (the "Settlement Period"). Declaration of Matthew W. Gordon ("Gordon Decl.") ¶ 4. Defendant United Technologies Corporation was a parent corporation of Rohr and Defendant Hamilton Sundstrand Corporation (together with Rohr, defendants will be collectively referred to as "Defendants"). *Id*.

Morgan is a former unionized, hourly-paid employee of Rohr who worked at Rohr's Chula Vista facility as a non-exempt Operations Specialist from December 2014 to December 2016. Declaration of Nathaniel Morgan ("Morgan") ¶ 2. Bevan has worked for Rohr as a non-exempt, hourly-paid, unionized employee at Rohr's Riverside facility since approximately 2013. Declaration of Michael Bevan ("Bevan Decl.") ¶ 2. Bevan has held different job positions, such as Assembler, Quality Technician, and Quality Inspector, and he has worked in various departments. *Id*. Harris was employed by Rohr at its Chula Vista facility as a non-exempt, unionized employee for over two decades in numerous positions, including Foreman Specialist, Fabrication Technician, Tool Control,

---

[1] Much of the background recited here is derived from Plaintiff's Motion summarizing the complex factual and procedural history of these Actions.

and Drop Hammer Ceco-Stamp Operator. Declaration of Antonee Harris ("Harris Decl.")
¶ 2.

### A. The *Morgan* Action

On March 27, 2019, Morgan filed a putative class action complaint against
Defendants in Solano County Superior Court, Case No. FCS052589 ("Morgan Action").
Gordon Decl. ¶ 7. On April 26, 2019, Morgan filed a First Amended Complaint ("FAC")
to allege a tolling provision. *Id*. ¶ 8. On May 6, 2019, Defendants removed the case to the
Eastern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. §
1332(d). *Id*. ¶ 9. On June 10, 2019, Defendants filed a motion to dismiss the FAC or
alternatively, to transfer venue and dismiss allegations in the FAC. *Id*. ¶ 10. On March
26, 2020, the Court granted Defendants' motion to transfer, denied the motion to as moot,
and transferred the case to this Court. *Id*. ¶ 11. On April 7, 2020, Defendants filed a
second motion to dismiss and strike allegations in Morgan's FAC. *Id*. ¶ 12. Morgan
moved to file a Second Amended Complaint ("SAC") to add Bevan as a second plaintiff
and proposed class representative, which the Court granted. *Id*.

The SAC, which was filed on June 19, 2020, alleged eight causes of action,
including for: (a) failure to provide required meal periods; (b) failure to authorize and
permit required rest periods; (c) failure to overtime wages; (d) failure to pay minimum
wages; (e) failure to pay all wages due to discharged and quitting employees; (f) failure
to furnish accurate itemized wage statements; (g) failure to indemnify employees for
necessary expenditures incurred in discharge of duties; and (h) unfair and unlawful
business practices ("UCL"). *Id*. ¶ 13. Defendants filed an answer on July 6, 2020. *Id*. On
March 31, 2022, this Court granted partial class certification and also certified Plaintiffs'
derivative claims on behalf of non-exempt, hourly-paid union employees, relating to
Defendants' failure to provide accurate and itemized wage statements, and UCL
practices. *Id*. ¶ 14.

On July 7, 2023, the Court granted Defendants' Motion for Judgment on the

Pleadings and dismissed Plaintiffs' UCL claim on the grounds that this Court lacked equitable jurisdiction because Plaintiffs had an adequate remedy at law. *Id*. ¶ 15. On November 15, 2023, the Court granted Plaintiffs' Motion for Reconsideration and remanded the UCL claim to the state court. *Id*. Defendants appealed the remand order, and the Ninth Circuit dismissed the appeal. *Id*.

The parties also filed competing motions for summary judgment, which the Court ruled on.[2] On December 20, 2023, the Court decertified the minimum and overtime wage classes and the portion of the second meal period class pertaining to shifts between ten and twelve hours long. *Id*. ¶ 18.

The parties prepared for trial and filed numerous pretrial documents. *Id*. ¶ 19. The Court ruled on both parties' motions *in limine* and various other matters.

**B. The *Harris* Action**

Harris complied with PAGA's pre-filing notice requirement, and after the California Labor and Workforce Development Agency ("LWDA") did not respond, Harris filed a PAGA-only action against Defendants in San Diego County Superior Court on March 10, 2020 ("Harris Action"). *Id*. ¶ 20, 21. Harris sought to represent all current and former non-exempt employees of Defendants in California from January 5, 2019 to final judgment. *Id*. The PAGA complaint sought civil penalties for Defendants' alleged failure to provide required meal and rest periods, failure to pay overtime and minimum wages; failure to pay wages during employment; failure to pay all wages due to

---

[2] On December 20, 2023, the Court granted Plaintiffs partial summary judgment as to the second meal period claims for class members working shifts longer than twelve hours with no recorded meal break. Gordon Decl. ¶ 16. The Court also granted Plaintiffs summary judgment as to the inapplicability of Defendants' cessation of operations defense. *Id*. The Court denied Defendants partial summary judgment on (a) their cessation defense; (b) Plaintiffs' first meal period claim; and (c) Plaintiffs' wage statement claims as well as the derivative wage statement violations. *Id*. ¶17. The Court granted Defendants summary judgment on Plaintiffs' regular rate claim in part and denied it in part. *Id*.

discharged and quitting employees; failure to maintain required records; failure to furnish accurate itemized wage statements; and failure to indemnify employees for necessary expenditures incurred in discharge of duties. *Id*. ¶ 22. On July 31, 2020, Harris filed a FAC adding more facts to the expense reimbursement claim. *Id*. ¶ 23. Defendants filed their answer to the FAC on September 1, 2020. *Id*. ¶ 24.

