1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

SOUTHERN DISTRICT OF CALIFORNIA

11

12
NATHANIEL MORGAN, an individual;
MICHAEL BEVAN, an individual; and
13
ANTONEE HARRIS; individually, and on
behalf of others similarly situated,
14
                    Plaintiffs,
15
            vs.
16
ROHR, INC., a corporation; HAMILTON
17
SUNDSTRAND, d/b/a UTC AEROSPACE
SYSTEMS d/b/a COLLINS AEROSPACE;
18
UNITED TECHNOLOGIES
CORPORATION;
19

20
                    Defendants.
21

22

23
24
25
26
27
28

Case No. 3:20-CV-00574-GPC-AHG

CLASS ACTION

**JUDGMENT AND ORDER:**

**(1) GRANTING MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT;**

**(2) GRANTING MOTION FOR AWARD OF ATTORNEY FEES, REIMBURSEMENT OF EXPENSES AND AWARD TO LEAD PLAINTIFF.**

**[ECF Nos. 341, 342]**

i

Before the Court are two Motions: Plaintiff's unopposed Motion for Final Approval of Class Action Settlement ("Final Approval" or "Mot.") and Plaintiff's unopposed Motion for Attorneys' fees and expenses, notice and administration costs, and award to Plaintiff ("Attys. Fees Mot."). ECF Nos. 341, 342. On September 5, 2025, the Court held a hearing on this matter. ECF No. 351. For the reasons set forth below, the Court GRANTS the Motion for final approval of class action settlement and GRANTS the Plaintiffs' Motion for Award of Attorneys' fees and other costs and awards.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Rohr is an aerospace manufacturing company that operated facilities in Chula Vista and Riverside, California during the time period from March 27, 2015 to August 31, 2024 (the "Settlement Period"). Declaration of Matthew W. Gordon ("Gordon Decl.") ¶ 4. Defendant United Technologies Corporation was a parent corporation of Rohr and Defendant Hamilton Sundstrand Corporation (together with Rohr, defendants will be collectively referred to as "Defendants"). *Id*.

Plaintiff Morgan is a former unionized, hourly-paid employee of Rohr who worked at Rohr's Chula Vista facility as a non-exempt Operations Specialist from December 2014 to December 2016. ECF No. 331-4 at ¶ 2. Plaintiff Bevan has worked for Rohr as a non-exempt, hourly-paid, unionized employee at Rohr's Riverside facility since approximately 2013. ECF No. 331-5 at ¶ 2. Bevan has held various job positions, such as Assembler, Quality Technician, and Quality Inspector. *Id*. Plaintiff Harris was employed by Rohr at its Chula Vista facility as a non-exempt, unionized employee for over two decades in numerous positions, including Foreman Specialist, Fabrication Technician, Tool Control, and Drop Hammer Ceco-Stamp Operator. ECF No. 331-6 at ¶ 2.

### A. The *Morgan* Action

On March 27, 2019, Morgan filed a putative class action complaint against

---

[1] Much of the background recited here is derived from Plaintiff's Motion summarizing the complex factual and procedural history of these Actions. *See* ECF Doc. 342-1.

Defendants in Solano County Superior Court, Case No. FCS052589. Gordon Decl. ¶ 6. On April 26, 2019, Morgan filed a First Amended Complaint ("FAC") to allege a tolling provision. *Id.* ¶ 7. On May 6, 2019, Defendants removed the case to the Eastern District of California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). *Id.* ¶ 8. On June 10, 2019, Defendants filed a motion to dismiss the FAC or, alternatively, to transfer venue and dismiss allegations in the FAC which Morgan opposed. *Id.* ¶ 9. On March 26, 2020, the Court granted Defendants' motion to transfer, denied the motion to dismiss and motion to strike without prejudice as moot and transferred the case to this Court. *Id.* ¶ 10.

On April 7, 2020, Defendants filed a second motion to dismiss and strike allegations in Morgan's FAC. *Id.* ¶ 11. Morgan moved to file a Second Amended Complaint ("SAC") to add Bevan as a second plaintiff and proposed class representative. *Id.* The Court granted Morgan leave to amend and denied Defendants' motion to dismiss as moot. *Id.*

The SAC, which was filed on June 19, 2020, alleged eight causes of action, including for: (a) failure to provide required meal periods; (b) failure to authorize and permit required rest periods; (c) failure to overtime wages; (d) failure to pay minimum wages; (e) failure to pay all wages due to discharged and quitting employees; (f) failure to furnish accurate itemized wage statements; (g) failure to indemnify employees for necessary expenditures incurred in discharge of duties; and (h) unfair and unlawful business practices ("UCL"). *Id.* ¶ 12. Defendants filed an answer on July 6, 2020. *Id.*

On March 31, 2022, the Court granted partial class certification for non-exempt, hourly-paid union employees on Plaintiffs' Meal Period Class, Overtime Class, and Minimum Wage Class, and the related subclasses under the automatic deduction of meal break, rounded meal break, first meal break, and second meal break and wage statement claims. *Id.* ¶ 13. The Court also certified Plaintiffs' derivative claims on behalf of non-exempt, hourly-paid union employees, relating to Defendants' failure to provide accurate itemized wage statements and UCL practices. *Id.*

On July 7, 2023, the Court granted Defendants' Motion for Judgment on the Pleadings and dismissed Plaintiffs' UCL claim on the grounds that this Court lacked equitable jurisdiction because Plaintiffs had an adequate remedy at law. *Id.* ¶ 14. On November 15, 2023, the Court granted Plaintiffs' Motion for Reconsideration and remanded the UCL claim to state court. *Id.* Defendants appealed the remand order. *Id.* The Ninth Circuit dismissed the appeal. *Id.*

The parties also filed competing motions for summary judgment. *Id.* ¶ 15. In rulings issued on December 20, 2023, the Court granted Plaintiffs partial summary judgment as to the second meal period claims for class members working shifts longer than twelve hours with no recorded meal break. *Id.* The Court also granted Plaintiffs summary judgment as to the inapplicability of Defendants' cessation of operations defense. *Id.* The Court denied Defendants partial summary judgment on (a) their cessation defense, (b) Plaintiffs' first meal period claim, and (c) Plaintiffs' wage statement claims as well as the derivative wage statement violations. *Id.* ¶ 16. The Court granted Defendants summary judgment on Plaintiffs' regular rate claim in part and denied it in part. *Id.*

On December 20, 2023, the Court decertified the minimum wage and overtime wage classes and the portion of the second meal period class pertaining to shifts between ten and twelve hours long. *Id.* ¶ 17. The Court also denied Defendants' motion as to the first meal period class and the wage statement class. Id.

The parties prepared for trial and filed numerous pretrial documents. *Id.* ¶ 18. The Court ruled on both parties' motions *in limine* and various other matters.

### B. The *Harris* Action

Harris complied with PAGA's pre-filing notice requirement. *Id.* ¶ 19, Ex. 1. The California Labor and Workforce Development Agency ("LWDA") did not respond, and on March 10, 2020, Harris filed a PAGA-only action against Defendants in San Diego County Superior Court, entitled *Harris v. Rohr, Inc., et al.,* San Diego County Superior

Court, Case No. 37-2020-00013139-CU-OE-CT (the "*Harris* Action," and together with the *Morgan* Action hereinafter referred to as the "Actions"). *Id.* ¶ 20. The PAGA complaint sought civil penalties for Defendants' alleged failure to provide required meal and rest periods, failure to pay overtime and minimum wages, failure to pay wages during employment, failure to pay all wages due to discharged and quitting employees, failure to maintain required records, failure to furnish accurate itemized wage statements, and failure to indemnify employees for necessary expenditures incurred in discharge of duties. *Id.* ¶ 21. On July 31, 2020, Harris filed a FAC adding more facts to the expense reimbursement claim. *Id.* ¶ 22. Defendants filed their answer to the FAC on September 1, 2020. *Id.* ¶ 23.