On February 19, 2021, because the Harris Action alleged claims that overlapped with those in the Morgan Action, the state court stayed the Harris Action pending class certification proceedings in the Morgan Action. *Id*. ¶ 25. The state court lifted the stay on October 24, 2022. *Id*. Discovery proceedings ensued before the Harris Action was ultimately stayed again pending the trial in the Morgan Action. *Id*.

### C. Settlement Negotiation

The parties participated in two separate private mediation sessions with mediator Hon. Louis M. Meisinger (Ret.) on January 26, 2021 and November 16, 2022. *Id*. ¶ 26. The parties also participated in one early neutral evaluation with Magistrate Judge Allison Goddard on November 11, 2020, and two mandatory settlement conferences with Magistrate Judge Goddard on March 24, 2023 and January 26, 2024. *Id*. ¶ 26. During these efforts, the parties contemplated a global settlement that would resolve both Actions. *Id*. Despite engaging in full-day negotiations, the Actions did not resolve. *Id*. This Court ordered the parties to attend a third mandatory settlement conference with Magistrate Judge Michael S. Berg on May 31, 2024, at which time the Actions settled ten days before trial. *Id*. ¶ 27.

Over the following months, the Stipulation's terms were negotiated and drafted, and the Stipulation was executed. *Id*., Ex. 2. According to Plaintiffs, the "settlement discussions were conducted at arm's length and, although conducted in a professional manner, were adversarial." Mot. at 5 (citing Gordon Decl. ¶ 28).

### D. Settlement Terms

The "Settlement Class" means all individuals whom Rohr employed in California

as hourly paid, non-exempt union employees at any time during the Settlement Period (March 27, 2015 through August 31, 2024). Stipulation ¶¶ 1.12, 1.45-1.46. According to Defendants' counsel, there are approximately 1,755 members of the Settlement Class and 385,644 Settlement Period Workweeks. Response at 2. All members of the Settlement Class are also considered to be aggrieved employees under PAGA and will receive an Individual PAGA Payment defined as a pro rata share of 25% of the PAGA Settlement amount. Stipulation ¶ 1.25; Class Notice, Ex. A to Settlement, p. 2.

"Collective Members" means all individuals whom Rohr employed in California as hourly paid, non-exempt union employees at any time during the FLSA Period (March 27, 2016 through August 31, 2024). *Id*. ¶¶ 1.11-1.12, 1.20. "Participating Collective Members" means all Collective Members who submit a timely and valid FLSA Opt-In Form to the Administrator, and thereby will be deemed to have given their consent to "opt in" as a party plaintiff pursuant to the FLSA and to have waived and released the Released Collective Claims. *Id*. ¶ 1.34.

The Settlement provides for Rohr to pay a non-reversionary Gross Settlement Amount ("GSA") of $19,900,000. *Id*. ¶¶ 1.22, 3.1. The "Net Settlement Amount" is the amount remaining from the GSA after deducting the following payments in amounts approved by the Court: the PAGA Settlement; the FLSA Amount; the Class Counsel Payment; the Class Representative Service Payments; the Settlement Administration Cost; and, as the Court decides, Rohr's employer-side payroll taxes. *Id*. ¶¶ 1.22, 1.29. Subject to Court approval, the GSA shall be allocated as follows:

1. Individual Class Payments. The Net Settlement Amount will be distributed to Participating Class Members as Individual Class Payments on a pro rata basis according to each Participating Class Member's number of Settlement Period Workweeks. *Id*. ¶ 1.23.

2. PAGA Settlement. $500,000 of the GSA will be allocated for the resolution of the Released PAGA Claims, 75% ($375,000) of which will be paid to the LWDA and 25% ($125,000) of which will be paid as Individual PAGA Payments to members of the Settlement Class on a pro rata basis. *Id*. ¶ 3.5.

3. <u>FLSA Amount</u>. "FLSA Amount" means that $100,000 of the GSA allocated to the settlement of the Released Collective Claims, which will be divided among the Participating Collective Members on a pro rata basis as Individual Collective Payments. *Id*. ¶ 1.18.

4. <u>Class Representative Service Payments</u>. Each Plaintiff will be paid a Class Representative Service Payment not to exceed $25,000 for their time and effort in litigating the Actions, the risks they undertook on behalf of the Class, and for their general release of all known and unknown claims. *Id*. ¶ 1.9. This payment will be in addition to Plaintiffs' Individual Class Payments, Individual Collective Payments, and Individual PAGA Payments. *Id*.

5. <u>Class Counsel Payment</u>. Plaintiffs' counsel will apply to the Court for attorneys' fees up to one-third (1/3) of the GSA, or $6,633,333.33, pursuant to the common fund method, plus payment of litigation costs not to exceed $370,000. *Id*. ¶ 3.2.