On February 19, 2021, because the *Harris* Action alleged claims that overlapped with those in the *Morgan* Action, the state court stayed the *Harris* Action pending class certification proceedings in the *Morgan* Action. *Id.* ¶ 24. The state court lifted the stay on October 24, 2022. *Id.* Discovery proceedings ensued before the *Harris* Action was ultimately stayed again pending the trial in the *Morgan* Action. *Id.*

On February 19, 2025, the parties stipulated to Plaintiffs filing a Third Amended Complaint ("TAC") to add Harris as a named plaintiff in the *Morgan* Action, to include a cause of action under PAGA based on the same alleged Labor Code violations, and to include a cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. *Id.* ¶ 25. The Court approved the stipulation, and the TAC has been filed. *Id.*; ECF No. 328.

### C. Settlement Negotiation

The parties participated in two separate private mediation sessions with experienced and respected mediator, Hon. Louis M. Meisinger (Ret.), on January 26, 2021 and November 16, 2022. *Id.* ¶ 27. The parties also participated in one early neutral evaluation with Magistrate Judge Allison Goddard on November 11, 2020 and two mandatory settlement conferences with Magistrate Judge Goddard on March 24, 2023

and January 26, 2024. *Id.* ¶ 26. During each of these efforts, the parties' negotiations contemplated a global settlement intended to resolve both Actions. *Id.* Despite engaging in full-day negotiations on those dates, the Actions did not resolve. *Id.* The Court ordered the parties to attend a third mandatory settlement conference with Magistrate Judge Michael S. Berg on May 31, 2024, at which time the Actions settled ten days before trial. *Id.* ¶ 28.

Over the following months, the terms of the settlement were negotiated and drafted, and the Settlement Agreement was executed. *Id.*, Ex. A ("Settlement"). According to Plaintiffs, the "settlement discussions were conducted at arm's length and, although conducted in a professional manner, were adversarial." ECF No. 342-1 at 5 (citing Gordon Decl. ¶ 29).

### D. Settlement Terms

On March 4, 2025, Plaintiffs filed an unopposed motion for preliminary approval of the proposed Settlement, ECF No. 331, and the Court held a hearing on the motion on April 25, 2025, ECF No. 337. On May 1, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class for settlement purposes, and authorizing the form and manner of providing notice of the Settlement to potential Settlement Class members. ECF No. 340.

Under the current Settlement, the "Settlement Class" means all individuals whom Rohr employed in California as hourly paid, non-exempt union employees at any time during the Settlement Period (March 27, 2015 through August 31, 2024). Settlement ¶¶ 1.12, 1.45-1.46. According to the Settlement Administrator, there are 1,755 members of the Settlement Class and 386,227 Settlement Period Workweeks. Declaration of Chantal Soto-Najera on Behalf of CPT Group, Inc. ("Soto-Najera Decl.") ¶ 4. All members of the Settlement Class are also considered to be aggrieved employees under PAGA and will receive an Individual PAGA Payment defined as a pro rata share of 25% of the PAGA Settlement amount. Settlement ¶ 1.25; Class Notice, Ex. A to Settlement, p. 3.

"Collective Members" means all individuals whom Rohr employed in California as hourly paid, non-exempt union employees at any time during the FLSA Period (March 27, 2016 through August 31, 2024). *Id*. ¶¶ 1.11-1.12, 1.20. "Participating Collective Members" means all Collective Members who submit a timely and valid FLSA Opt-In Form to the Administrator and thereby will be deemed to have given their consent to "opt in" as a party plaintiff pursuant to the FLSA and to have waived and released the Released Collective Claims. *Id*. ¶ 1.34.

The Settlement provides for Rohr to pay a non-reversionary Gross Settlement Amount ("GSA") of $19,900,000. *Id*. ¶¶ 1.22, 3.1. The "Net Settlement Amount" is the amount remaining from the GSA after deducting the following payments in amounts approved by the Court: the PAGA Settlement, the FLSA Amount, the Class Counsel Payment, the Class Representative Service Payments, the Settlement Administration Cost, and Rohr's employer-side payroll taxes. *Id*. ¶¶ 1.22, 1.29.

Subject to Court approval, the GSA shall be allocated as follows:

1. <u>Individual Class Payments</u>. The Net Settlement Amount will be distributed to Participating Class Members as Individual Class Payments on a pro rata basis according to each Participating Class Member's number of Settlement Period Workweeks. *Id*. ¶ 1.23.

2. <u>PAGA Settlement</u>. $500,000 of the GSA will be allocated for the resolution of the Released PAGA Claims, 75% ($375,000) of which will be paid to the LWDA and 25% ($125,000) of which will be paid as Individual PAGA Payments to members of the Settlement Class on a pro rata basis. *Id*. ¶ 3.5.

3. <u>FLSA Amount</u>. $100,000 of the GSA will be allocated to the settlement of the Released Collective Claims, which will be divided among the Participating Collective Members on a pro rata basis as Individual Collective Payments. *Id*. ¶ 1.18.

4. <u>Class Representative Service Payments</u>. Each Plaintiff will apply to the Court for the award of a Class Representative Service Payment not to exceed $25,000 for their time and effort in litigating the Actions, the risks they undertook on behalf of the Class, and for their general release of all known and unknown

claims. *Id.* ¶ 1.9. This payment will be in addition to Plaintiffs' Individual Class Payments, Individual Collective Payments, and Individual PAGA Payments. *Id.*

5. <u>Class Counsel Payment</u>. Plaintiffs' counsel will apply to the Court for attorneys' fees up to one-third (1/3) of the GSA, or $6,633,333.33, pursuant to the common fund method, plus payment of litigation costs not to exceed $370,000. *Id.* ¶ 3.2.

6. <u>Settlement Administration Costs</u>. The Settlement provides that the Settlement Administrator, CPT Group, Inc. ("CPT"), will be paid from the GSA up to $25,000 for reasonable costs of administering the Settlement. *Id.* ¶¶ 1.22, 1.44, 3.4. CPT is charging a total of $25,000.00 for its services. Soto-Najera Decl. ¶ 22.

The settlement also provides that any attorneys' fees, litigation costs, Class Representative Service Payments, or administration costs not approved by the Court will be added to the Net Settlement Amount. Settlement ¶¶ 3.2-3.4. If the above allocation of funds is approved, the Net Settlement Amount will be $12,086,893.20.[2] Soto-Najera Decl. ¶ 15.

Plaintiffs agree to release the Defendants from the Released Class Claims, except for those members of the Settlement Class who submitted a valid Request for Exclusion. *Id.* ¶¶ 1.14, 1.37, 1.39, 5.1. Members of the Settlement Class receiving Individual PAGA Payments will be deemed to release all claims for PAGA civil penalties that were pled or could have been pled based on the factual allegations in the TAC or prior complaints in the Actions, irrespective of whether or not they submitted a Request for Exclusion. *Id.* ¶ 5.1. The Participating Collective Members shall be deemed to have released Defendants from the Released Collective Claims. *Id.* ¶¶ 1.38, 5.2. Finally, Plaintiffs will release Defendants from any and all claims, specified in the Settlement, which Plaintiffs have or may have against the Released Parties through the date of execution of the Settlement. *Id.* ¶ 5.3. Plaintiffs expressly waive their rights under California Civil Code § 1542. *Id.*

---

[2] The employer's share of payroll taxes is estimated to total $130,412.59. Soto Najera Decl. ¶ 15.

In the Preliminary Approval Order, the Court ordered the Claims Administrator to: (i) perform a search to update and correct for any identifiable address changes and (ii) mail the Class Notice, in English and Spanish, to all members of the Settlement Class via First-Class U.S. Mail within 45 calendar days after the Court granted preliminary approval. ECF No. 340 at 28.