6. <u>Settlement Administration Costs</u>. The Stipulation provides that the Settlement Administrator will receive up to $25,000 for administering the Settlement which will be paid from the GSA. Stipulation ¶¶ 1.22, 1.44, 3.4; Gordon Decl. ¶¶ 32-33. The parties selected CPT Group, Inc. ("CPT") to serve as the Settlement Administrator. Stipulation ¶ 1.43; Gordon Decl. ¶ 32. CPT's bid amount is $18,000. Gordon Decl. ¶ 32, Ex. 3. *See* Gordon Decl. ¶¶ 32-33 for information regarding the administrator selection process and the reasonableness of CPT's bid. Any attorneys' fees, litigation costs, Class Representative Service Payments, or administration costs not approved by the Court will be allocated to the Net Settlement Amount. Stipulation ¶¶ 3.2-3.4. Assuming the Court approves the above allocation of funds, the Net Settlement Amount will be $12,221,666.67 (possibly subject to further deduction for Rohr's share of payroll taxes, as explained above). Gordon Decl. ¶ 31.f.

Plaintiffs agree to release the Defendants from the Released Class Claims, except for those members of the Settlement Class who submitted a valid Request for Exclusion. *Id*. ¶¶ 1.14, 1.37, 1.39, 5.1. Members of the Settlement Class receiving Individual PAGA Payments will be deemed to release all claims for PAGA civil penalties that were pled or could have been pled based on the factual allegations in the TAC or prior complaints in the Actions, irrespective of whether or not they submitted a Request for Exclusion. *Id*. ¶

5.1. The Participating Collective Members shall be deemed to have released Defendants from the Released Collective Claims. *Id*. ¶¶ 1.38, 5.2. Finally, Plaintiffs will release Defendants from any and all claims (specified in the Stipulation) which Plaintiffs have or may have against the Released Parties, based on their employment with Rohr as of the date of execution of the Stipulation. *Id*. ¶ 5.3. Plaintiffs expressly waive their rights under California Civil Code section 1542. *Id*.

## II.     DISCUSSION

### A. Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003).  To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

At the preliminary approval stage, the reviewing court is engaged in the first inquiry and considers whether it is likely to approve of the proposal and certify the class. Fed. R. Civ. P. 23(e)(1)(B).

### B. Provisional Class Certification under Rule 23

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), common questions must

1  predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action
2  device must be "superior to other available methods for fairly and efficiently adjudicating
3  the controversy." *Id.* The Court does not finally certify a class when granting preliminary
4  approval of a settlement for the purpose of directing notice to class members, but rather
5  determines whether "the court will *likely* be able to . . . certify the class for purposes of
6  judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

7  Plaintiffs seek certification of a Settlement Class consisting of all persons whom
8  Rohr employed in California as hourly paid, non-exempt union employees at any time
9  during the Settlement Period (March 27, 2015 through August 31, 2024). Stipulation ¶¶
10  1.12, 1.45-1.46.

11  For the following reasons, the Court agrees with Plaintiffs that the Court will likely
12  be able to certify the class for purposes of settlement under the requirements of Rule 23.

### 1. Numerosity

14  The numerosity requirement under Rule 23(a)(1) is met if "the class is so
15  numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a
16  general matter, courts have found that numerosity is satisfied when class size exceeds 40
17  members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190
18  F.R.D. 649, 654 (C.D. Cal. 2000).  The exact size of the class does not need to be known
19  as long as general knowledge and common sense support that the class is sufficiently
20  large.  *See Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal 2012).
21  Indeed, "[w]here several million shares of stock were purchased during the class period,
22  courts regularly find that class members are sufficiently numerous to render joinder
23  impracticable." *In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 20139171, at *6 (C.D.
24  Cal. May 11, 2017).

25  Here, the proposed Settlement Class consists of approximately 1,755 persons.[3]
26  This class is sufficiently numerous to make joinder impracticable.

---

[3] Defendants' Response provides this updated figure. ECF No. 333.

## 2. Commonality and predominance

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Not every question of law or fact must be common to the class. *Abdullah v. U.S. Sec. Assoc., Inc*., 731 F.3d 952, 957 (Ninth Cir. 2013).

Additionally, under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). In the class action settlement context, the predominance inquiry may be relaxed: "[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 558 (9th Cir. 2019). Whether the questions addressable with common proof predominate over those that require individual proof depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co*., 563 U.S. 804, 809 (2011).

Here, Plaintiffs' claims, even if they were previously uncertified or decertified, present common questions of law and fact that predominate over individual issues such that provisional certification is acceptable for settlement purposes.

Settlement Class Members are non-exempt, unionized employees who were

employed by Rohr during the Settlement Period. There are clear questions that are common to all class members, including (1) whether Defendants' policies and practices prevented class members from taking rest breaks that they were entitled to; (2) whether Defendants engaged in time-shaving and automatic deduction practices; (3) whether Defendants had a common practice of failing to provide a second meal period; (4) whether Defendant had a common practice of failing to reimburse employees for necessary business-related expenditures. Defendants deny all of Plaintiffs' allegations and contend that they complied with applicable law at all times.