The notice plan, as approved by the Court, has been implemented by CPT, the Settlement Administrator. CPT received the Class List information for 1,755 individuals identified as members of the Settlement Class. Soto-Najera Decl. ¶ 4. CPT updated the Class List by conducting a National Change of Address search. *Id*. ¶ 6. On June 13, 2025, CPT mailed the Class Notice, in English and Spanish, to all 1,755 members of the Settlement Class via first class U.S. Mail. *Id*. ¶ 7. Twenty Class Notices have been returned to CPT as undeliverable with no forwarding address able to be ascertained after skip tracing. *Id*. ¶ 9. Zero members of the Settlement Class have requested to be excluded from the Settlement or submitted an Objection to CPT. *Id*. ¶¶ 11-12. CPT received 614 valid FLSA Opt-In Forms from Collective Members. *Id*. ¶ 14. CPT received four Workweek disputes, two of which were denied and two of which were approved and resulted in Workweek adjustments. *Id*. ¶ 10. The deadline to submit a Request for Exclusion, an Objection, a Workweek dispute, and/or a FLSA Opt-In Form was July 29, 2025. *Id*. ¶ 7. Therefore, the total number of Participating Settlement Class Members is 1,735 and the total number of Participating Collective Members is 614. *Id*. ¶¶ 13-14.

Settlement checks uncashed after 180 days from the date of mailing will be voided by the Settlement Administrator. Settlement ¶ 4.5. The sum of the uncashed funds shall be paid, on a pro rata basis, to Participating Class Members who timely cashed their Individual Class Payments ("Reapportioned Settlement Payments"). *Id*. Any checks for Reapportioned Settlement Payments that are not cashed by Participating Class Members within 45 days of mailing will be voided, and the funds associated with such checks will be transmitted to the State Controller's Office Unclaimed Property Fund for the benefit of

those individuals who did not cash their Reapportioned Settlement Payments. *Id*.

## II.    DISCUSSION

### A. Legal Standard

Before a court approves a settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2009). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 568 (9th Cir. 2019) (en banc)). To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

### B. Certification of the Proposed Settlement Class under Rule 23

The Court granted preliminary certification to the Settlement Class for settlement purposes in the Preliminary Order. ECF No. 340. It appears no material changes have occurred since this Court's preliminary approval and there is no opposition to final certification. Therefore, analysis for final certification will resemble the prior analysis for preliminary certification.

Federal Rule of Civil Procedure ("Rule") 23 establishes four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), common questions must

predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Plaintiffs seek certification of a Settlement Class consisting of all persons whom Rohr employed in California as hourly paid, non-exempt union employees at any time during the Settlement Period. Settlement ¶¶ 1.12, 1.45-1.46.

For the following reasons, the Court finds the class certification requirements of Rule 23 have been met.

### 1. Numerosity

The numerosity requirement under Rule 23(a)(1) is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). The exact size of the class does not need to be known as long as general knowledge and common sense support that the class is sufficiently large. *See Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal 2012).

Here, the proposed Settlement Class consists of approximately 1,755 persons. Soto-Najera Decl. ¶ 4. This class is sufficiently numerous to make joinder impracticable.

### 2. Commonality and predominance

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is established if plaintiffs and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Not every question of law or fact must be common to the class. *Abdullah v. U.S. Sec. Assoc., Inc.*, 731 F.3d 952, 957 (Ninth Cir. 2013).

Additionally, under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). In the class action settlement context, the predominance inquiry may be relaxed: "[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). Whether the questions addressable with common proof predominate over those that require individual proof depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Here, Plaintiffs' claims, even if they were previously uncertified or decertified, present common questions of law and fact that predominate over individual issues such that certification is acceptable for settlement purposes.

Settlement Class Members are non-exempt, unionized employees who were employed by Rohr during the Settlement Period. There are clear questions that are common to all class members, including (1) whether Defendants' policies and practices prevented class members from taking rest breaks that they were entitled to; (2) whether Defendants engaged in time-shaving and automatic deduction practices; (3) whether Defendants had a common practice of failing to provide a second meal period; and (4) whether Defendant had a common practice of failing to reimburse employees for necessary business-related expenditures. Defendants deny all of Plaintiffs' allegations and contend that they complied with applicable law.

These claims all allege that Rohr had common practices, policies, and procedures

that applied across the Settlement Class. While there may be individualized facts that are not shared by each class member, "the existence of certain individualized or deviating facts will not preclude certification if most class members were subjected to a company policy in a way that gives rise to consistent liability or lack thereof." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

It is plain that the proposed class meets Rule 23(a)(2)'s commonality requirement. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation.") (internal quotation marks and citation omitted). The proposed class also meets predominance because the common factual and legal questions supersede any individualized inquiry in determining liability for the claims of the Settlement Class.[3]

### 3. Typicality

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the Court previously held that Plaintiffs Morgan and Bevan were adequate class representatives for non-exempt, unionized employees. ECF No. 105 at 13. They are, therefore, also adequate representatives for the Settlement Class, which is defined as non-exempt, union employees employed by Rohr during the Settlement Period. Settlement ¶¶

---

[3] The Court's finding extends to Plaintiffs' derivative claims, specifically the UCL claim and the claim for failure to pay all wages due to discharged and quitting employees.

1.12, 1.45-1.46. Plaintiff Harris is also typical because he was a non-exempt, unionized employee as well. ECF No. 341-4 ¶ 2. There are no extraneous circumstances that make any Plaintiff atypical. All their claims for damages are based upon the same or similar injuries from the same or similar conduct. ECF No. 331 at 15. Thus, Plaintiffs meet the typicality requirement.

### 4. Adequacy

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

Plaintiffs do not have a conflict of interest with the Settlement Class because their interests are aligned with the rest of the Class. Plaintiffs and their Counsel have continuously prosecuted these Actions for the past few years, demonstrating their commitment to the Class. In addition, Plaintiffs' Counsel, Matern Law Group ("MLG"), is experienced in labor representative actions and has vigorously advocated for the Class throughout the litigation. Declaration of Matthew J. Matern ("Matern Decl.") ¶ 1, 4-7. There is no indication that Plaintiffs or Counsel will not continue to vigorously prosecute the interests of the class. The Court therefore concludes the adequacy requirement is met for the purposes of certification.

### 5. Superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). Superiority asks if class adjudication is "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, certification of a settlement class would provide significant efficiencies compared to any alternative method of adjudication. There are approximately 1,755 class members, which makes class-wide resolution efficient and appropriate. It is unlikely that any single member of the Class acting alone would have pursued these claims against Defendants. *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims"). Plaintiffs' Counsel is unaware of any current related litigation concerning the controversy, so there is little risk of conflicting or superfluous adjudications. Finally, in a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D). *Amchem*, 521 U.S. at 620.

The Court therefore finds that class certification would preserve judicial resources, save time, and limit duplication of evidence and effort.

Based on the foregoing reasons, the requirements under Rule 23 are satisfied, and the Court CERTIFIES the Settlement Class for purposes of the Settlement.

### C. Appointment of Class Counsel

When a court certifies a class, it must also appoint class counsel. *See* Fed. R. Civ. P. 23(g)(1). The Rule directs the Court to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *See* Fed. R. Civ. P. 23(g)(1)(A).

Since they were appointed, MLG has devoted substantial time, effort, and resources to identifying, investigating, litigating, and negotiating a settlement. Matern

Decl. ¶ 15-16. MLG is also one of the largest plaintiff-side employment law firms in California and has extensive experience litigating Labor Code violations in class, collective, and representative action cases. *Id*. ¶ 1. Following the Preliminary Approval Order, Lead Counsel has continued to devote their time, energy, and resources in overseeing the notice program, working with opposing counsel, and fulfilling all deadlines and requirements as set forth in the Settlement and Preliminary Approval Order. ECF Doc. 343-1 at 11. The Court finds that MLG is qualified and accordingly appoints MLG as Class Counsel.