These claims all allege that Rohr had common practices, policies, and procedures that applied across the Settlement Class. While there may be individualized facts that are not shared by each class member, "the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

It is plain that the proposed class meets Rule 23(a)(2)'s commonality requirement. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation") (internal quotation marks and citation omitted). The proposed class also meets predominance because the common factual and legal questions supersede any individualized inquiry in determining liability for the claims of the Settlement Class.[4]

### 3. Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same

---

[4] The Court's finding extends to Plaintiffs' derivative claims as well (UCL claim and claim for failure to pay all wages due to discharged and quitting employees).

interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the Court previously held that Plaintiffs Morgan and Bevan were adequate class representatives for non-exempt, unionized employees. ECF No. 105 at 13. They are, therefore, also adequate representatives for the Settlement Class, which is defined as non-exempt, union employees employed by Rohr during the Settlement Period. Stipulation ¶¶ 1.12, 1.45-1.46. Plaintiff Harris is also typical because he was a non-exempt, unionized employee as well. Harris Decl. ¶ 2. There are no extraneous circumstances that make any Plaintiff atypical. All their claims for damages are based upon the same or similar injuries from the same or similar conduct, Mot. at 15, and thus Plaintiffs meet the typicality requirement.

### 4. Adequacy

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

Plaintiffs do not have a conflict of interest with the Settlement Class because their interests are aligned with the rest of the Class. Plaintiffs and their Counsel have continuously prosecuted these Actions for the past few years, demonstrating their

commitment to Class. In addition, Plaintiffs' Counsel, Matern Law Group ("MLG"), is experienced in labor representative actions, and has vigorously advocated for the Class throughout the litigation. Declaration of Matthew J. Matern ("Matern Decl.") ¶ 3, 4, 17. There is no indication that Plaintiffs or Counsel will not continue to vigorously prosecute the interests of the class. The Court therefore concludes the adequacy requirement is met for the purposes of conditional certification.

### 5. Superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Superiority asks if class adjudication is "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, certification of a settlement class would provide significant efficiencies compared to any alternative method of adjudication. There are approximately 1,755 class members, which makes classwide resolution efficient and appropriate. It is unlikely that any single member of the Class acting alone would have pursued these claims against Defendants. *See Leyva v. Medline Indus. Inc*., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims"). Plaintiffs' Counsel is unaware of any current related litigation concerning the controversy, so there is little risk of conflicting or superfluous adjudications. Finally, in a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

The Court therefore finds that class certification would preserve judicial resources, save time, and limit duplication of evidence and effort.

Based on the foregoing reasons, Rule 23 is satisfied, and the Court finds that it will likely be able to certify the Settlement Class for purposes of the Settlement.

## C. Appointment of Class Counsel

When a court certifies as class, it must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). The Rule directs the Court to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Since they were appointed, MLG has devoted substantial time, effort, and resources to identifying, investigating, litigating, and negotiating a settlement. Matern Decl. ¶ 17. MLG is also one of the largest plaintiff-side employment law firms in California and has extensive experience litigating Labor Code violations in class, collective, and representative action cases. *Id*. ¶ 3-4. The Court finds that MLG is qualified and accordingly appoints MLG as Class Counsel.

## D. Collective Members' FLSA Claims

The proposed settlement also meets the requirements for conditional certification under the FLSA, which may be maintained by "any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Clesceri v. Beach City Investigations & Protective Servs., Inc*., 2011 WL 320998, *3-4 (C.D. Cal. Jan 17, 2011). "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard" under Rule 23(b)(3). *Harris v. Vector Mktg. Corp*., 753 F.Supp.2d 996, 1003 (2010). As Plaintiffs have already demonstrated that the requirements under Rule 23 have been met, the Court conditionally certifies the Collective Members' claims.

## E. Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must

find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). At the preliminary approval stage, the question is whether approval under the "fair, reasonable, and adequate" standard is likely. Fed. R. Civ. P. 23(e)(1)(B). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first and second factors are viewed as "procedural" in nature, and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ.

P. 23(e)(2), advisory committee notes (2018 amendment).

For the reasons that follow, the Court finds that the Settlement Agreement reached by the Parties is likely fair, reasonable, and adequate, and GRANTS preliminary approval of the Settlement.

## 1. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

The Court found above that Plaintiffs and Class Counsel adequately represent the class for the purposes of conditional class certification. For the same reasons, the Court finds that the adequacy of representation requirement under Rule 23(e)(2)(A) is likely met.

## 2. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).

Here, the proposed Settlement arises out of an arm's length negotiation process between Plaintiffs and Defendants that culminated on the eve of trial. These negotiations began years earlier, with one early neutral evaluation, two settlement conferences and two private mediations facilitated by a mediator. Gordon Decl. ¶¶ 26-27. The Settlement

was ultimately reached after another mandatory settlement conference with Magistrate Judge Berg. The use of an experienced mediator suggests that settlement negotiations were informed and non-collusive. *See Deaver v. Compass Bank*, 2015 WL 4999953, at *7 (N.D. Cal. Aug. 21, 2015); *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quotations omitted).

Plaintiffs were able to make an informed decision regarding the Settlement, given the extensive discovery and investigation conducted prior. Gordon Decl. ¶ 30. Numerous sets of written discovery were served and responded to, thousands of pages of documents produced, and over thirty depositions taken of witnesses, corporate representatives, and Plaintiffs. *Id.* Plaintiffs' data expert analyzed time punch data covering 1,137,507 shifts associated with 1,413 employees, as well as pay data covering 163,672 pay periods. *Id.* Based on all this information, Plaintiffs and Counsel were able to act intelligently and effectively in negotiating the Settlement.

According to Plaintiffs, the negotiations over the course of two mediations, three mandatory settlement conferences and an early neutral evaluation were hard-fought and conducted at arm's length between experienced counsel fully informed of the strengths and weaknesses of the claims and defenses. Mot. at 5. These lengthy arms-length negotiations support the conclusion that the Settlement was achieved in the absence of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations… were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### a. Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable. *See In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). The Court therefore must examine whether the Settlement Agreement will likely adequately compensate the class given the costs, risks, and delay of trial and appeal based on the facts of this case.