### D. Collective Members' FLSA Claims

The proposed settlement also meets the requirements for certification under the FLSA, which may be maintained by "any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b); *Clesceri v. Beach City Investigations & Protective Servs., Inc*., 2011 WL 320998, *3-4 (C.D. Cal. Jan 17, 2011). "Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard" under Rule 23(b)(3). *Harris v. Vector Mktg. Corp*., 753 F.Supp.2d 996, 1003 (2010). As Plaintiffs have already demonstrated that the requirements under Rule 23 have been met, the Court certifies the Collective Members' claims.

### E. Final Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement. Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Such an evaluation is made in the context of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Any fairness determination requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly

lend themselves to pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

For the reasons that follow, the Court finds that the Settlement Agreement reached by the Parties is fair, reasonable, and adequate and GRANTS final approval of the Settlement.

### 1. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed.

2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

The Court found above that Plaintiffs and Class Counsel adequately represent the class for the purposes of class certification.  For the same reasons, the Court finds that the adequacy of representation requirement under Rule 23(e)(2)(A) is met.

### 2.  Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008).

Here, the proposed Settlement arises out of an arm's length negotiation process between Plaintiffs and Defendants that culminated on the eve of trial. These negotiations began years earlier, with one early neutral evaluation, two settlement conferences and two private mediations facilitated by a mediator. Gordon Decl. ¶ 27. The Settlement was ultimately reached after another mandatory settlement conference with Magistrate Judge Berg. *Id.* ¶ 28. The use of an experienced mediator suggests that settlement negotiations were informed and non-collusive. *See Deaver v. Compass Bank*, 2015 WL 4999953, at *7 (N.D. Cal. Aug. 21, 2015); *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (quotations omitted).

Plaintiffs were able to make an informed decision regarding the Settlement, given the extensive discovery and investigation conducted prior. Gordon Decl. ¶ 26. Numerous sets of written discovery were served and responded to, thousands of pages of documents produced, and over thirty depositions taken of witnesses, corporate representatives, and

Plaintiffs. *Id*. Plaintiffs' data expert analyzed time punch data covering 1,137,507 shifts associated with 1,413 employees, as well as pay data covering 163,672 pay periods. *Id*. Based on all this information, Plaintiffs and Counsel were able to act intelligently and effectively in negotiating the Settlement.

According to Plaintiffs, the negotiations over the course of two mediations, three mandatory settlement conferences and an early neutral evaluation were hard-fought and conducted at arm's length between experienced counsel fully informed of the strengths and weaknesses of the claims and defenses. ECF No. 342-1 at 11-12. These lengthy arms-length negotiations support the conclusion that the Settlement was achieved in the absence of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations... were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### 3. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement.  *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### a. Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery

balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable. *See In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). The Court therefore must examine whether the Settlement Agreement adequately compensates the class given the costs, risks, and delay of trial and appeal based on the facts of this case. The relief must therefore "be judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *8 (C.D. Cal. Apr. 23, 2024) (citation and quotations omitted).

Here, the Parties have agreed to settle this case for a non-reversionary Gross Settlement Amount (GSA) of $19.9 million. Settlement ¶¶ 1.22, 3.1. After proposed attorneys' fees, litigation expenses, incentive awards, the PAGA Settlement, the FLSA Amount, the Court-approved payroll taxes, and administration costs are deducted from the GSA, the Net Settlement Amount would be $ 12,086,893.20, and the average gross recovery payment for each class member would be $ 6,887.12. ECF No. 342-1 at 12. The Net Settlement Amount also provides a net recovery to Class Members of approximately 9.7% of the maximum exposure. Matern Decl. ¶ 10(a).

Furthermore, based on the risks of litigation, Plaintiffs contend that the settlement provides adequate relief to the class. *Id*. at 13-14. According to Plaintiffs, Counsel considered numerous factors, including the risk and uncertainty of proving liability, damages, and PAGA penalties at trial, the risk of decertification of some or all class claims due to manageability, the merits of the defenses raised, the costs of continued litigation, the risk of appeal, and the constantly evolving nature of this area of law, creating uncertainty for employees. *Id*. Plaintiffs, while "confident in the merits of their

claims," acknowledge that "a legitimate controversy exists as to each cause of action." *Id.* at 14. For example, Defendants have disputed certain key factual and legal issues in the case, including whether employees were actually "working" during the time they were clocked in before and after their shifts and whether employees were provided with an opportunity to take meal breaks even if that was not reflected in timekeeping records. *Id.*

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays. The fact that the Settlement will eliminate these delays and any further expenses weighs strongly in favor of approval. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

As such, the Settlement presents a substantial relief to the Settlement Class. Although the Settlement is only a portion of Defendant's maximum potential exposure according to Plaintiff's calculations, the relief is adequate at 9.7% net recovery and appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims. *See, e.g., In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement of about 6% of the estimated maximum recovery after deducting fees and costs); *Maciel v. Bar 20 Dairy, LLC,* 2020 WL 5095885, at *14 (E.D. Cal., Aug. 28, 2020) (approving gross settlement amount representing approximately 5% of the maximum recovery). Courts must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted). The Court here concludes that the costs and risks of proceeding with litigation renders the agreed-upon settlement amount to be adequate relief for the class as a whole.

### b. Effectiveness of proposed method of distributing relief

Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the

method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the distribution plan is effective, clear, and fair. The Settlement provides for each Class Member to receive a pro rata distribution of the Net Settlement Amount based on the number of Settlement Period Workweeks worked by the Settlement Class and a formula set forth in the Settlement. Settlement ¶¶ 1.47, 3.6. Collective Members had the right to submit a FLSA Opt-In Form to receive an Individual Collective Payment. *Id.* ¶ 7.6. That payment is determined by the total number of FLSA Period Workweeks each Participating Collective Member worked and a formula set forth in the Settlement. *Id.* ¶¶ 1.48, 3.7. Individual PAGA Payments will be determined on a pro rata basis according to the number of Settlement period Workweeks worked by the Settlement Class and a formula set forth in the Settlement. *Id.* ¶ 3.8.

Potential Settlement Class Members and their contact information has been ascertained by Defendants, who provided a list to the Settlement Administrator. Soto-Najera Decl. ¶ 4. The Settlement Administrator then ensured that as many individuals as possible were located and contacted. *Id.* ¶¶ 5-8. Checks that are uncashed after 180 days after mailing will be voided by the Settlement Administrator and then paid, pro rata, to Participating Class Members who timely cashed their Individual Class Payments. Settlement ¶ 4.5.

### c. Attorneys' fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Plaintiffs seek an attorney fee award of one-third of the GSA and reimbursement of costs. The Settlement is not contingent on any ruling with respect to attorneys' fees.  Settlement ¶ 3.2. Based on the reasoning below, *see infra*, the Court finds that an award of 30% of the GSA in addition to litigation expenses, administration

fees, and the Lead Plaintiff's incentive award is reasonable.

### d.  Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under
Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in
connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no additional
agreements here that have been made in connection with the Settlement Agreement.
Gordon Decl. ¶ 34

### 4.  Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement
"treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In
doing so, the Court determines whether the settlement "improperly grant[s] preferential
treatment to class representatives or segments of the class." *In re Tableware Antitrust
Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  "Matters of concern could include
whether the apportionment of relief among class members takes appropriate account of
differences among their claims, and whether the scope of the release may affect class
members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P.
23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B.
Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's
goal is to ensure that similarly situated class members are treated similarly and that
dissimilarly situated class members are not arbitrarily treated as if they were similarly
situated.").