Here, the Parties have agreed to settle this case for a non-reversionary Gross Settlement Amount (GSA) of $19.9 million. Stipulation ¶¶ 1.22, 3.1. After proposed attorneys' fees, litigation expenses, incentive awards, the PAGA Settlement, and the FLSA Amount, and administration costs are deducted from the GSA, the Net Settlement Amount would be $12,203,666.67, and the average recovery payment for each class

member would be $6,953.66.[5]

The Settlement expressly leaves open whether the GSA includes the employer's share of payroll taxes or excludes them. The Settlement delegates to the Court to decide this issue. Stipulation ¶ 3.1.

The Court decides that Rohr's share of payroll taxes should be paid from the GSA. If Rohr's share of payroll taxes is paid from the GSA, then the Net Settlement Amount would reduce to $12,036,503.61.[6] And each class member of the Settlement Class would receive, on average, an individual class payment of approximately $6,858.41. This would be a *de minimis* difference from what the Net Settlement Amount would have otherwise been. The average workweek value would decrease by just 1.4% – or 43¢ – from $31.64 to $31.21. The average individual payment would also decrease by just 1.4% – $95.25 – $6,953.66 to $6,858.41. Courts have approved settlements with much higher changes. *E.g., Belevich v. Bank of Am. Nat'l Ass'n*, 2017 WL 11630874, at *1 (C.D. Cal. Dec. 4, 2017) (allowing employer's payroll taxes to be paid from GSA when the taxes were 6.2% of the net settlement amount otherwise available for employees).

Accounting for the deduction from the GSA of payroll taxes, the Court calculates that the Net Settlement Amount of $12,036,503.61 represents approximately 9.7% ($12,036,503.61 ÷ $124,002,988 = 0.097) of the maximum potential value of the class claims and approximately 25.1% ($12,036,503.61 ÷ $47,900,957 = 0.251) of the discounted value of the class claims. The Court therefore finds the Net Settlement Amount, even with payroll taxes deducted from the GSA, to be reasonable. *See, e.g.,*

---

[5] Plaintiffs' Motion contained arithmetic errors in the calculation of the Net Settlement Amount. The Court takes note of the Response filed by the Defendants, ECF No. 333, and the Reply filed by Plaintiffs, ECF No. 334, to recognize the correct figure. Additionally, as the Response makes clear, there are 1,755 members of the settlement class, not 1,759. ECF No. 333 at 2.

[6] Defendants estimate that payroll taxes paid from the GSA would be $167,163.06, while payroll taxes paid separately from the GSA would amount to $190,672.58. Declaration of Julie Green ¶ 8.

*Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016) (91.2% discount on verdict value of class claims is reasonable given risks).

Furthermore, based on the risks of litigation, Plaintiffs and Counsel contend that the settlement provides adequate relief to the proposed class. Mot. at 21-22. According to Plaintiffs, Counsel considered numerous factors, including the risk and uncertainty of proving liability, damages, and PAGA penalties at trial, the risk of decertification of some or all class claims due to manageability, the merits of the defenses raised, the costs of continued litigation, the risk of appeal, and the "constantly evolving area of law" creating uncertainty for employees. *Id.* at 21. Plaintiffs, while "confident in the merits of their claims," acknowledge that "a legitimate controversy exists as to each cause of action." *Id.* at 21-22. For example, Defendants have disputed certain key factual and legal issues in the case, including whether employees were actually "working" during the time they were clocked in before and after their shifts, and whether employees were provided with an opportunity to take meal breaks even if that was not reflected in timekeeping records. *Id.* at 22.

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays. The fact that the Settlement will eliminate these delays and any further expenses weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

As such, the Settlement presents a substantial relief to the Settlement Class. Although the Settlement is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims. Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). The Court here

concludes that the costs and risks of proceeding with litigation likely renders the agreed-upon settlement amount to be adequate relief for the class as a whole. *See, e.g., Baron*, 2024 WL 3504234, at *8 (settlement for 2% of total damages supports preliminary approval); *Hunt v. Bloom Energy Corp*., 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (same for 5.2% of damages); *Hardy v. Embark Tech., Inc*., 2023 WL 6276728, at *8 (N.D. Cal. Sept. 26, 2023) (same for 1.1% of damages).

### b. Effectiveness of proposed method of distributing relief

Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the distribution plan is effective, clear, and fair. The Settlement provides for each Class Member to receive a pro rata distribution of the Net Settlement Amount based on the number of Settlement Period Workweeks worked by the Settlement Class and a formula set forth in the Stipulation. Stipulation ¶¶ 1.47, 3.6. Collective Members will have the right to submit a FLSA Opt-In Form to receive an Individual Collective Payment. *Id.* ¶ 7.6. That payment is determined by the total number of FLSA Period Workweeks each Participating Collective Member worked, and a formula set forth in the Stipulation. *Id.* ¶¶ 1.48, 3.7. Individual PAGA Payments will be determined on a pro rata basis according to the number of Settlement period Workweeks worked by the Settlement Class and a formula set forth in the Stipulation. *Id.* ¶ 3.8.