Here, under the proposed Settlement, there is little to no risk of unequal treatment,
since each Participating Class Member's Individual Class Payment will be calculated pro
rata based on the Settlement Class's Settlement Period Workweeks. Settlement ¶ 3.6.
Each payment to a Participating Class Member will therefore reflect his or her
proportionate share of the Settlement Period Workweeks and Settlement amount. The
Court finds that the Settlement treats class members equitably.

Plaintiffs also request a service award in an amount not to exceed $25,000 each. Based on the reasoning below, *see infra*, the Court finds that this incentive award is reasonable and does not diminish the equitable nature of the Settlement.

### 5. *Hanlon* Factors

The Court traditionally examined the *Hanlon* factors for its fairness analysis. The 2018 amendments to Rule 23(e) make clear that the considerations identified therein were not designed to "displace" any factor previously used by courts to evaluate settlements, but rather to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). Thus, courts may still consider additional Hanlon factors in the exercise of discretion. *See, e.g., Fitzgerald v. Pollard*, 2024 WL 4596401, at *5-8 (S.D. Cal. Oct. 28, 2024).

The *Hanlon* factors mostly overlap with the Rule 23(e) factors. The Court will examine two non-duplicative *Hanlon* factors.

**Reaction of the Settlement Class**. An overwhelmingly positive reaction of class members to a proposed settlement significantly weighs in favor of the settlement's adequacy. *Delacruz v. CytoSport, Inc.*, 2014 WL 12648451, at *7 (N.D. Cal. Jul. 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding only three objections out of 57,630 potential class members weighing in favor of the settlement's adequacy). Of the 1,755 copies of the Notice sent to class members, no objection nor request for exclusion to the Settlement has been received as of August 8, 2025. Soto-Najera Decl. ¶¶ 11-12. It shows that the Settlement terms are considered fair, reasonable, and adequate from class members' perspective. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) (noting no objection nor request for exclusion from the Settlement as "compelling evidence that the Proposed

Settlement is fair, just, reasonable, and adequate"); *see also, e.g.*, *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *8 (S.D. Cal. Dec. 19,, 2024); *Derr v. Ra Medical Sys., Inc.*, 2022 WL 21306534, at *6 (S.D. Cal. Sept. 23, 2022); *Kendall v. Ordanate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022).

**Discovery Conducted to Date and Stage of Proceedings**. Although formal discovery is not required to reach the Settlement stage, the Court considers whether the parties have "carefully investigated the claims" before reaching to the resolution. *Hardy v. Embark Tech., Inc.*, No. 3:22-CV-02090-JSC, 2024 WL 1354416, at *5 (N.D. Cal. Mar. 29, 2024) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). "The fact that formal discovery was in its early stages does not weigh against final approval." *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *9 (C.D. Cal. Apr. 23, 2024).

Here, the Parties agreed to settle only 10 days before trial and had completed extensive discovery and investigative action in preparation for trial. Gordon Decl. ¶¶ 26, 28. The Parties had served and responded to numerous sets of written discovery, produced thousands of pages of documents, taken over thirty depositions of law witnesses, expert witnesses, corporate representatives, and the Plaintiffs. *Id*. ¶ 26. The Parties also negotiated over the course of two mediations, three settlement conferences, and an early neutral evaluation before reaching a settlement. *Id*. ¶¶ 27-28. Thus, the Parties were well-equipped with the relevant information needed to make informed decisions regarding the Settlement.

### F. Proposed PAGA Allocation

Federal courts will approve a PAGA settlement if it meets PAGA's statutory requirements and is "fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Rincon v. W. Coast Tomato Growers, LLC*, 2018 WL 828104, at *2 (S.D. Cal. Feb. 12, 2018).

Here, the PAGA Settlement in the amount of $500,000—with 75% ($375,000) to

the LWDA and 25% ($125,000) to the Settlement Class—is fair, reasonable, and adequate. Settlement ¶¶ 1.33, 10.8. In a combined class action and PAGA settlement of wage and hour claims, the court may apply a sliding scale analysis. *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). Under this analysis, courts have held that comparable allocations of settlement funds to PAGA penalties fulfill the purposes of PAGA and warrant approval. *See, e.g., Viceral v. Mistras Group, Inc.*, 2017 WL 661352, at *3 (N.D. Cal. Feb. 17, 2017) (approving $20,000 in PAGA penalties from a $6 million settlement); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 in PAGA penalties out of a $3,700,000 settlement).

The Settlement as a whole provides substantial individual relief to the Settlement Class, with the average gross Individual Class Payment estimated to be $6,887.12 and the average Individual PAGA Payment estimated to be $71.23.[4] Because the overall settlement payments will provide substantial compensation to individual employees, PAGA's goal of enforcing the Labor Code through private litigation is furthered by this Settlement. The allocation of $375,000 to the LWDA further supports the State's efforts to enforce its labor laws.

### G. Attorney's fees and costs, administration fees, and incentive award

Together with its Motion for final approval, Plaintiff has also filed an unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff.

#### 1. Attorneys' Fees

Counsel seeks attorneys' fees in the amount of $6,633,333.33. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to

---

[4] The Court calculates this figure based on the newest estimate of the class size ($125,000 ÷ 1,755 = 71.225).

ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Fees can be calculated by either the lodestar method or the percentage-of-the-fund method. *Id.* at 942. Courts may exercise discretion to choose which calculation method they use to achieve a reasonable result. *See Bluetooth*, 654 F.3d at 942. Use of the percentage method in common fund cases is the most dominant because of its various advantages, including increased incentive for counsel to litigate and promotion of efficiency. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Thus, the Court agrees with Plaintiff and elects to use the percentage-of-recovery method to award the attorneys' fees.

"When applying the percentage-of-the-fund method, an attorneys' fee award of twenty-five percent is the 'benchmark' that district courts should award." *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *7 (S.D. Cal. Dec. 18, 2019) (citations omitted). Courts should analyze the following factors to determine if a percentage is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of counsel's work; (4) the contingent nature of the fee and financial burden; (5) awards made in similar cases; (6) the reaction of the class; and (7) the lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). As noted by other courts, these factors intentionally track the factors used to evaluate the adequacy of a settlement. *Omnivision*, 559 F. Supp. at 1046.

While the Court acknowledges that attorneys' fees awards in the amount of 33 ⅓% of the total settlement value have been approved in the past by district courts in this Circuit, it is in the upper bounds of what is considered typical. *See In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *7. Courts tend to approve a percentage award of 33 ⅓% only when they are "corroborated by the lodestar or reflect exceptional circumstances." *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014); *see, e.g.,*

27

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012); *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *8 (C.D. Cal. July 2, 2012).

Here, the Settlement calls for an award of attorneys' fees in an amount not to exceed one-third of the Gross Settlement Amount, plus reimbursement of litigation costs incurred not to exceed $370,000. Settlement ¶ 3.2. Plaintiffs and Counsel assert that MLG's current lodestar is $3,149,553.00, and that MLG will request application of a multiplier of approximately 2.11. Matern Decl. ¶¶ 11, 14, 16-18.

Analysis of these factors in sum support a finding that 30% of the $19.9 million Settlement Amount is a reasonable fee in this case.

### a. The results achieved

"The most important factor [in determining the reasonableness of attorneys' fees] is the 'overall result and benefit to the class from the litigation.'" *Stemple v. QC Holdings, Inc.*, 2016 WL 11783383, at *3 (S.D. Cal. Nov. 7, 2016) (citing *Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046; *see also In re Heritage Bond Litig.*, 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (noting that "courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Within this analysis, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2nd Cir.1974)). Instead, "parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir.2009).

Here, class counsel achieved favorable results. The average gross Individual Class

Payment is $6,887.12 with the highest gross Individual Class Payment being $15,451.69. Soto-Najera Decl. ¶ 16. The $19.9 million GSA represents around 16% of the maximum potential value of the Plaintiffs' best-case estimate for recoverable damages of around $124 million. Matern Decl. ¶ 10(a). It also proves a net recovery to Class Members of approximately 9.7% of the maximum exposure and approximately 25.2% of the value of the discounted class claims. *Id*.