Potential Settlement Class Members and their contact information will be ascertained by Defendants, who will provide a list to the Settlement Administrator. *Id.* ¶ 7.2. The Settlement Administrator will then ensure that as many individuals as possible can be located and contacted. *Id.* ¶ 7.3-7.4. Checks that are uncashed after a certain date

1
2
will be voided by the Settlement Administrator and then paid, pro rata, to Participating Class Members who timely cashed their Individual Class Payments. *Id.* ¶ 4.5.

### c. Attorneys' fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048–50 (9th Cir. 2002).

Here, the Settlement calls for an award of attorneys' fees in an amount not to exceed one-third of the Gross Settlement Amount, plus reimbursement of litigation costs incurred not to exceed $370,000. Stipulation ¶ 3.2. Plaintiffs and Counsel assert that MLG's current lodestar is $3,149,553.00, and that MLG will request application of a multiplier of approximately 2.11. Matern Decl. ¶¶ 11, 14, 16-18.

While the Court acknowledges that attorneys' fees awards in the amount of 33 ⅓% of the total settlement value have been approved in the past by district courts in this Circuit, it is in the upper bounds of what is considered typical. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *7 (S.D. Cal. Dec. 18, 2019). "When applying the percentage-of-the-fund method, an attorneys' fee award of twenty-five percent is the 'benchmark' that district courts should award." *Id.* (citations omitted).

Ultimately, the Court need not determine at the preliminary approval stage whether it will approve an award of 33 ⅓% as set out by Plaintiffs and Counsel. In order to depart from the "benchmark" of 25% of recovery, the Court must provide a reasoned

22

explanation. *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000). In service of that, the Court will closely scrutinize Counsel's request for an award of Counsel's attorneys' fees, costs, and expenses more closely upon filing of the application for reasonable attorneys' fees and incentive awards. At this point, it is sufficient for the Court to conclude that the attorneys' fee provision in the Settlement Agreement is not so out of proportion with the relief provided to the class that it "calls into question the fairness of the proposed settlement." *Pokorny v. Quixtar Inc.*, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).

Thus, for the purposes of preliminary approval, the attorneys' fees and expenses provision does not present a barrier to finding the Settlement Agreement fair, adequate and reasonable. *See Kendall*, 2022 WL 188364, at *7 (fee "not to exceed 33 ⅓%" supports preliminary approval because it is "within the range of acceptable attorneys' fees"); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8-9 (S.D. Cal. Jun. 1, 2010) (33.33% of wage and hour settlement "falls within the typical range" in similar cases) (listing other cases).

### d. Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no additional agreements here that have been made in connection with the Settlement Agreement.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of

differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

### a. Equity among class members

Here, under the proposed Settlement, there is little to no risk of unequal treatment, since each Participating Class Member's Individual Class Payment will be calculated pro rata based on the Settlement Class's Settlement Period Workweeks. Stipulation ¶ 3.6. Each payment to a Participating Class Member will therefore reflect his or her proportionate share of the Settlement Period Workweeks and Settlement amount. The Court finds that the Settlement treats class members equitably.

### b. Equity between unnamed members and class representative

The Court also considers whether the proposed service payment or incentive award for Plaintiffs is equitable. The Settlement provides for a Class Representative Service Payment to each Plaintiff not to exceed $25,000. Stipulation ¶ 1.9.

Incentive awards generally do not render a settlement inequitable. *See Staton*, 327 F.3d at 977. This type of award is "fairly typical in class action cases" and "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). Courts have refused to countenance settlements that provide for excessively high incentive awards or that give only *de minimis* relief to the rest of the class. *See id.* at 948, 978 (finding settlement inequitable where class representatives and other "active participants" were to receive up to $50,000 in incentive awards each and collectively receive more than half of the total monetary

award despite representing less than 2% of the class).

In the present case, Plaintiffs plan to request a service award in an amount not to exceed $25,000 each—which, collectively, at most, represent 0.38% of the GSA (individually, 0.13% of the GSA) —to compensate them for time spent pursuing the matter on behalf of the Class. Courts within this Circuit have routinely approved of payments within that range. *See, e.g., In re On-Line DVD Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving incentive awards that comprised, on aggregate, less than 1% of the gross settlement value); *Coates v. Farmers Grp., Inc.*, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) (service award in the amount of $25,000 to two plaintiffs was reasonable).

Plaintiffs have attested to the many hours and efforts that they have expended on these Actions spanning over several years. Morgan Decl. ¶¶ 3-11; Bevan Decl. ¶¶ 3-12; Harris Decl. ¶¶ 3-4. These efforts have included responding to discovery requests, preparing for and attending negotiation talks, preparing for and participating in depositions, identifying potential witnesses and evidence, and engaging with Counsel on the progress of the Actions. Morgan Decl. ¶ 3; Bevan Decl. ¶ 3; Harris Decl. ¶ 3. Plaintiffs attest that they have each spent over 100 hours on this case. Morgan Decl. ¶ 4; Bevan Decl. ¶ 5; Harris Decl. ¶ 4.

The Court ultimately will determine whether Plaintiffs are entitled to such an award. The Court will consider all the evidence presented at the final settlement fairness hearing to evaluate the reasonableness of the request. Nevertheless, because incentive awards are not per se unreasonable, and because the amount requested seems to fall within typical bounds, the Court concludes that the current service award provision should not bar preliminary approval of the Settlement Agreement.

### F. Proposed PAGA Allocation

Federal courts will approve a PAGA settlement if it meets PAGA's statutory requirements and is "fundamentally fair, reasonable, and adequate in view of PAGA's

public policy goals." *Rincon v. W. Coast Tomato Growers, LLC*, 2018 WL 828104, at *2 (S.D. Cal. Feb. 12, 2018).