Class Counsel argues these results are outstanding and cites to a several cases where settlements were approved with similar percentages of maximum exposure. ECF Doc. 341-1 at 7. However, while that percentage might be commonly approved, Class Counsel does not explain how those cited cases support a finding of extraordinary results and, thus, a 33 ⅓% award. *See Van Ba Ma v. Covidien Holding, Inc.*, No. SACV 12-2161-DOC, 2014 WL 2472316, at *3 (C.D. Cal. May 30, 2014) (approving settlement where gross recovery was 9.1% of the potential value of case but including no discussion of attorneys' fees); *Ayala v. UPS Supply Chain Solutions, Inc.*, No. EDCV20117PSGAFMX, 2021 WL 4497881, at *8 (C.D. Cal., Aug. 24, 2021) (granting a *preliminary* motion for settlement of "10% of Plaintiffs' admittedly high estimated damages" but granting a 33 ⅓% award on other grounds in the final motion). For example, *Ramirez v. C&W Facility Servs., Inc.* does approve a settlement where "[t]he Gross Settlement Amount represents nearly 10% of the unreduced, maximum potential recovery amount," but it also reduces attorneys' fees from 33 ⅓% to approximately 17%. No. 220CV11319JVSPVCX, 2023 WL 8937607, at *3, 6 (C.D. Cal., July 31, 2023).

Beyond the recovery percentages, Class Counsel also points to the high average gross Individual Class Payments as indicative of an extraordinary outcome. In this respect, an average payment of $6,887.12 is commendable in the context of wage-and-hour cases, where individual awards "tend to be modest." *Gentry v. Sup. Ct.*, 42 Cal. 4th 443, 457 (2007), abrogated on other grounds in *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 129, n.10 (2019).

Thus, the average gross Individual Class Payments weigh in favor of an upward departure from the 25% benchmark but does not clearly support a 33 ⅓% fee.

### b. The risk of litigation

Counsel submits that there were considerable risks in litigating the case. Based on their representations, if the case had proceeded through litigation, there would be a substantial risk of decertification before the damages phase, an uncertain and lengthy appeals process for decertified claims, and the possibility of an unfavorable jury verdict. Matern Decl. ¶ 10(b). Counsel also points to the frequently changing nature of wage and labor law, which could have lowered the potential recovery in the case. ECF No. 341-1 at 9. Accordingly, this factor weighs in favor of enhancing the benchmark fee.

### c. The skill required and quality of counsel's work

Though wage and hour litigation is not as legally complex as securities and other types of class action litigation, *see McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *10 (C.D. Cal. July 2, 2012), Counsel did exhibit skill throughout its over five years of work. This included litigating novel legal issues, navigating limited recordkeeping, and maintaining certification of meal period claims. ECF Doc. 341-1 at 10.  In sum, this factor supports a heightened fee.

### d. The contingent nature of the fee and financial burden

Counsel's fees were entirely contingent on a successful outcome, and they risked non-payment of 4,108.8 billable hours and nearly $350,000 in litigation costs. *Id*. at 11; Matern Decl. ¶ 10(d), 13, 39. Counsel assumed considerable risk of non-reimbursement for the time and costs they spent on this litigation "demonstrated by the fact that settlements were not easily achieved." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005). Thus, this factor supports an enhanced fee.

### e. Awards made in similar cases

The Ninth Circuit has recognized that 25% for attorneys' fees is the benchmark in class actions, but similar to the request here, some courts in the Ninth Circuit have

awarded up to 33 ⅓% in wage and labor cases. *See, e.g., Cabrales v. BAE Sys. San Diego Ship Repair, Inc.*, No. 21-CV-02122-AJB-DDL, 2025 WL 2098757, at *14 (S.D. Cal. July 25, 2025) (33.33% award represented 1.79 multiplier of lodestar); *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-CV-00411-WQH-AHG, 2021 WL 3419232, at *7 (S.D. Cal. Aug. 5, 2021) (33.33% award represented 1.56 lodestar multiplier). However, there are also a wide array of similar or arguably more successful wage and labor cases that have only been approved for lower percentages of attorneys' fees. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1043 (9th Cir. 2002) (lowering the 30% requested to 28%); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982-85 (E.D. Cal. 2012) (awarding 29% despite the 33.33% requested); *McKenzie v. Fed. Exp. Corp.*, No. CV 10-02420 GAF PLAX, 2012 WL 2930201, at *8-10 (C.D. Cal. July 2, 2012) (lowering the 33.33% requested to 25%); *Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) (same). Certainly, an attorney fees award of more than 25% is warranted.  While 33 ⅓% is within the reasonable range of attorney fees awarded, it is at the high end of the range, and the Court concludes that a 30% award is reasonable.

### f. The reaction of the class

Notices were sent to all 1,755 identified Class Members. Soto-Najera Decl. ¶ 4. The Notice informed the class members that Class Counsel would seek up to "one third of the Gross Settlement Amount" and litigation costs up to $370,000. ECF 341-19 at 3. Although class members were notified of their right to object to these terms, no class member has objected to the requested fees or expenses. Soto-Najera Decl. ¶ 11. This weighs in favor of an enhanced fee.

### g. The lodestar cross-check

Lastly, the seventh factor encourages the Court to do a lodestar cross-check on the requested percentage. Courts calculate lodestar by multiplying reasonable hourly rates by the number of hours spent. Here, Class Counsel state that 3,345.4 attorney hours and 763.4 legal assistant and law clerk hours were spent litigating this case, and hourly rates

ranged from $325 to $1,200. Matern Decl. ¶¶ 12-14; ECF Doc. 341-1 at 15. These estimates lead to a total value of $3,207,875.00. ECF Doc. 341-1 at 12. This renders a lodestar multiplier of 2.07, well within the multiplier range of one to four often used to cross-check reasonableness. *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. Sept. 30, 2016) (citing *Vizcaino*, 290 F.3d at 1052-54 (surveying multipliers in over 20 class actions and finding multipliers from one to four in over 80% of cases)).

Considering all factors, the Court concludes that the attorneys' fee should be enhanced from the benchmark to 30% ($5,970,000), acknowledging the commendable results of Counsel.

### 2. Reimbursement of Attorneys' Expenses

As to the requested expenses, "Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. May 27, 2015) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). "[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (quoting *In re Heritage Bond Litig.*, 2005 WL 1594389, at *23 (C.D. Cal. June 10, 2005)). Lead Counsel has provided a breakdown of all costs incurred pursuing this action, totaling $349,360.88. Matern Decl. ¶ 39. The expenses were incurred for the *Morgan* Action and the *Harris* Action and are the type normally billed to a fee-paying client. *Id*. ¶¶ 39-40. As such, the Court finds expenses in the amount of $349,360.88 are reasonable.

### 3. Award to the Lead Plaintiffs

Lead Plaintiffs seek an award of $25,000 each—a total of $75,000—for litigating on behalf of the Settlement Class. *Id*. ¶¶ 41-43.

In common fund cases, named plaintiffs may also be granted "reasonable incentive payments" in addition to reimbursement for their "litigation expenses, and identifiable

services rendered to the class directly under the supervision of class counsel." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citing *Missouri v. Jenkins,* 491 U.S. 274, 285 (1989)). Courts have granted incentive awards of $10,000 or more to individuals who carry out litigation efforts on behalf of absent class members, but higher awards to multiple plaintiffs usually involve exceptional participation and circumstances. *See, e.g., La Fleur v. Med. Mgmt. Int'l, Inc.*, No. EDCV13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff, in part, for attesting to their fear that the lawsuit will harm their future job prospects in the industry); *see also In re High-Tech Emp. Antitrust Litig.,* No. 11-CV-2509-LHK, 2014 WL 10520478, at *2–3 (N.D. Cal. May 16, 2014) (approving $20,000 service award to each of six class representatives after substantial participation and stated fears of career retaliation). When deciding whether an incentive award is reasonable and fair, the Ninth Circuit considers the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015).