Here, the PAGA Settlement in the amount of $500,000—with 75% ($375,000) to the LWDA and 25% ($125,000) to the Settlement Class—is fair, reasonable, and adequate. Stipulation ¶¶ 1.33, 10.8. In a combined class action and PAGA settlement of wage and hour claims, the court may apply a sliding scale analysis. *O'Connor v. Uber Techs., Inc*., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Under this analysis, courts have held that comparable allocations of settlement funds to PAGA penalties fulfill the purposes of PAGA and warrant approval. *See, e.g., Viceral v. Mistras Group, Inc*., 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017) (approving $20,000 in PAGA penalties from a $6 million settlement); *Garcia v. Gordon Trucking, Inc*., 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 in PAGA penalties out of a $3,700,000 settlement).

The Settlement as a whole provides substantial individual relief to the Settlement Class, with the average gross Individual Class Payment estimated to be $6,858.41 (accounting for the deduction of Rohr's share of payroll taxes from the GSA), and the average Individual PAGA Payment estimated to be $71.23,[7] if the Court approves the requested amounts. Because the overall settlement payments will provide substantial compensation to individual employees, PAGA's goal of enforcing the Labor Code through private litigation is furthered by this Settlement. The allocation of $375,000 to the LWDA further supports the State's efforts to enforce its labor laws.

### G. Proposed Notice

Rule 23(e)(1)(B) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the

---

[7] The Court calculates this figure based on the newest estimate of the class size ($125,000 ÷ 1,755 = 71.225).

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the
proposal." Fed. R. Civ. P. 23(e)(1)(B). Individual notice must be sent to all class
members "whose names and addresses may be ascertained through reasonable effort."
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). What constitutes the "best
notice that is practicable under the circumstances" is measured by a standard of
"reasonableness." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018). The
best type of notice "depends upon the information available to the parties about that
person." *Hilsley v. Ocean Spray Cranberries, Inc*., 2019 WL 718807, at *1 (S.D. Cal.
Feb. 5, 2019) (citation omitted).

The Rule requires that the notice "clearly and concisely state in plain, easily
understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the
> class claims, issues, or defenses; (iv) that a class member may enter an
> appearance through an attorney if the member so desires; (v) that the court
> will exclude from the class any member who requests exclusion; (vi) the
> time and manner for requesting exclusion; and (vii) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (paragraph breaks omitted). Furthermore, the Ninth Circuit
has held that a class action settlement notice must describe the "terms of the settlement in
sufficient detail to alert those with adverse viewpoints to investigate and to come forward
and be heard." *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 946 (9th Cir.
2015).

Here, the Class Notice is written in plain, concise language that includes: (1) basic
information about the nature of the Actions and the Settlement; (2) the definition of the
Settlement Class; (3) a description of the claims in the Actions; (4) an explanation of how
members of the Settlement Class can obtain benefits under the Settlement; (5) an
explanation of how members of the Settlement Class can exercise their right to request
exclusion from or object to the Settlement, and how Collective Members can opt-in to

receive an Individual Collective Payment; (6) information regarding the scope of the released claims and the binding effect of the Settlement; (7) the date and time of the Final Approval Hearing; and (8) contact information for the Settlement Administrator and Class Counsel if members of the Settlement Class wish to obtain additional information. *See* Stipulation, Ex. A. Accordingly, the Class Notice meets all of the requirements of Rule 23(c)(2)(B), and provides members of the Settlement Class with sufficient information to make an informed and intelligent decision about the Settlement.

The parties' proposed plan for directing notice to the Settlement Class must be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Within 45 calendar days after the Court grants preliminary approval, the Administrator will mail the Class Notice, in English and Spanish, to all members of the Settlement Class via First-Class U.S. Mail, using the most current known mailing address on file in Rohr's employment records. Stipulation ¶ 7.3. Parties at the April 25, 2025 hearing also agreed to work with the unions to which members of the Settlement Class belonged during the Settlement Period, *see* ECF No. 338, in order to gather contact information and provide notice to potential class members.

Prior to mailing, the Administrator will perform a search to update and correct for any identifiable address changes. *Id*. Any Class Notice returned to the Administrator as undelivered will be re-mailed by the Administrator to the forwarding address provided by the U.S. Postal Service. *Id*. ¶ 7.4. If no forwarding address is provided, the Administrator will promptly attempt to determine the correct address using a skip-trace or other search and will then perform a single re-mailing. *Id*. For any member of the Settlement Class whose Class Notice is re-mailed, the Response Deadline will be extended an additional 14 days. *Id*. Direct mail notice to class members' last known addresses is the best notice possible under the circumstances. *See Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 319 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-76 (1974). The Court therefore finds that the Settlement's plan for directing notice to the Settlement

Class satisfies Rule 23(c)(2)(B) and 23(e)(1)(B).

## III.    CONCLUSION

Having considered Plaintiffs' Motion and the supporting papers, including the Declaration of Matthew W. Gordon, and all exhibits thereto, including the Joint Stipulation of Class, Collective, and Representative Action Settlement ("Stipulation" or "Settlement"), and the Declarations of Matthew J. Matern, Plaintiff Nathaniel Morgan, Plaintiff Michael Bevan, Plaintiff Antonee Harris, and Julie Green of CPT Group, Inc., and all other papers filed in response to the Motion, and for good cause appearing, the Court **HEREBY GRANTS** Plaintiffs' Motion and finds that the Settlement meets the requirements for preliminary approval.