Here, Plaintiffs have attested to the many hours and efforts that they have expended on these Actions spanning over several years. Declaration of Nathaniel Morgan ("Morgan Decl.") ¶¶ 3-11; Declaration of Michael Bevan ("Bevan Decl.") ¶¶ 3-12; Declaration of Antonee Harris ("Harris Decl.") ¶¶ 3-4. These efforts have included responding to discovery requests, preparing for and attending negotiation talks, preparing for and participating in depositions, identifying potential witnesses and evidence, and engaging with Counsel on the progress of the Actions. Morgan Decl. ¶ 3; Bevan Decl. ¶ 3; Harris Decl. ¶ 3. Plaintiffs attest that they have each spent over 100 hours on this case. Morgan Decl. ¶ 4; Bevan Decl. ¶ 5; Harris Decl. ¶ 4. Additionally, the lack of any objections to the proposed award to Lead Plaintiffs also supports the reasonableness of the award. *See Khoja*, 2021 WL 5632673, at *11.

After consideration, the Court finds the $20,000 incentive award to each Lead

Plaintiff reasonable.

### 4. Administrator's Fees

Class Counsel seeks $25,000 for the Settlement Administrator for all notice and administration costs incurred. ECF Doc. 341-18 ¶ 22. As stipulated, the Settlement Administrator can receive up to $25,000 for administering the Settlement. Settlement ¶¶ 1.22, 1.44, 3.5. Here, CPT presented a revised bid not-to-exceed $24,000. ECF No. 399. CPT accounts for an additional $1,000 over the estimate, pointing to increases in postal rates, an increase in states where CAFA notifications must be sent, and costs associated with redistribution of unclaimed settlement funds. ECF No. 341-18 ¶ 22. Thus, the Court approves payment of $25,000 to the Settlement Administrator, accounting for the original bid and the additional $1,000 in costs explained.

### III.   CONCLUSION

Based on the above, it is hereby **ORDERED**:

1.      The Court, for purposes of this Order and Judgment ("Judgment"), adopts all defined terms as set forth in the Settlement Agreement.

2.      The Court has jurisdiction over all claims asserted in the action, Plaintiffs, the members of the Settlement Class, and Defendants Rohr, Inc. ("Rohr"), Hamilton Sundstrand Corporation, and United Technologies Corporation (collectively, "Defendants").

3.      The Court finds that the Settlement was made and entered into in good faith and hereby finally approves the Settlement as fair, reasonable, and adequate to all members of the Settlement Class. Any members of the Settlement Class who have not timely and validly requested exclusion are thus bound by this Judgment.

4.      The Court finds that the Settlement Class meets the requirements for certification under Fed. R. Civ. P. 23(a) and 23(b)(3) and finally certifies the following Settlement Class for settlement purposes only: all individuals whom Defendant Rohr, Inc.

employed in California as hourly paid, non-exempt union employees at any time during
the Settlement Period.

     5.    The Court finds that the Collective Members are similarly situated and hereby
finally certifies, pursuant to 29 U.S.C. § 216(b), the Collective Members defined as: all
individuals whom Defendant Rohr, Inc. employed in California as hourly paid, non-exempt
union employees at any time within the FLSA Period.

**Class Notice**

     6.    Notice to members of the Settlement Class has been completed in conformity
with the terms of the Settlement Agreement and Preliminary Approval Order as to all
members of the Settlement Class who could be identified through reasonable effort.  The
Court finds that the notice plan was the best notice practicable under the circumstances.
The Class Notice provided due and adequate notice to members of the Settlement Class
regarding the proceedings and the matters set forth therein, including the Settlement, the
manner by which objections to the Settlement could be made, and the method for members
of the Settlement Class to opt out of the Settlement.  The Class Notice and the method for
providing notice to the Settlement Class satisfied the requirements of due process and Fed.
R. Civ. P. 23(c)(2)(B).

**Objections and Requests for Exclusion**

     7.    Zero objections to the Settlement were submitted by members of the
Settlement Class in accordance with the requirements set forth in the Settlement
Agreement and the Class Notice.

     8.    The Court finds that zero members of the Settlement Class have submitted a
valid and timely Request for Exclusion.

**FLSA Opt-In Forms**

     9.    The Court finds that 614 Collective Members submitted a timely and valid
FLSA Opt-In Form to the Settlement Administrator, thereby becoming Participating
Collective Members who have given their consent to "opt in" as a party plaintiff in this
Action pursuant to the FLSA.  The FLSA Opt-In Forms submitted by Participating

Collective Members are attached as Exhibit C to the Declaration of Chantal Soto-Najera on Behalf of CPT Group, Inc.

### Funding of the Gross Settlement Amount

11.    Within ten (10) business days after the Effective Date, Defendant Rohr shall fully fund the Gross Settlement Amount by transmitting the necessary funds into the Qualified Settlement Fund established by the Settlement Administrator.  "Effective Date" means the date upon which both of the following have occurred: (i) Final Approval of the Settlement Agreement is granted by the Court and (ii) the Court's Judgment approving the Settlement Agreement becomes Final.  "Final" means the latest of (i) if there is an appeal of the Court's Judgment, the date the Judgment is affirmed on appeal, the date of dismissal of such appeal, or the expiration of the time to file a petition for writ of certiorari to the United States Supreme Court; (ii) if a writ of certiorari is filed, the date of denial of the writ of certiorari, or the date the Judgment is affirmed pursuant to such writ; or (iii) if no appeal is filed, the expiration date of the time for filing or noticing any appeal of the Judgment.

### Released Class Claims

12.    As of the Effective Date, in exchange for the consideration set forth in the Settlement Agreement, and except as to the right to enforce the terms and conditions of the Settlement Agreement, the Settlement Class and each member of it shall be deemed to have released, and by operation of the final approval order shall have fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from the Released Class Claims.  However, every member of the Settlement Class who submits a valid and timely Request for Exclusion shall not be bound by the Released Class Claims, with the exception of the release of all claims for civil penalties under PAGA that were pled or could have been pled based on the factual allegations in the operative Third Amended Complaint or prior complaints in the Actions.

13.    "Released Parties" means Rohr, RTX Corporation (formerly United Technologies Corporation and Raytheon Technologies Corporation), Goodrich

Corporation, Rockwell Collins, Inc., and Hamilton Sundstrand Corporation, and each and all of their current or former subsidiaries, parents, affiliates, joint ventures, predecessors, insurers, agents, employees, successors, assigns, officers, officials, directors, attorneys, personal representatives, executors, and shareholders, including their respective pension, profit sharing, savings, health, and other employee benefits plans of any nature, the successors of such plans, and those plans' respective current or former trustees and administrators, agents, employees, and fiduciaries.