The Court **HEREBY ORDERS** as follows:

1.    The Court finds on a preliminary basis that Plaintiffs and their counsel have adequately represented the members of the Settlement Class, the proposed Settlement was negotiated at arm's length, the relief provided to the members of the Settlement Class is fair, reasonable, and adequate and falls within the range of possible approval; and the proposed Settlement treats members of the Settlement Class equitably relative to each other.

2.    All capitalized terms defined in the Settlement shall have the same meaning when used in this Order.

3.    The Court finds, for settlement purposes only, that the Settlement Class meets the requirements for certification under Fed. R. Civ. P. 23(a) and 23(b)(3), in that: (a) the Settlement Class is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) Plaintiffs' claims are typical of the claims of the Settlement Class; (d) Plaintiffs and their counsel will fairly and adequately protect the interests of the Settlement Class; (e) questions of law and fact common to the Settlement Class predominate over any questions affecting

only individual members of the Settlement Class; and (f) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

4.    The Court hereby provisionally certifies the following Settlement Class: all individuals whom Defendant Rohr, Inc. ("Rohr") employed in California as hourly paid, non-exempt union employees at any time from March 27, 2015 through August 31, 2024 ("Settlement Period").

5.    The Court finds that the Collective Members are similarly situated and hereby provisionally certifies, pursuant to 29 U.S.C. § 216(b), the Collective Members defined as: all individuals whom Defendant Rohr, Inc. employed in California as hourly paid, non-exempt union employees at any time from March 27, 2016 through August 31, 2024 ("FLSA Period").

6.    The Court approves, as to form and content, the Notice of Settlement for Class, Collective, and Representative Action ("Class Notice"), attached as Exhibit A to the Stipulation, and the FLSA Opt-In Form, attached as Exhibit B to the Stipulation.

7.    The Court finds that the mailing of the Class Notice to each Class Member's last known address via First Class U.S. Mail is the best notice practicable under the circumstances, and, when completed, shall constitute due and sufficient notice of the class action, proposed Settlement, and the final approval hearing to all persons entitled to such notice in full compliance with the requirements of due process and the Federal Rules of Civil Procedure.  The Court further finds that the Class Notice adequately advises the Settlement Class about the class action, the terms of the proposed Settlement, the benefits available to each member of the Settlement Class, the proposed fees and costs to Class Counsel, the right of each member of the Settlement Class to object to or opt out of the Settlement, and the timing and procedures for doing so, preliminary Court approval of the proposed Settlement, and the date of the Final Approval Hearing as well as the right of members of the Settlement Class to appear in connection with the hearing.

8.      The Court appoints Plaintiffs Nathaniel Morgan, Michael Bevan, and Antonee Harris as Class Representatives.

9.      The Court appoints Matern Law Group, PC, including Matthew J. Matern, Dalia Khalili, Matthew W. Gordon, Kayvon Sabourian, and Julia Z. Wells, to serve as Class Counsel.

10.     The Court appoints CPT Group, Inc. as the Settlement Administrator.  The Court authorizes the Settlement Administrator to mail the Class Notice and the FLSA Opt-In Forms to the members of the Settlement Class, pursuant to the terms of the Stipulation.

11.     A hearing to determine whether the Settlement is fair, reasonable, and adequate to the members of the Settlement Class and whether the Settlement should be finally approved ("Final Approval Hearing") shall be held on September 5, 2025 at 1:30pm, in Courtroom 2D of the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, California 92101.

12.     The Court reserves the right to adjourn or continue the date of the Final Approval Hearing without further notice to members of the Settlement Class, and retains jurisdiction to consider all further applications or motions arising out of or connected with the Settlement.

13.     The Parties are ordered to carry out the Settlement according to the terms of the Settlement.

14.     The Court sets the following deadlines:

| Event | Date |
|---|---|
| Deadline for Rohr to provide Class List to Settlement Administrator. | 20 business days after entry of the Preliminary Approval Order. |
| Deadline for Settlement Administrator to mail Class Notice and FLSA Opt-In Form to Class Members. | 14 calendar days after receipt of Class List. |

| Event | Date |
|---|---|
| Deadline for members of Settlement Class to submit a Request for Exclusion, a written Objection, a FLSA Opt-In Form, or a dispute regarding Settlement Period Workweeks or FLSA Period Workweeks ("Response Deadline"). | 45 calendar days after Settlement Administrator mails Class Notice unless the 45th day falls on a Sunday or a federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. |
| Extended Response Deadline for Re-mailed Class Notice. | Response Deadline will be extended by 14 calendar days for any Settlement Class Member who is re-mailed a Class Notice by the Settlement Administrator. |
| Deadline for Plaintiffs to file Motion for Final Approval of Class, Collective, and Representative Action Settlement and Motion for Attorneys' Fees and Costs | August 8, 2025.<br><br>28 calendar days before Final Approval Hearing.<br><br>[Civ. Local Rule 7.1e.1.] |
| Final Approval Hearing and Hearing on Plaintiffs' Motion for Attorneys' Fees and Costs. | September 5, 2025 at 1:30 p.m. in Courtroom 2D. |

**IT IS SO ORDERED.**

Dated:  May 1, 2025

Hon. Gonzalo P. Curiel
United States District Judge