14.    "Released Class Claims" means any and all claims arising during the Settlement Period that were pled or could have been pled, whether known or unknown, based on the factual allegations in the operative Third Amended Complaint or prior complaints in the Actions, including, but not limited to, any claims for (1) failure to provide meal periods or properly pay meal period premiums; (2) failure to authorize and permit rest periods or properly pay rest period premiums; (3) failure to pay straight time, overtime, or double time wages; (4) failure to pay wages for off-the-clock work; (5) failure to pay all wages at the regular rate of pay; (6) failure to pay minimum wages; (7) failure to timely pay wages during employment; (8) failure to pay final wages due at separation; (9) failure to reimburse for necessary business expenditures; (10) failure to maintain required records; (11) failure to provide accurate and itemized wage statements; (12) violation of California Business & Professions Code Section 17200 *et seq*. for the claims that were pled or could have been pled based on the factual allegations in the Actions; (13) violation of the applicable IWC Wage Orders, including IWC Wage Order 1-2001, that were pled or could have been pled based on the factual allegations in the Actions; (14) violation of California Labor Code sections 200, 201, 202, 203, 204, 210, 218.6, 226, 226.3, 226.7, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, and 2802; (15) statutory penalties under the California Labor Code for the claims that were pled or could have been pled based on the factual allegations in the Actions; (16) civil penalties under PAGA for the claims that were pled or could have been pled based on the factual allegations in the Actions; (17) interest for the claims that were pled or could have been

pled based on the factual allegations in the Actions; and (18) attorneys' fees and costs for the claims that were pled or could have been pled based on the factual allegations in the Actions, except for the Class Counsel Payment. The Released Class Claims do not include any claims for unpaid wages under the FLSA or any claims arising outside the Settlement Period.

### Released Collective Claims

15.    As of the Effective Date, in exchange for the consideration set forth in the Settlement Agreement and except as to the right to enforce the terms and conditions of the Settlement Agreement, the Participating Collective Members shall be deemed to have released, and by operation of this Final Approval Order and Judgment, shall have fully, finally, and forever released, acquitted, relinquished, and completely discharged the Released Parties from the Released Collective Claims. "Released Collective Claims" means any and all claims for unpaid wages and overtime wages or other damages under the FLSA arising during the FLSA Period.

### Plaintiffs' Release

16.    Upon the Effective Date, Plaintiffs will release and forever discharge the Released Parties, to the fullest extent permitted by law, of and from any and all claims, known and unknown, asserted and not asserted, which Plaintiffs have or may have against the Released Parties, based on their employment with Rohr as of the date of execution of the Settlement Agreement ("Plaintiffs' Release"). Plaintiffs' Release includes, but is not limited to, all claims arising from or related to Plaintiff's employment with Defendant, or any of them, or the separation of that employment, as of the date of execution of this Settlement Agreement. Plaintiffs' Release does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, or workers' compensation benefits that arose at any time. Plaintiffs acknowledge that they may discover facts or law different from, or in addition to, the facts or law that Plaintiffs now know or believe to be true but agree, nonetheless, that Plaintiffs' Release shall be and remain effective in all respects,

notwithstanding such different or additional facts or Plaintiffs' discovery of them. For purposes of Plaintiffs' Release, Plaintiffs expressly waive and relinquish the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code.

**Payments Pursuant to the Settlement**

17.    The Court finds that the Gross Settlement Amount of $19,900,000.00, the Net Settlement Amount, and the methodology used to calculate and pay the Individual Class Payments are fair and reasonable and authorizes the Settlement Administrator to make these payments in accordance with the terms of the Settlement.

18.    The Court finds that the FLSA Amount of $100,000.00 is fair, reasonable, and adequate and that a bona fide dispute exists regarding the existence and extent of Defendants' liability under the FLSA. The Court directs the Settlement Administrator to pay the Individual Collective Payments to the Participating Collective Members in accordance with the terms of the Settlement.

19.    The Court finds that the PAGA Settlement in the amount of $500,000.00 is fair, reasonable, and adequate and consistent with PAGA's purposes to remediate present labor law violations, to deter future violations, and to benefit the public through enforcement of state labor laws. The Court directs the Settlement Administrator to pay $375,000.00 (75%) of the PAGA Settlement to the California Labor and Workforce Development Agency for penalties under PAGA and to distribute the remaining $125,00.00 (25%) to the members of the Settlement Class as Individual PAGA Payments in accordance with terms of the Settlement.

20.    The Court finds that the payment of the employer's payroll taxes would create a *de minimis* difference in the Net Settlement Amount and, thus, deducting the payroll taxes from the GSA is reasonable. The Court decides that Rohr's share of payroll taxes should be paid from the GSA in the estimated amount of $130,412.59.

21.    The sum of the uncashed funds, plus any interest that has accrued thereon, shall be paid, on a pro rata basis to the Participating Class Members who cashed their Individual Class Payments within one hundred eighty (180) days of mailing of the

Individual Class Payments. The payments of such reapportioned funds to Participating Class Members who cashed their Individual Class Payment Checks ("Reapportioned Settlement Payments") shall be mailed by the Settlement Administrator within fourteen (14) days of the expiration of the one hundred eighty (180) day period for cashing the Individual Class Payment checks. Any checks for Reapportioned Settlement Payments that are not cashed by Participating Class Members within forty-five (45) days of the mailing will become null and void, and any funds associated with such uncashed check(s) will be distributed to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 et seq., for the benefit of those Participating Class Members who did not cash their checks until such time that they claim their property.

22.    The Court approves the payment of the Settlement Administration Costs in the amount of $25,000.00 to CPT Group, Inc. The Court finds this amount to be fair and reasonable and sufficiently supported given the scope of the duties performed by the Settlement Administrator.

23.    The Parties shall implement the Settlement Agreement according to its terms.

24.    Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Service Payments shall be the subject of a separate order.

25.    Pursuant to the terms of the Settlement Agreement, the Court shall reserve exclusive and continuing jurisdiction over the Action, Plaintiffs, the members of the Settlement Class, and Defendants for purposes of supervising the implementation, enforcement, administration, and interpretation of the Settlement Agreement and this Judgment.

26.    The Court hereby enters judgment for Plaintiffs and the members of the Settlement Class in accordance with the terms of the Settlement, and this Judgment is final and appealable.

27.    If the Settlement does not become final and effective in accordance with its terms, this Judgment shall be rendered null and void and shall be vacated and, in such event, all related orders entered and all releases given shall be rendered null and void.

Plaintiffs' counsel, Matern Law Group, PC, is awarded attorneys' fees in the amount of $5,970,000 to be paid from the Gross Settlement Amount.  Plaintiffs' counsel is entitled to reasonable attorneys' fees under California Labor Code §§ 218.5, 226(e)(1), 1194(a), 2802(c) and 2699(k)(1).

28.    The amount of attorneys' fees awarded, $5,970,000, which is 30% of the non-reversionary Gross Settlement Amount, is reasonable as a percentage of the common fund.

29.    The fees are also reasonable according to a cross-check of Plaintiffs' counsel's lodestar of $3,207,875.00, which is based on 4,108.8 attorney and support staff hours at their customary hourly rates, with the application of a multiplier of approximately 1.86.

30.    Plaintiffs' counsel's hourly rates are reasonable and in line with rates prevailing in the community for attorneys of comparable skill, experience, and reputation, and the number of hours expended by Plaintiffs' counsel are reasonable and were necessary under the circumstances of this case.

31.    Application of a multiplier is appropriate based on the contingent nature of the fee agreement, the skill and quality of representation displayed by Plaintiffs' counsel, the novelty and difficulty of the issues, and the excellent result achieved on behalf of the Settlement Class.

32.    Matern Law Group, PC is also awarded litigation costs in the amount of $349,360.88 to be paid from the Gross Settlement Amount. This request is reasonable because the costs and expenses were reasonably and necessarily incurred to prosecute the litigation.

33.    Plaintiffs' request for Class Representative Service Payments in the amount of $20,000.00 each is reasonable, in that, by serving as the named plaintiffs and Class Representatives, Plaintiffs put the interests of the Settlement Class ahead of their own interests, postponed the prosecution of their own individual Labor Code claims and any recovery for themselves alone, invested considerable time and effort in assisting with the prosecution of the action over the course of several years, assumed personal reputational and financial risk, and waived rights that the other Class Members did not waive, all for

the benefit of the Settlement Class. Accordingly, the Court awards Plaintiffs Class Representative Service Payments in the amount of $20,000.00 each, to be paid from the Gross Settlement Amount.

**IT IS SO ORDERED.**

Dated: September 8, 2025

Hon. Gonzalo P. Curiel
United States District Judge